Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
**KAMBERLAW, LLP**
3451 Via Montebello, Ste.192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364

Counsel for Plaintiff Allison Barton, and the
Putative Class

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

CASE NO. '24CV1332 GPC SBC

**ALLISON BARTON, individually, and on behalf of others similarly situated,**

**Plaintiff,**

**vs.**

**THE PROCTER & GAMBLE COMPANY,**

**Defendant.**

**CLASS ACTION COMPLAINT FOR:**

**1. UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §17200 ET SEQ.);**
**2. DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF. CODE §§ 17500, ET SEQ.); AND**
**3. CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.).**

**"DEMAND FOR JURY TRIAL"**

Plaintiff Allison Barton on behalf of herself and others similarly situated in California, by and through her undersigned counsel, hereby files this Class Action Complaint and states as follows based on investigation and information and belief:

## I.    INTRODUCTION

1.     In violation of California consumer protection law, Defendant The Procter & Gamble Company ("Defendant") fails to disclose, and materially omits, that its Tampax Pearl tampons (the "Products")[1] contain an unsafe amount of lead.

2.     California's Proposition 65 sets the Maximum Allowable Dose Level ("MADL") for reproductive toxicity at 0.5 micrograms of lead per day.[2]

3.     Based on independent scientific testing and analysis, ordinary and expected use of the Products exposes consumers to far more than 0.5 micrograms of lead per day.

4.     The World Health Organization states: "There is no level of exposure to lead that is known to be without harmful effects."[3]

5.     The lead in the Products is particularly problematic for consumers based on the intended manner of use of the Products.

6.     The Products are intended to be inserted vaginally.

7.     Thus, unlike food containing lead that is consumed orally, the Products do not metabolize, and the lead contained in the Products is not filtered by the liver.

8.     The lead contained in the Products can directly enter the bloodstream.

9.     The lead in the Products presents an unreasonable safety hazard, both due

---

[1] This action includes in the definition of "Products" all sizes and configurations of Tampax Pearl tampons sold during the Class Period (defined below), including but not limited to: Tampax Pearl Light, Regular, Super, Super Plus, and Ultra tampons.

[2] This action is not brought pursuant to Proposition 65 but, as set forth herein, is brought pursuant to California's consumer protection laws based on consumer deception due to the mislabeling of the Products. Proposition 65, however, provides a predicate basis for violation of the consumer protection law. Proposition 65 also establishes the specific levels of exposure set forth by the California legislature at which "businesses [are required] to provide warnings to Californians about significant exposures to chemicals that cause cancer, birth defects or other reproductive harm." https://oehha.ca.gov/proposition-65/about-proposition-65#:~:text=What%20is%20Proposition%2065?,into%20sources%20of%20drinking%2 0water.

[3] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

**CLASS ACTION COMPLAINT**

to the manner of use of the Products and the amount of lead contained in the Products.

10. Defendant knows or should know that the Products contain lead.

11. Defendant has an independent duty to disclose the lead in the Products based on the health risk associated with use of the Products and/or because the Products are unfit for consumer use.

12. Defendant does not disclose, and materially omits, that the Products contain lead.

13. Although Defendant does not disclose that the Products contain lead, Defendant makes other advertising statements on the Product labels, which are designed to increase sales of the Products.

14. The Product labels state, for example, that the Products provide "ALL DAY* COMFORT & PROTECTION", are the "#1 U.S. GYNECOLOGIST RECOMMENDED TAMPON BRAND" and that they are "FREE OF PERFUME"; "FREE OF ELEMENTAL CHLORINE BLEACHING"; "TAMPON FREE OF DYES"; and "CLINICALLY TESTED GENTLE TO SKIN".

15. These label representations are likely to lead reasonable consumers to believe that the Products are safe to use and free from harmful elements and ingredients.

16. These label representations are misleading based on the lead contained in the Products.

17. Reasonable consumers who purchase Defendant's Products bearing the label representations—and without any disclosure that the Products contain lead—are misled and deceived.

18. Plaintiff and Class members have suffered economic injury based on their purchase of the Products, which they would not have bought had they known that the Products contain an unsafe amount of lead.

## II. JURISDICTION AND VENUE

19. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the

proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

20.     This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through the sale and distribution of the Products in California and through the privilege of conducting business in California.

21.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Moreover, a substantial part of the events and conduct giving rise to the claims alleged herein occurred in this district. *See also* Declaration of Allison Barton Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached as Exh. A.

## III.   FACTUAL ALLEGATIONS

### A. <u>Lead Is Harmful and Dangerous</u>

22.     Lead affects almost every organ and system in the body and accumulates in the body over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[4]

23.     The lead contained in the Products is particularly detrimental to consumer health because the Products are not consumed orally, but instead are intended to be inserted vaginally where the lead can be directly absorbed into the blood stream.

24.     In other words, there is no "first-pass metabolism and detoxification via the liver" but instead the lead in the Products "directly enter[s] systemic circulation."[5]

---

[4] Wani AL, et al., Lead toxicity: a review, INTERDISCIP TOXICOL. (June 2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4961898.

[5] Environmental International 190 (2024) 108849, Tampons as a source of exposure to metal(loid)s, Jenni A. Shearson, et al. (citing Kim and De Jesus, 2022) (hereinafter, "Environmental International").

**CLASS ACTION COMPLAINT**

25.     A study addressing Medication Routes of Administration states that the "first pass effect" for oral administration refers to the "drug metabolism whereby the drug concentration is significantly diminished before it reaches the systemic circulation, often due to the metabolism in the liver."[6]

26.     By contrast, vaginal administration bypasses the system of veins that transport blood from the digestive tract to the liver.[7]

27.     Vaginal administration directly accesses the networks of blood vessels that surround vital organs, including the pelvic organs.[8]

28.     Vaginal walls are permeable and allow for efficient absorption, including in absorption tests of certain medications.[9]

29.     Toxins can pass through the vaginal epithelium and enter systemic circulation.[10]

30.     Accordingly, the lead in the Products is not diminished or filtered by metabolic function, but can be absorbed directly into the bloodstream.

31.     According to the World Health Organization, "[e]xposure to lead can affect multiple body systems and is particularly harmful to young children and women of child-bearing age."[11]

---

[6] Kim J, De Jesus O, Medication Routes of Administration, EUROPE PMC (March 2021), available at https://europepmc.org/article/NBK/nbk568677.

[7] Id.

[8] Id.

[9] P. van der Biji, et al., Comparative permeability of human vaginal and buccal mucosa to water, Eur J Oral Sci. (Dec. 1997), available at https://pubmed.ncbi.nlm.nih.gov/9469607/; see also Environmental International (citing (Patel et al., 1983; Vorontsova et al., 2022).

[10] Environmental International (discussing the toxic shock syndrome outbreak of the 1980s) (citations omitted).

[11] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

**CLASS ACTION COMPLAINT**

### B. **The Products Contain Lead in Excess of the Maximum Allowable Dose**

32.    California's Proposition 65 establishes a Maximum Allowable Dose Level ("MADL") of .5 mcg of lead per day for reproductive toxicity.[12]

33.    According to independent laboratory testing and analysis, the Products contain .181 mcg of lead per gram of Product.[13]

34.    The Products are sold in various sizes, which have different gram weights.

35.    Per day, based on an average number of tampons used, consumers are exposed to lead in excess of the MADL, irrespective of the size of the Product used.

### 1. *Consumers Use Multiple Tampons Per Day*

36.    The Product labels specify that a single tampon should be used "FOR 8 HOURS MAXIMUM" and for "UP TO 8 hr".

37.    The Product labels also provide information about Toxic Shock Syndrome ("TSS").

38.    The Product labels state: "THE RISK OF TOXIC SHOCK SYNDROME (TSS) INCREASES WITH HIGHER ABSORBENCY. IN ORDER TO REDUCE YOUR RISK OF TSS, YOU SHOULD USE THE LOWEST ABSORBENCY THAT MEETS YOUR NEEDS."

39.    Based on the instruction to use a single tampon for a maximum of 8 hours, consumers will use a minimum of three tampons in a 24-hour period.

40.    Most consumers of Defendant's Products, however, use an average of more than three tampons in a 24-hour period.

41.    According to Defendant's tampax.com website, use of "3-6 products per day (pads or tampons) is normal."[14]

---

[12] https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds.

[13] Based on independent laboratory testing of super Tampax Pearl tampons. The Products at issue are all manufactured by Defendant and contain the same ingredients.

[14] https://tampax.com/en-us/tampon-truths/best-tampons-sizes-for-heavy-light-flow/

**CLASS ACTION COMPLAINT**

42.     According to Defendant's tampax.com website, "[i]deally, a tampon should last about 4-6 hours."[15]

***Tampax Pearl Light.***

43.     The fabric portion of a single Tampax Pearl light tampon weighs an average of 1.34 grams.

44.     Each Tampax Pearl light tampon contains approximately .243 mcg of lead.

45.     If consumers use three Tampax Pearl light tampons in a 24-hour period they are exposed to approximately .729 mcg of lead, which exceeds the MADL.

46.     If consumers use six Tampax Pearl light tampons in a 24-hour period they are exposed to approximately 1.46 mcg of lead, which is almost three times the MADL.

***Tampax Pearl Regular.***

47.     The fabric portion of a single Tampax Pearl regular tampon weighs an average of 1.89 grams.

48.     Each Tampax Pearl regular tampon contains approximately .342 mcg of lead.

49.     If consumers use three Tampax Pearl regular tampons in a 24-hour period they are exposed to approximately 1.026 mcg of lead, or double the MADL.

50.     If consumers use six Tampax Pearl regular tampons in a 24-hour period they are exposed to approximately 2.052 mcg of lead, which is more than four times the MADL.

***Tampax Pearl Super.***

51.     The fabric portion of a single Tampax Pearl super tampon weighs an average of 2.65 grams.

52.     Each Tampax Pearl super tampon contains approximately .480 mcg of lead.

53.     If consumers use three Tampax Pearl super tampons in a 24-hour period they are exposed to approximately 1.44 mcg of lead, which is almost three times the

[15] *Id.*

**CLASS ACTION COMPLAINT**

MADL.

54.     If consumers use six Tampax Pearl super tampons in a 24-hour period they are exposed to approximately 2.88 mcg of lead, which is almost six times the MADL.

***Tampax Pearl Super Plus.***

55.     The fabric portion of a single Tampax Pearl super plus tampon weighs an average of 3.53 grams.

56.     Each Tampax Pearl super plus tampon contains approximately .639 mcg of lead, which exceeds the MADL.

57.     If consumers use three Tampax Pearl super plus tampons in a 24-hour period they are exposed to approximately 1.92 mcg of lead, which is almost four times the MADL.

58.     If consumers use six Tampax Pearl super plus tampons in a 24-hour period, they are exposed to approximately 3.84 mcg of lead, which is almost eight times the MADL.

***Tampax Pearl Ultra.***

59.     The fabric portion of a single Tampax Pearl ultra tampon weighs an average of 4.35 grams.

60.     Each Tampax Pearl ultra tampon contains approximately .787 mcg of lead, which exceeds the MADL.

61.     If consumers use three Tampax Pearl ultra tampons in a 24-hour period they are exposed to approximately 2.36 mcg of lead, which is almost five times the MADL.

62.     If consumers use six Tampax Pearl ultra tampons in a 24-hour period they are exposed to approximately 4.72 mcg of lead, which is almost ten times the MADL.

**C. Defendant Fails to Disclose and Materially Omits that the Products Contain Lead**

63.     Defendant fails to disclose the lead in the Products in violation of California consumer protection law.

**CLASS ACTION COMPLAINT**

64.     Defendant's conduct is unlawful, misleading and constitutes a material omission, including because the Products pose a hidden health risk.

65.     Defendant had an independent duty to disclose the lead in the Products based on the unreasonable safety hazard associated with using the Products and/or because the Products are unfit for use.

66.     As set forth herein, lead is dangerous to human health, and particularly dangerous based on the manner of use of the Products.

67.     Based on the lead contained in the Products, Defendant is required to provide a "clear and reasonable" warning to consumers, including by "labeling a consumer product" pursuant to Proposition 65.

68.     Despite this express requirement, there is no warning on the products.

69.     Although Plaintiff does not bring claims pursuant to Proposition 65, Defendant's violation of Proposition 65 provides a predicate basis for violation of California's Unfair Competition Law, as set forth below.

**D. Reasonable Consumers Are Likely to Be Misled and Deceived by Defendant's Omission that the Products Contain Lead**

70.     Tampax tampons are trusted brands and household names.

71.     Reasonable consumers of Defendant's Products, like Plaintiff, have no reason to suspect or know that the Products contain lead.

72.     Defendant knew, or should have known, that the Products contain lead and willfully or intentionally failed to disclose this fact to consumers.

73.     Defendant owed consumers a duty of care to adequately test its Products for the presence of heavy metals and, if any such metals were found, to remediate or disclose their presence.

74.     Defendant, however, failed to disclose and materially omitted that the Products contain lead.

75.     The disclosure of lead in the Products would negatively impact Defendant's sales of the Products and its bottom line.

76.     If consumers knew that the Products contain lead, particularly in the amounts set forth herein, they would not purchase the Products.

77.     There are other menstrual options besides Defendant's tampons available on the market.

78.     Consumers, however, are deprived of making the informed choice between the Products and other menstrual products because Defendant fails to disclose the presence of lead in the Products.

79.     Plaintiff and reasonable consumers suffered economic injury based on the purchase price of the Products.

80.     If Plaintiff had known the truth about Defendant's Products, she would not have purchased the Products.

81.     Plaintiff and Class members were harmed based on money spent to purchase the Products, which they otherwise would not have spent if they had known that the Products contain lead.

**E.  <u>Reasonable Consumers Are Likley to Be Misled by Defendant's Label Representations</u>**

82.     The following are examples of the box label images of the Products:




**CLASS ACTION COMPLAINT**



83.   As depicted above, the Products contain the following Representations:

84.   The prominent, uniform "Front Label Representation" that the Products provide "ALL DAY* COMFORT & PROTECTION".[16]

85.   The prominent, uniform "Back Label Representation" that the Products provide "OUT OF SIGHT, OUT OF MIND PROTECTION™".

86.   The prominent, uniform "Side Label Representations" that the Products are the "#1 U.S. GYNECOLOGIST RECOMMENDED TAMPON BRAND" and that they are "FREE OF PERFUME"; "FREE OF ELEMENTAL CHLORINE BLEACHING"; "TAMPON FREE OF DYES"; and "CLINICALLY TESTED GENTLE TO SKIN".

87.   The Representations lead reasonable consumers to believe that the Products are safe to use, including because they are free for potentially harmful elements and ingredients.

88.   The Representations are misleading based on the lead contained in the Products.

89.   The Representations are advertising statements.

---

[16] The asterisk references the statement "UP TO 8 hr" on the front label.

**CLASS ACTION COMPLAINT**

90.     The Representations are not governed by any government or FDA regulation or requirement.

91.     Defendant voluntarily makes the Representations on the labels of the Products to appeal to consumers and to increase sales of the Products.

**IV.    PARTIES**

92.     Plaintiff Allison Barton is a citizen of California who purchased the Products in this judicial district during the class period. Plaintiff's claim is typical of all Class members in this regard.

93.     The advertising and labeling on the package of the Products purchased by Plaintiff, including the Representations, is typical of the advertising, labeling and representation of the Products purchased by members of the Class.

94.     The price paid by Plaintiff for the Products is typical of the price paid by members of the Class.

95.     Defendant The Procter & Gamble Company is an Ohio corporation with its principal place of business in Cincinnati, Ohio, and is a citizen of Ohio.

96.     Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

97.     At all times material hereto, Defendant was conducting business in the United States, including in California, through its services as a manufacturer and supplier to various stores in California and by, among other things, maintaining agents for the customary transaction of business in California.

98.     Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.

99.     The deceptive acts and omissions giving rise to Plaintiff's claims occurred in this jurisdiction and in this judicial district.

100.    The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents, and was

disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations and omission alleged herein.

### A. **Plaintiff Was Misled and Injured by Defendant's Misconduct**

101.  Plaintiff purchased the Products on numerous occasions during the Class Period, including in the following sizes: light, regular and super.

102.  To the best of her recollection, Plaintiff purchased the Products from CVS, Target, Rite Aid and Walgreens stores located in this judicial district.

103.  The price paid by Plaintiff for the Products varied based on the number of tampons included in the box, however, to the best of her recollection, the prices ranged from approximately $5.99 to $13.99 per box.

104.  To the best of her recollection, Plaintiff purchased the Products from a CVS store located in this judicial district between April and July of 2024.

105.  Plaintiff purchased the Products for personal use.

106.  At the time of purchase, Plaintiff viewed the label box images, including the Representations.

107.  At the time of purchase, Plaintiff did not know, and had no reason to know, that the Products contain lead.

108.  Acting reasonably under the circumstances, Plaintiff relied on the reputation of the Products and the Representations, and believed that the Products would be free from harmful effect and safe to use.

109.  Unbeknownst to Plaintiff at the time of purchase, the Products contain lead.

110.  Defendant materially omitted the fact that the Products contain lead.

111.  Had Plaintiff known at the time of purchase that the Products contain lead, Plaintiff would not have purchased the Products.

112.  Defendant continues to sell the misbranded Products.

113.  Plaintiff would like to purchase the Products in the future if the Products did not contain lead.

114.   Plaintiff continues to suffer harm because she is not able to rely on the labeling and advertising of the Products for their truth, and thus is unable to determine whether she can purchase the Products in the future.

115.   Unless Defendant is enjoined from failing to disclose the presence of lead in the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the lead in the Products has been address and remedied.

116.   Accordingly, Plaintiff's legal remedies are inadequate to prevent future injuries.

## V.   CLASS DEFINITION AND CLASS ALLEGATIONS

117.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself, on behalf of all others similarly situated, and as a member of the Class defined as follows:

> All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products in the State of California and who do not claim any personal injury from using the Products (the "Class").

118.   Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

119.   Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

**CLASS ACTION COMPLAINT**

120.   This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

121.   **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of hundreds of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

122.   **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether Defendant's omission and failure to disclose that the Products contain lead is likely to be material to reasonable consumers;
- Whether Defendant's omission and failure to disclose that the Products contain lead is likely to deceive reasonable consumers;
- Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising, labeling and selling the Products;
- Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq*.; Cal. Bus. & Prof. Code § 17500, *et seq*.; and/or the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;
- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct; and
- The proper measure of damages sustained by Plaintiff and the Class.

123.   **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

**CLASS ACTION COMPLAINT**

124. **Adequacy:** Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

125. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

      a.    The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

      b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

      c.    Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

      d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

      e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best

available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

126.   Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

127.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

128.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unfair and Unlawful Business Acts and Practices**
**(Business and Professions Code § 17200, *et seq.*)**
**(*for Plaintiff and the Class*)**

129.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

130.   Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL").  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . .."

131.   Plaintiff brings this claim seeking restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct, as described herein.

132.   Defendant's knowing conduct, as alleged herein, constitutes an "unfair"

and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

133.    Defendant's conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendant omitted and failed to disclose that the Products contain lead.

134.    Defendant was and is aware that its omission is material to consumers.

135.    Defendant was and is aware that its omission is misleading based on the Representations made on the Product labels, as described and depicted herein.

136.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

137.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

138.    Defendant's misrepresentation and omission of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.

139.    Defendant's conduct in making the omission described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.

140.    This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

141.    In addition, Defendant's omission that the Products contain lead constitutes an "unlawful" practice because, as described herein, the Product labels fail to comply with California's Proposition 65.

142.   Accordingly, Proposition 65 provides a predicate violation for a violation of the UCL.

143.   Plaintiff and members of the Class could not have reasonably avoided injury. Defendant's uniform Representations and material omission regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations and omission were misleading.

144.   Plaintiff purchased the Products with the reasonable belief that the Products were safe and did not contain harmful elements or ingredients, and without knowledge of Defendant's material omission that the Products contain lead.

145.   Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

146.   As a result of the business acts and practices described above, Plaintiff and members of the Class are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

147.   Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

148.   As a result of the business acts and practices described above, pursuant to § 17203, Plaintiff and members of the Class are entitled to an order enjoining such future wrongful conduct on the part of Defendant.

## SECOND CAUSE OF ACTION
### Deceptive Advertising Practices
### (California Business & Professions Code §§ 17500, *et seq.*)
### (*for Plaintiff and the Class*)

149.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

150.   California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .."

151.   Defendant violated § 17500 by making the Representations and failing to disclose that the Products contain lead; and by representing that the Products possess characteristics and value that they do not have.

152.   Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiff to purchase the Products.

153.   Defendant's uniform Representations and material omission that the Products contain lead were likely to deceive, and Defendant knew or should have known that they were misleading.

154.   Plaintiff purchased the Products in reliance on the Product labeling, including that the Product labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations and omission.

155.   Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

156.   The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

157.   In making the Representations and omission alleged herein, Defendant knew or should have known that the Representations and omission were deceptive and/or misleading, and acted in violation of § 17500.

**CLASS ACTION COMPLAINT**

158.   As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500 Plaintiff and members of the Class request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

159.   As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the Class request an Order pursuant to § 17535 enjoining such future wrongful conduct on the part of Defendant.

**THIRD CAUSE OF ACTION**
**Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(*for Plaintiff and the Class*)**

160.   Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

161.   Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

162.   The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

163.   The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

164.   Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

165.   Plaintiff and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d).

166.   Purchase of the Products by Plaintiff and members of the Class are "transactions," as defined by the CLRA in California Civil Code §1761(e).

167.   Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that the

**CLASS ACTION COMPLAINT**

Products are represented as being free from potentially harmful elements and ingredients when they contain an unsafe amount of lead, as described herein.

168.    Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by materially omitting and failing to disclose that the Products contain lead.

169.    In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded as described herein.

170.    Defendant's uniform Representations and omission regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations and omission were deceptive and/or misleading.

171.    Plaintiff and members of the Class relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

172.    Plaintiff and members of the Class were unaware of the existence of facts that Defendant suppressed and failed to disclose, including that the Products contain lead.

173.    Plaintiff and members of the Class would not have purchased the Products had they known the truth about the lead contained in the Products.

174.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct.

175.    As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiff and members of the Class request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

## **PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

**CLASS ACTION COMPLAINT**

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B.     For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.     For an order awarding, as appropriate, compensatory and monetary damages to Plaintiff and the Class;

D.     For an order awarding injunctive relief;

E.     For an order awarding attorneys' fees and costs;

F.     For an order awarding pre-and post-judgment interest; and

G.     For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:     July 29, 2024                      Respectfully submitted,

KAMBERLAW, LLP


By: *s/ Naomi B. Spector*
     NAOMI B. SPECTOR

3451 Via Montebello, Ste.192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364
Email: nspector@kamberlaw.com

**CLASS ACTION COMPLAINT**