Andrew Soukup (*pro hac vice*)
David N. Sneed (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Email: asoukup@cov.com
Email: dsneed@cov.com

Megan L. Rodgers (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: (650) 632-4700
Email: mrodgers@cov.com

*Attorneys for Defendant The Procter & Gamble Co.*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| ALLISON BARTON and JANA MORENO, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>    Defendant. | Civil Case No. 3:24-cv-01332-GPC-SBC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Gonzalo P. Curiel<br>Courtroom: 2D<br>Hearing Date: June 13, 2025<br>Hearing Time: 1:30 p.m. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant The Procter & Gamble Company ("P&G") hereby moves to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). This motion is noticed for June 13, 2025, before the Honorable Gonzalo P. Curiel, United States District Court for the Southern District of California, Courtroom 2D, 221 West Broadway, San Diego, CA 92101.

The motion is based on this notice and motion, the supporting memorandum of points and authorities, all pleadings and documents on file in this matter, and such oral or written evidence or argument as may be presented in connection with this motion.

Dated: April 7, 2025

Respectfully submitted,

*/s/ Andrew Soukup*
Andrew Soukup (*pro hac vice*)
David N. Sneed (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Email: asoukup@cov.com
Email: dsneed@cov.com

Megan L. Rodgers (SBN 310344)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: mrodgers@cov.com

*Attorneys for Defendant*
*The Procter & Gamble Co.*

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................... 1

BACKGROUND ......................................................................................... 2

    A.    P&G Manufactures Tampax Tampons.................................................. 2

    B.    Researchers Publish a Study About Metal Exposure in Tampons....... 4

    C.    The FDA's Examination of Metal Exposure Through Tampons......... 5

    D.    This Court Dismisses Plaintiffs' Prior Complaint. ........................... 6

    E.    The Second Amended Complaint. ........................................................ 6

PROCEDURAL STANDARD ..................................................................... 7

ARGUMENT ............................................................................................... 8

I.    Plaintiffs Fail to Plausibly Allege That They Purchased Tampons That
Contain Lead........................................................................................... 8

II.    Plaintiffs Fail to Plead an Actionable Misrepresentation. ............... 9

    A.    Plaintiffs Fail to Allege Facts That the Tampons Are Not Safe. ....... 10

    B.    No Reasonable Consumer Would Believe the Challenged Statements
Relate to Lead................................................................................... 13

III.    Plaintiffs Also Fail to State a Claim Under the UCL's "Unlawful" or
"Unfair" Prongs. ........................................................................... 17

    A.    Plaintiffs Do Not Plausibly Allege P&G's Conduct Was "Unlawful."
................................................................................................... 18

    B.    Plaintiffs Do Not Plausibly Allege P&G's Conduct Was "Unfair.".. 19

IV.    Plaintiffs' Restitution & Disgorgement Claims Remain Foreclosed by
*Sonner*.................................................................................................. 20

CONCLUSION .......................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andrade-Heymsfield v. Danone US, Inc.*,
    2019 WL 3817948 (S.D. Cal. Aug. 14, 2019)....................................................17

*In re Apple Processor Litig.*,
    2023 WL 5950622 (9th Cir. Sept. 13, 2023) ....................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................7

*Barnes v. Nat. Organics, Inc.*,
    2022 WL 4283779 (C.D. Cal. Sept. 13, 2022) ...................................................17

*Barton v. Kimberly-Clark Corp.*,
    2025 WL 486316 (S.D. Cal. Feb. 13, 2025) (Curiel, J.) ..............................18, 19

*Bates v. Abbott Lab'ys*,
    727 F. Supp. 3d 194 (N.D.N.Y. 2024)..............................................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................7, 19

*Bodle v. Johnson & Johnson Consumer Inc.*,
    2022 WL 18495043 (N.D. Cal. Feb. 24, 2022) ..................................................8

*Brown v. Madison Reed, Inc.*,
    622 F. Supp. 3d 786 (N.D. Cal. 2022)..............................................................14

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .........................................................................13

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ...........................................................................21

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ....................................................................................18

*Clevenger v. Welch Foods Inc.*,
    2022 WL 18228288 (C.D. Cal. Dec. 14, 2022)................................................21

*Fahey ex rel. D.C. v. Deoleo USA, Inc.*,
  2018 WL 5840664 (D.D.C. Nov. 8, 2018) ........................................................8

*Ebner v. Fresh, Inc.*,
  838 F. 3d 958 (9th Cir. 2016) ......................................................................13

*Eidmann v. Walgreen Co.*,
  522 F. Supp. 3d 634 (N.D. Cal. 2021) .........................................................17

*Env't L. Found. v. Beech-Nut Nutrition Corp.*,
  235 Cal. App. 4th 307 (2015) .................................................................11, 12

*Fisher v. Nationstar Mortg. LLC*,
  2018 WL 1933300 (N.D. Cal. Apr. 24, 2018) .............................................18

*Gaminde v. Lang Pharma Nutrition, Inc.*,
  2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ..............................................9

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) (en banc) .......................................................7

*Guzman v. Polaris Industries Inc.*,
  49 F.4th 1308 (9th Cir. 2022) ...........................................................2, 20, 21

*In re Hain Celestial Heavy Metals Baby Food Litig.*,
  2024 WL 5239510 (E.D.N.Y. Dec. 27, 2024) .............................................12

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
  2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) .............................12, 14, 16, 17

*Hodsdon v. Mars, Inc.*,
  162 F. Supp. 3d 1016 (N.D. Cal. 2016) (9th Cir. 2018) .............................19

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .......................................................................7

*Kell v. Lily's Sweets, LLC*,
  2024 WL 1116651 (S.D.N.Y. Mar. 13, 2024) ...............................................9

*Ketayi v. Health Enrollment Grp.*,
  2021 WL 2864481 (S.D. Cal. July 8, 2021) ................................................21

*Krystofiak v. Bellring Brands, Inc.*,
  2024 WL 3012801 (N.D. Cal. June 14, 2024) ..................................11, 12, 15

*Lam v. Gen. Mills, Inc.*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012)................................................................15

*Levitt v. Yelp! Inc.*,
   2011 WL 13153230 (N.D. Cal. Mar. 22, 2011) ...................................................19

*Mateel Env't Just. Found. v. Env't Health Hazard Assessment*,
   24 Cal. App. 5th 220 (2018) .........................................................................11, 12

*Meyer v. Colavita USA Inc.*,
   2011 WL 13216980 (S.D. Fla. Sept. 13, 2011) .....................................................9

*Miller v. Philips N. Am. LLC*,
   2025 WL 582160 (N.D. Cal. Feb. 20, 2025) ...............................................14, 17

*Nguyen v. The Lovesac Co.*,
   2025 WL 950511 (E.D. Cal. Mar. 28, 2025)........................................................21

*Phan v. Sargento Foods, Inc.*,
   2021 WL 2224260 (N.D. Cal. June 2, 2021)........................................................20

*Romoff v. Gen. Motors LLC*,
   574 F. Supp. 3d 782 (S.D. Cal. 2021)..................................................................18

*Sebastian v. Kimberly-Clark Corp.*,
   2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) ...............................................15, 16

*Shay v. Apple Inc.*,
   2021 WL 1733385 (S.D. Cal. May 3, 2021) ........................................................20

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..........................................................................2, 20

*Souter v. Edgewell Pers. Care Co.*,
   542 F. Supp. 3d 1083 (S.D. Cal. 2021)................................................................16

*Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*,
   673 F. Supp. 3d 1083 (N.D. Cal. 2023)...............................................................18

*In re Trader Joe's Co. Dark Chocolate Litig.*,
   726 F.Supp.3d 1150 (S.D. Cal. 2024)......................................................11, 12, 17

*Turrey v. Vervent, Inc.*,
   2023 WL 6390620 (S.D. Cal. Sept. 29, 2023)......................................................21

*Wallace v. ConAgra Foods, Inc.*,
  747 F.3d 1025 (8th Cir. 2014) ....................................................................8

*Whiteside v. Kimberly Clark Corp.*,
  108 F.4th 771 (9th Cir. 2024) ..................................................................13

*Wright v. Charles Schwab & Co. Inc.*,
  2020 WL 6822887 (N.D. Cal. Nov. 20, 2020) .......................................19

**Statutes**

Cal. Code Regs. Tit. 27, § 25801 ............................................................11, 12

Cal. Civil Code § 1572......................................................................................18

Cal. Civil Code § 1573......................................................................................18

Cal. Civil Code § 1709......................................................................................18

Cal. Civil Code § 1710......................................................................................18

Cal. Civil Code § 1711......................................................................................18

Cal. Civil Code § 1770......................................................................................18

**Regulations**

16 C.F.R. § 260.9(c)..........................................................................................15

21 C.F.R. § 884.5460..........................................................................................5

21 C.F.R. § 888.5470..........................................................................................5

**INTRODUCTION**

When this Court dismissed Plaintiffs' prior complaint, this Court identified three fatal flaws with Plaintiffs' claims, all of which stem from the alleged presence of trace amounts of lead in tampons. *See* ECF No. 29 ("Order"). First, Plaintiffs "fail[ed] to provide sufficient detail regarding the testing" of the tampons, requiring dismissal of all of Plaintiffs' claims under Rule 9(b). *Id.* at 15. Second, Plaintiffs failed to plausibly allege that the tampons posed an "unreasonable safety hazard," as required for their omission claims. *See id.* at 22–23. Finally, Plaintiffs failed to allege that they lacked an adequate remedy at law with respect to their restitution or disgorgement claims. *See id.* at 24–25.

In their Second Amended Complaint ("SAC"), Plaintiffs have abandoned their failed omission claims and instead rely entirely on an affirmative misrepresentation theory. The SAC fares no better than the First Amended Complaint ("FAC"), and it should be dismissed with prejudice.

*First,* even following amendment, the SAC's testing allegations remain deficient; Plaintiffs still fail to plausibly allege that *they* purchased tampons that contain lead. Plaintiffs do not allege that they had their products tested. And while the SAC provides additional details about the testing Plaintiffs conducted, other courts have dismissed complaints when—as here—plaintiffs fail to allege facts showing that test results can be extrapolated across all of a company's products, including the products purchased by Plaintiffs. This Court should reach the same result.

*Second*, Plaintiffs fail to plausibly allege an affirmative misrepresentation. Plaintiffs' current theory of deception is that the tampons' packaging leads reasonable consumers to believe that the products are "safe to use." SAC ¶ 62. But as this Court recognized in its Order dismissing Plaintiffs' omission claims, there are no plausible allegations that the tampons are not, in fact, safe. Like the FAC, the SAC does not allege that lead is *even released* from tampons—let alone that any such lead poses safety concerns at the trace levels alleged here. The absence of such allegations is unsurprising given the FDA's recent findings that its review of the scientific literature "did not identify safety

1

concerns associated with tampon use and contaminant exposure" and that it "continues to recommend FDA-cleared tampons," which include the P&G tampons at issue here, "as a safe option for use." *Biocompatibility & Toxicology Program: Research on Medical Devices, Biocompatibility, & Toxicology*, FDA (Dec. 23, 2024), https://www.fda.gov/medical-devices/medical-device-regulatory-science-research-programs-conducted-osel/biocompatibility-and-toxicology-program-research-medical-devices-biocompatibility-and-toxicology (last accessed April 4, 2025) (attached hereto as Exhibit 1).[1] The misrepresentation claims also fail because no reasonable consumer would believe that the challenged statements relate to lead.

*Third,* the SAC's claims under the UCL's "unlawful" and "unfair" prongs fail because they are wholly derivative of Plaintiffs' claims under the UCL's "fraudulent" prong. Further, Plaintiffs' conclusory recitation of the elements of the applicable tests under these prongs is woefully deficient.

*Finally,* Plaintiffs' allegations regarding the inadequacy of legal damages with respect to their claims for restitution and/or disgorgement under the UCL still fail to clear the Ninth Circuit's high bar for equitable relief under *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834, 844 (9th Cir. 2020) and *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1315 (9th Cir. 2022).

This Court should dismiss the SAC with prejudice.

## BACKGROUND

### A.    P&G Manufactures Tampax Tampons.

P&G manufactures Tampax tampons in different sizes and sells them under different product lines. SAC ¶ 2 n.1.

---

[1] This Court previously took judicial notice of Exhibits 1–5 attached to this Motion in its Order. ECF No. 29 at 6–8.



The side panel of the boxes states that the tampons are "Free of Perfume," "Free of Dyes," and "Free of Elemental Chlorine Bleaching," *Id.* at 61, as well as that the tampons are




"Clinically Tested Gentle to Skin" and are the "#1 U.S. Gynecologist Recommended Tampon Brand." *Id.*

There are no representations about lead or any other heavy metals on either of the tampon boxes. *See id.* Nor do the challenged side-panel statements include representations

3

regarding any other ingredients in the tampons apart from the specific references to "perfumes," "elemental chorine bleach[]," and "dyes." *Id.* And, contrary to the suggestion in the SAC, the tampon boxes do not use the words "safe" or state that the products are free of "harmful elements and ingredients." *See, e.g.*, *id.* ¶ 4.

### B.    Researchers Publish a Study About Metal Exposure in Tampons.

Lead is a naturally occurring metal that is "abundantly distributed" and "used all over the world." *See* Ab Latif Wani, et al., *Lead Toxicity: A Review*, 8 INTERDISC. TOXICOLOGY 55, 62 (2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4961898/ (last accessed Sept. 20, 2024) (cited at SAC ¶ 16 n.4) (attached hereto as Exhibit 2). It is a "common environmental pollutant" that can be found in "the air, household dust, soil, water, and commercial products." *Id.* at 58.

In June 2024, researchers published a study discussing tampons as a source of potential metal exposure. *See* Jenni A. Sheartson, et al., *Tampons as a Source of Exposure to Metal(loid)s*, ENV'T INT'L, August 2024, https://www.sciencedirect.com/science/article/pii/S0160412024004355 (last accessed Sept. 20, 2024) (cited at SAC ¶ 18 n.5) ("June 2024 study") (attached hereto as Exhibit 3). While the study involved 14 tampon brands, the researchers did not identify any brands by name. Plaintiffs do not allege that the study involved P&G's Tampax tampons. These researchers noted that "[t]o [their] knowledge, no previous studies have measured metals in tampons," there is a "lack of data on the absorption of chemicals through the vaginal mucosa," and "no risk assessments have investigated vaginal exposure to metals." *Id.* at 1, 7. The study found "measurable concentrations" of lead, among other metals, "in all the tested tampons." *Id.* at 5.

The researchers recognized the significant limitations of the study. First, the study lacked "sufficient power to assess statistical differences," given the small sample size. *Id.* at 7. Second, there was an increased "possibility of Type 1 error (false positives)" given the "multiple statistical tests" they conducted, which they described as a "reasonable tradeoff considering that our analysis is *exploratory*." *Id.* (emphasis added) Finally, the researchers recognized that "this study does not provide information about potential bio-

accessibility of tampon metals and thus we *cannot estimate health risks (if any) from tampon use*." *Id.* (emphasis added).  Instead, "future research is necessary to replicate our findings and determine whether metals can leach out of tampons and cross the vaginal epithelium into systemic circulation."  *Id.* at 8.  For these reasons, they concluded, "we cannot speculate on potential harm to the health of menstruators" based on the results.  *Id.* at 7.

### C.    The FDA's Examination of Metal Exposure Through Tampons.

The FDA regulates tampons as Class II medical devices.  *See* 21 C.F.R. §§ 884.5460, 888.5470.  In response to concerns about tampon safety following the June 2024 study, on September 10, 2024, the FDA announced that it had commissioned an independent literature review regarding the presence of contaminants including heavy metals in tampons and initiated an internal laboratory study to evaluate if any metals in tampons may be released and absorbed by the body.  *See Biocompatibility & Toxicology Program: Research on Medical Devices, Biocompatibility, & Toxicology*, FDA (Sept.10, 2024), https://www.fda.gov/medical-devices/medical-device-regulatory-science-research-programs-conducted-osel/biocompatibility-and-toxicology-program-research-medical-devices-biocompatibility-and-toxicology (last accessed Sept. 20, 2024) (attached hereto as Exhibit 4).

On December 23, 2024, the FDA announced that it had completed the literature review and released its full report containing the details of its review.  The FDA's review "*did not identify safety concerns associated with tampon use and contaminant exposure*." Ex. 1 (emphasis added); *see also Contaminants in Vaginal Tampons: A Systematic Literature Review (SLR)*, FDA (Dec. 5, 2024), https://www.fda.gov/media/184682/download?attachment (last accessed April 5, 2025) (attached hereto as Exhibit 5).  The FDA noted that existing studies do not address "how much, if any, of the contaminants identified are released from the tampon or absorbed through the vagina," and the agency's bench study regarding whether heavy metals may be released from tampons and absorbed by the body under ordinary use is ongoing.  *Id.*  The FDA stated that it

"continues to recommend FDA-cleared tampons," which include the P&G tampons at issue here, "as a safe option for use as a menstrual product."  Ex. 1.

### D.    This Court Dismisses Plaintiffs' Prior Complaint.

One week after the June 2024 study was published, Plaintiffs filed a putative class action complaint asserting affirmative misrepresentation and material omission claims against P&G based on the alleged presence of unsafe levels of lead in the tampons.  ECF No. 1 ¶ 9 (initial complaint); *see also* FAC ¶ 12.  Despite the June 2024 study's "lack of data" concerning whether lead can "leach out of tampons and cross the vaginal epithelium" (Ex. 3 at 7–8), Plaintiffs speculated that "the lead in the Products . . . can be absorbed directly into the bloodstream."  SAC ¶ 24.

This Court dismissed Plaintiffs' complaint, agreeing with P&G that Plaintiffs' "allegations as to the presence of lead fail[ed] to provide sufficient detail regarding the testing" and "fail[ed] to meet the heightened pleading standard of Rule 9(b).  Order at 15.  In dicta, this Court observed that if the FAC had satisfied Rule 9(b) (which it did not), a reasonable consumer could be misled by the challenged representations to believe that the tampons are free of "harmful substances, like lead."  *Id*. at 20.  Nonetheless, this Court dismissed Plaintiffs' omissions claims because the FAC failed to allege that "the tampons even release lead" and "how much, if any, of the contaminants identified are released from the tampon or absorbed through the vagina."  *See id*. at 22 (citations omitted).  Moreover, "even if the tampons released lead at the levels" identified in the FAC, Plaintiffs had not plausibly alleged that the specific level of lead in the products was "unreasonably hazardous."  *Id*. at 23.  Finally, this Court dismissed Plaintiffs' request for equitable relief in the form of restitution and/or disgorgement under the UCL and FAL because Plaintiffs did not plead that they lacked an adequate remedy at law.  *Id.* at 25.

### E.    The Second Amended Complaint.

Following this Court's Order, Plaintiffs filed the SAC, which abandoned their omission claims.  Instead, Plaintiffs continue to assert affirmative misrepresentation claims based on the alleged presence of lead in Tampax tampons.  *See* ECF No. 30.

Although the SAC includes additional testing allegations, Plaintiffs still do not provide details regarding the number of tampons tested or whether there was any variation in test results. *See id.* ¶¶ 26–38. They also do not allege that they tested the products they purchased. And while Plaintiffs include new allegations aimed at demonstrating the inadequacy of legal damages, the new allegations fall short of clearing that threshold. *See id.* ¶¶ 159–167.

Plaintiffs continue to assert class-action claims on behalf of a putative class of California citizens who purchased Tampax Pearl or Tampax Radiant tampons. These claims are brought under California's (i) Unfair Competition Law (UCL) (*id.* ¶¶ 130–167); (ii) False Advertising Law (FAL) (*id.* ¶¶ 168–186); and (iii) Consumers Legal Remedies Act (CLRA) (*id.* ¶¶ 187–207). Plaintiffs still "do not claim any personal injury from using the Products," *id.* ¶ 118, alleging instead that they suffered "economic injury based on the purchase price of the Products," *e.g.*, *id.* ¶¶ 72, 202. Plaintiffs seek both injunctive and monetary relief. *Id.* at 28 (Prayer for Relief).

### PROCEDURAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "asks for more than a sheer possibility that a defendant has acted unlawfully"; a complaint alleging facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" of entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Like the FAC, the SAC continues to "rely entirely on the same course of alleged fraudulent conduct[.]" Order at 13. Accordingly, since "Plaintiffs' claims 'sound in fraud,' they must satisfy the heightened pleading requirements of Rule 9(b)." *See id.* at 12–13. This requires Plaintiffs to allege "with particularity the 'who, what, when, where, and how' of the misconduct charged, so that defendants have notice and can defend against the particular misconduct." *Id.* at 13 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). In addition, the SAC must "state 'what is false or misleading about a

statement, and why it is false.'" *Id.* (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).

## ARGUMENT

### I.    Plaintiffs Fail to Plausibly Allege That They Purchased Tampons That Contain Lead.

Plaintiffs' SAC fails to cure the defect identified in this Court's prior order.  This Court held that all of Plaintiffs' claims require them to "allege facts that testing disclosed [the] presence [of lead] in the accused product purchased."  Order at 15.  As with Plaintiffs' prior complaint, Plaintiffs' SAC does not allege that Plaintiffs tested the products they purchased.  Instead, the SAC vaguely alleges that "testing was conducted on a homogenous sample of each of Defendant's light, regular, super, super plus and ultra size tampons." SAC ¶ 29.  It does not provide any details regarding how many tampons were tested or, if more than one tampon per size was tested, whether there was any variation in test results.

Thus, as with the prior complaint, Plaintiffs' "allegations as to the presence of lead fail[ed] to provide sufficient detail regarding the testing" without alleging facts that "disclosed [the] presence of such substances in the accused product purchased."  Order at 15.  The SAC has not cured that fundamental deficiency.

Nor have Plaintiffs pleaded facts to establish that this testing should be extrapolated to Plaintiffs' purchased products.  Although this Court acknowledged that "[e]xtrapolation of test results can be applied broadly where supported by factual allegations," *id.*, the vague allegations in the SAC do not support extrapolating the testing results in the SAC to Plaintiffs' purchased tampons.  While the SAC provides alleged test results for additional tampon sizes, SAC ¶ 46, it still does not contain any details suggesting that the testing can be extrapolated to *all* Tampax Pearl and Radiant tampons.  Plaintiffs do not even allege, for example, that they purchased a product from the same lot tested by Plaintiffs.  *See Bodle v. Johnson & Johnson Consumer Inc.*, 2022 WL 18495043, at *2 (N.D. Cal. Feb. 24, 2022) (dismissing claims for lack of injury and causation where "Plaintiff does not allege that she ever purchased or used a product produced from the allegedly contaminated batches").

Courts refuse to draw the sweeping inference that limited testing of a product means that *every* product exhibits the alleged defect. *See, e.g.*, *Fahey ex rel. D.C. v. Deoleo USA, Inc.*, 2018 WL 5840664, at *2 (D.D.C. Nov. 8, 2018) (testing of three bottles of product was insufficient to draw the inference that plaintiff's product had alleged defect); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) ("Without any particularized reason to think the consumers' own packages of Hebrew National beef actually exhibited the alleged non-kosher defect, the consumers lack Article III standing to sue ConAgra."); *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) (concluding it was "speculation" to allege that sample size of two products having alleged defect meant that the "bottle that [plaintiff] purchased must as well").

Here, too, the SAC lacks factual allegations as to why Plaintiffs' alleged testing of an unspecified number of tampons can be extrapolated to *the entirety* of the Pearl and Radiant lines, much less those purchased by Plaintiffs. *See* SAC ¶ 46 (alleging that testing "demonstrates that each size of the Products contain lead"). Courts routinely dismiss claims where allegations of a defect are premised on limited testing. *See, e.g.*, *Kell v. Lily's Sweets, LLC*, 2024 WL 1116651, at *4 (S.D.N.Y. Mar. 13, 2024) (dismissing claims for lack of standing where it was "impermissible conjecture to extrapolate" findings from limited sample "to every [product] ever sold, or to the specific Products purchased by [plaintiff]"); *see also Meyer v. Colavita USA Inc.*, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011) (dismissing claim where plaintiffs "support[ed] their claims with speculation and unwarranted extrapolation" based on "a very limited sampling"). This Court should do so as well.

## II. Plaintiffs Fail to Plead an Actionable Misrepresentation.

All of Plaintiffs' claims hinge on the same deficient theory of deception. Plaintiffs allege that various statements on the tampons' packaging mislead consumers into believing that the tampons "are safe to use, including because they are free from potentially harmful substances and ingredients," which according to Plaintiffs includes trace levels of lead. SAC ¶ 62; *see also id.* ¶¶ 4, 94, 152. Plaintiffs fail to allege an actionable misrepresentation

for two primary reasons. *First*, since Plaintiffs' theory of deception is that the tampons' packaging leads reasonable consumers to believe that the products are "safe," Plaintiffs have failed to identify any misrepresentation at all: as this Court previously recognized, Plaintiffs do not plausibly allege that the alleged lead in the tampons poses a health risk. *See, e.g.*, Order at 22–23 (observing that plaintiffs fail to plausibly allege that the tampons "even release lead," let alone that the specific lead levels alleged pose a health hazard). *Second*, no reasonable consumer would believe that the challenged statements, which are specific and truthful, relate to lead.

### A. Plaintiffs Fail to Allege Facts That the Tampons Are Not Safe.

The premise of Plaintiffs' misrepresentation claim is that the tampons' packaging misleads consumers to believe that the products are "safe," when in reality they contain "harmful" elements including lead. *See, e.g.*, SAC ¶ 4. Yet there are no plausible allegations that the tampons are not, in fact, safe, or that the specific levels of lead in the tampons are "harmful." *See* Order at 22–23.

As this Court recognized in holding that Plaintiffs had failed to allege an unreasonable safety hazard, "there is no allegation that the tampons even release lead," and future research is needed to "determine whether metals can leach out of tampons and cross the vaginal epithelium into systemic circulation." *Id.* at 22. And the FDA has announced that its comprehensive review of the scientific literature "did not identify safety concerns associated with tampon use and contaminant exposure."[2] Ex. 1. This Court can dismiss this claim for this reason alone.

Even if the SAC plausibly alleged that lead could, in fact, leach from tampons and enter the bloodstream—which it does not—Plaintiffs fail to plausibly allege that the specific level of lead in the tampons renders them unsafe. *See* ECF No. 15 (P&G's Mot.

---

[2] P&G expressly preserves its argument that this Court should dismiss this case under the doctrine of primary jurisdiction. *See* Motion to Dismiss, ECF No. 15 at 6–9. Because this Court denied that argument previously, P&G does not re-assert it here.

to Dismiss FAC) at 18–20. The SAC states that "no level of exposure to lead . . . is known to be without harmful effects," SAC ¶ 8; but given the ubiquity of lead in the environment, Plaintiffs cannot (and do not) suggest that *any* amount of lead in a product renders it unsafe. *See* Ex. 2 at 58 (explaining that lead is present in "the air, household dust, soil, water, and commercial products").

Instead, Plaintiffs attempt to allege that the products are unsafe by alleging that tampons "expose[] consumers to amounts of lead that exceed the California Proposition 65 Maximum Allowable Dose Level ("MADL") for reproductive toxicity." SAC ¶ 7. But this Court has already held that this is not sufficient. *See* Order at 23.

Rather, "Proposition 65['s] lead thresholds . . . trigger notice requirements," and the MADL does not establish the level at which lead is unsafe. *Id*. MADLs are set at a level 1,000 times lower than the "No Observable Effect Level," meaning "one can be exposed to a thousand times the safe harbor level without suffering any adverse . . . effects." *Env't L. Found. v. Beech-Nut Nutrition Corp.*, 235 Cal. App. 4th 307, 317 (2015); *see also* Cal. Code Regs. Tit. 27, § 25801 ("No Observable Effect Level" is the "maximum level of exposure at which a chemical has no observable reproductive effect."); *Mateel Env't Just. Found. v. Env't Health Hazard Assessment*, 24 Cal. App. 5th 220, 224, 225 (2018) (explaining the "no observable effect level" is "determined through scientific inquiry and assessment" and "divided by 1,000 to arrive at the [MADL], which is the threshold warning level for a listed chemical"). Because MADLs are set 1,000 times lower than the level of exposure at which a chemical would have an effect, courts have rejected attempts to establish that products are unsafe simply because the products exceed Proposition 65's MADL. *See Krystofiak v. Bellring Brands, Inc.*, 2024 WL 3012801, at *8 (N.D. Cal. June 14, 2024) (rejecting Plaintiffs' "curious[]" reliance on the "Prop 65 MADL to support the proposition that the Products 'contain high levels of lead'"); *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F.Supp.3d 1150, 1170 (S.D. Cal. 2024) (holding that plaintiffs' reliance on testing showing lead "above MADL levels" was insufficient to "plausibly allege[] an unreasonable safety hazard").

Even if Plaintiffs were correct that any amount exceeding MADLs poses a safety hazard, their allegations still do not establish that the tampons are unsafe because MADL is based on lead inhalation, not dermal (i.e. skin) contact.  In 1989, the California Office of Environmental Health Hazard Assessment (OEHHA) set the MADL for lead at 0.5 mcg per day.  *Mateel*, 24 Cal. App. 5th at 226–27.  When it did so, the agency "relied" on a "permissible exposure limit" set by OSHA.  *Id.* at 227–28. OSHA, in turn, developed this permissible exposure limit based on "the amount [of lead] OSHA determined workers breathed over an eight-hour period."  *Id.*  The SAC alleges exposure via dermal contact. *See, e.g.*, SAC ¶¶ 17, 24. But it does not allege that exposure through inhalation is equivalent to dermal exposure.  Nor could it, because Plaintiffs' sources confirm that there is no data suggesting lead can leach through a tampon via dermal contact.  *See supra* at 4.

MADLs are irrelevant for a final reason: "A company can establish its own MADL if it wishes."  *Env't L. Found.*, 235 Cal. App. 4th at 328 n.9.  While companies can rely on statutory MADLs, "nothing" in Proposition 65 "preclude[s]" companies from using other "evidence" "to establish that a level of exposure has no observable effect at one thousand (1,000) times the level in question."  Cal. Code Regs. Tit. 27, § 25801.  In other words, an amount exceeding a MADL means only that a company cannot rely on the statutory safe harbor—it does not mean the product is unsafe.  Accordingly, even if MADLs set safety standards (which they do not), and even if the lead MADL was based on dermal contact (which it is not), Plaintiffs' allegations still would not establish that the alleged lead levels are "unreasonably hazardous at the particular levels in the specific Products at issue in this case."  *Trader Joe's*, 726 F. Supp. 3d at 1170.

At bottom, Plaintiffs' affirmative misrepresentation claim is premised on the same deficient theory as their now-abandoned omissions claim.  Because Plaintiffs have not—and cannot—plausibly allege that the tampons contain unsafe or harmful levels of lead, their affirmative misrepresentation claims should be dismissed.  *See, e.g.*, *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *8 (N.D. Cal. Apr. 16, 2024) ("[A]ssuming without deciding that the [challenged representations] . . . *do* convey that the

Products are healthy and therefore do not contain unhealthy amounts of toxins like cadmium, Plaintiff's argument is flawed in that it fails to plausibly allege that the levels of the cadmium *in the Products* render them unhealthy"); *Krytofiak*, 737 F. Supp. 3d at 800 (dismissing affirmative misrepresentation claims where plaintiffs failed to "plausibly connect the representations of immune health or health(y) to the alleged lead levels they rely on in the complaint"); *In re Hain Celestial Heavy Metals Baby Food Litig.*, 2024 WL 5239510, at *12 (E.D.N.Y. Dec. 27, 2024) ("[W]ithout plausibly alleging what concentration of various heavy metals in baby food products would actually be unsafe for babies and toddlers to consume, Plaintiffs have failed to allege why the levels of these naturally-occurring heavy metals (other than arsenic) that are found in Hain's finished products would be material to the reasonable consumer.").

**B.    No Reasonable Consumer Would Believe the Challenged Statements Relate to Lead.**

Plaintiffs' affirmative misrepresentation claims also fail because no reasonable consumer would believe that the challenged statements relate to lead.

Plaintiffs' claims under the UCL's fraudulent prong, FAL, and CLRA are governed by the "reasonable consumer" standard, which requires them to "show that members of the public are likely to be deceived" by the challenged representation. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024). To meet this standard, Plaintiffs must allege "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F. 3d 958, 965 (9th Cir. 2016). Further, since Plaintiffs' claims sound in fraud, they must satisfy Rule 9(b)'s heightened pleading requirement, which requires them to allege with specificity "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted; brackets in original); *see also supra* at 7–9.

P&G recognizes that this Court's prior Order concluded in dicta that "the reasonable consumer could be misled into believing that the Products are free of lead based on the

Representations," while ultimately dismissing Plaintiffs' claims on other grounds. Order at 18, 20. Notwithstanding this Court's prior ruling, Plaintiffs cannot meet this standard here because the representations would not mislead the reasonable consumer into believing that the tampons would expose them to any harmful amount of lead.

        1.   <u>"FREE OF PERFUME," "ELEMENTAL CHLORINE BLEACHING," AND "DYES"</u>: Plaintiffs do not dispute that these three factual representations are true—the tampons are free of perfume, elemental chlorine bleach, and dyes, which are the only specific ingredients referenced in the challenged representations. Nor do Plaintiffs claim that any of those specific ingredients contain lead, or that the absence of perfume, chlorine bleaching, and dyes is otherwise known to be associated with the absence of lead. Instead, Plaintiffs' theory is that products free of one "harmful" ingredient or element must be free of every other "harmful" element or ingredient. These conclusory allegations fall well short of satisfying the pleading standard, which requires Plaintiffs to allege that the challenged statements mislead reasonable consumers to believe that the products are free of even the trace levels of lead at issue here.

        Courts routinely reject similar attempts by plaintiffs to "implausibly extrapolate[]" from "discrete, factual" "free of" claims. *Hayden.*, 2024 WL 1643696, at *7. For example, another court in this Circuit recently rejected Plaintiffs' theory that the challenged products' "BPA FREE" representations would mislead reasonable consumers to believe that the products were free of microplastics. *Miller v. Philips N. Am. LLC*, 2025 WL 582160, at *2 (N.D. Cal. Feb. 20, 2025). The *Miller* court explained, "[T]he representations that the Products are 'BPA Free' are specific and truthful, and therefore, cannot be treated as affirmative misrepresentations. . . . [S]uch a statement that the Products are free of BPAs cannot be extrapolated to imply that the Products are devoid of all harmful plastic byproducts." *Id.* Notably, the *Miller* plaintiffs had at least alleged that "BPA" and "microplastics" had certain commonalities, including that both were "plastic byproducts," but the court nonetheless found the alleged connection insufficient to support plaintiffs' theory of deception. *Id.* In contrast, the *only* connection between the "free of"

representations at issue here and the alleged lead contamination is Plaintiffs' conclusory allegation that these ingredients are all "harmful." *See, e.g.*, SAC ¶¶ 3, 4.

Consistent with *Miller*, numerous other courts have held that representations that a product is "free of" specific ingredients or contaminants cannot support affirmative misrepresentation claims based on different contaminants. *See, e.g.*, *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 802 (N.D. Cal. 2022) (holding that reasonable consumers would not interpret representation that hair color product is "free of ammonia, resorcinol, [and] PPD" as warranting that the product is "healthier, safer, or gentler than other hair color products"), *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) (rejecting theory that statement "gluten free" could lead consumers to believe that the products were free of other ingredients besides gluten); *Krystofiak.*, 737 F. Supp. 3d at 801 (holding that no reasonable consumer would conclude that representations including "lactose-free" conveyed any information about the product's lead content). This Court should therefore hold that the representations that the tampons are "free of perfume," "elemental chlorine bleaching," and "dyes" do not plausibly mislead reasonable consumers to believe that the tampons are also free of the trace lead levels at issue here.

Finally, even if representations regarding "perfume," "chlorine bleach[]" and "dyes" could be construed as claims pertaining to lead, the challenged statements are still consistent with guidance from the Federal Trade Commission (FTC) regarding "free-of" claims. The FTC's Green Guides state that "a free-of or does-not-contain claim is appropriate" and is not "deceptive" if a background-level substance was not "added intentionally" and does not cause "material harm that consumers typically associate with that substance." 16 C.F.R. § 260.9(c). Since there are no plausible allegations that the alleged lead was intentionally added or that it causes material harm, *see supra* at 9–13, the tampons' "free of" representations are consistent with the Green Guides' guidance.

2.    "CLINICALLY TESTED GENTLE TO SKIN": Similarly, the SAC contains no factual allegations establishing a connection that a product is free from "lead" with a

representation that the tampons are "clinically tested gentle to skin."  There are no allegations, for example, that lead is associated with skin irritation—let alone that the tampons at issue cause skin irritation.  *See* SAC ¶ 16 (alleging that the health effects from lead include "neurological [dysfunction], anemia, kidney damage, seizures, and in extreme cases, coma and death").  This distinguishes Plaintiffs' claims from *Sebastian v. Kimberly-Clark Corp*., 2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) (cited by Order at 20).  In *Sebastian*, plaintiffs alleged that a product advertised as containing "gentle," "hypoallergenic ingredients" that were "safe for skin" in fact contained ingredients classified as "a category 2 danger for skin irritation" and "associated with skin irritation and dermatitis."  *Id.* at *2 (cleaned up).  In contrast to *Sebastian*, where Plaintiffs plausibly alleged a specific connection between the "gentle" representation and the alleged presence of skin irritants, Plaintiffs here advance only the conclusory allegation that Plaintiffs believed the tampons were "safe to use and free from harmful elements and ingredients." SAC ¶ 4.  This is insufficient to extrapolate the tampons' "gentle to skin" representation to lead.  *Hayden*, 2024 WL 1643696, at *7 ("While Plaintiff pleads that the [challenged statements] misleadingly contribute to an overall imprimatur of healthiness, the Court finds this reading of these discrete, factual claims implausibly extrapolated [to heavy metals]"); *Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d 1083, 1094–95 (S.D. Cal. 2021) ("Plaintiff does not explain how or why a reasonable consumer would take 'hypoallergenic' and 'gentle' to mean that the hand wipe is *entirely free* of allergens or skin irritants").

    3.    <u>"#1 U.S. GYNECOLOGIST RECOMMENDED TAMPON BRAND"</u>: Plaintiffs do not dispute that the tampons are the "#1 gynecologist recommended tampon brand."  This is a true factual statement that must be assessed according to what it "actually says," rather than Plaintiffs' conclusory allegation regarding its "implied meaning."  *See Andrade-Heymsfield v. Danone US, Inc*., 2019 WL 3817948, at *7 (S.D. Cal. Aug. 14, 2019);  *see also Bates v. Abbott Lab'ys,* 727 F. Supp. 3d 194, 214 (N.D.N.Y. 2024)*, aff'd*, 2025 WL 65668 (2d Cir. Jan. 10, 2025) (rejecting plaintiffs' argument that the true

statement "#1 Doctor Recommended Brand" misled consumers to believe the products were free of excess sugar). Absent from the SAC are any factual allegations linking the alleged presence of lead in the product to the challenged "gynecologist recommended" statement. And to the extent the SAC's theory is that gynecologists would not recommend tampons that are "harmful," that theory fails because Plaintiffs have not plausibly alleged that the tampons are unsafe. *See supra* at 10–13.

*    *    *

In contrast to the other lead contamination cases cited in this Court's prior order, all of the statements at issue here are discrete, true statements. *Cf. Trader Joe's*, 726 F. Supp. 3d at 1158 (defendant's statements included broad representations such as "quality ingredients" and representations regarding the "health and safety of [its] customers"); *Barnes v. Nat. Organics, Inc.*, 2022 WL 4283779, at *7 (C.D. Cal. Sept. 13, 2022) (statements like "safe and natural dietary means" and reference to the product's protection from "harmful factors" were actionable misrepresentations on the presence of heavy metals). The three categories of challenged statements discussed above are instead akin to the types of representations that courts have found insufficient in similar contamination cases. *See, e.g.*, *Miller*, 2025 WL 582160, at *2 ("[T]he representations that the Products are "BPA Free" are specific and truthful, and therefore, cannot be treated as affirmative misrepresentations[.]); *Hayden*, 2024 WL 1643696, at *7 (rejecting plaintiffs' argument that statements that the product was free of specific ingredients created "an overall imprimatur of healthiness" that misled consumers to believe the product was free of trace lead). This Court should now reach the same conclusion.

## III. Plaintiffs Also Fail to State a Claim Under the UCL's "Unlawful" or "Unfair" Prongs.

The SAC attempts to plead claims under the "unlawful" and "unfair" prongs of the UCL that are wholly derivative of their claim under the fraudulent prong of the UCL. Because the fraudulent claim fails, the derivative unlawful and unfair claims fail as well. *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (dismissing

1    claims under unlawful and unfair prongs of UCL based "on the same alleged conduct the

2    Court found inadequate under the fraudulent misrepresentation and omission theories").

3    Plaintiffs' claims under the "unlawful" and "unfair" prongs fail for additional independent

4    reasons as well.

5          **A.**      **Plaintiffs Do Not Plausibly Allege P&G's Conduct Was "Unlawful."**

6          Plaintiffs' claim under the unlawful prong fails because they do not "sufficiently

7    plead a predicate violation." *Takahashi-Mendoza v. Coop. Regions of Organic Producer*

8    *Pools*, 673 F. Supp. 3d 1083, 1098 (N.D. Cal. 2023). An unlawful claim requires such a

9    hook because the UCL "borrows violations of other laws and treats them as unlawful

10    practices." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 165 (1999)

11    (cleaned up). Plaintiffs do not plausibly allege a violation of the CLRA for the reasons

12    explained above. And they no longer claim that P&G's alleged violation of Proposition 65

13    constitutes a predicate violation for the UCL unlawful prong, *see* ECF No. 30-3 at 32

14    (deleting that allegation), nor could they. *Barton v. Kimberly-Clark Corp.*, 2025 WL

15    486316, at *13 (S.D. Cal. Feb. 13, 2025) (Curiel, J.) ("relying on [Proposition 65] to

16    support a UCL claim would constitute an end run on the procedural requirements contained

17    in Proposition 65"). Plaintiffs' remaining allegations are limited to a conclusory assertion

18    that P&G has violated "California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770

19    and the laws and regulations cited herein, as well as the common law." SAC ¶ 153. That

20    is plainly insufficient. *Fisher v. Nationstar Mortg. LLC*, 2018 WL 1933300, at *5 (N.D.

21    Cal. Apr. 24, 2018) (dismissing UCL claims because "[m]erely reciting statutes" and

22    alleging violations in "conclusory terms without adequate factual allegations" is

23    insufficient). Plaintiffs do not plausibly plead any predicate violations of any law, so their

24    UCL unlawful claim necessarily fails. *See, e.g.*, *Romoff v. Gen. Motors LLC*, 574 F. Supp.

25    3d 782, 789 (S.D. Cal. 2021), *aff'd*, 2023 WL 1097258 (9th Cir. Jan. 30, 2023) (dismissing

26    UCL unlawful claim "because the Complaint does not adequately plead a violation of any

27    predicate law").

28

**B.     Plaintiffs Do Not Plausibly Allege P&G's Conduct Was "Unfair."**

Plaintiffs' claim under the unfairness prong fails because it is inadequately pleaded. Plaintiffs assert, without factual support, that P&G "was and is aware that its Representations are misleading," SAC ¶ 141, and the "utility of Defendant's conduct in labeling the Products with the Representations is outweighed by the harm to consumers," *id* ¶ 143. Courts apply three tests to evaluate UCL unfairness prong claims: "(1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law,' [the 'Tethering test']; (2) whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' [the 'Immoral test']; or (3) whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer [the 'Balancing test']." *Kimberly-Clark*, 2025 WL 486316, at *12. Regardless of which test is applied, however, Plaintiffs must offer more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Yet a formulaic recitation is all Plaintiffs offer. This Court has previously held in a related case Plaintiff filed against Kimberly-Clark that allegations that "Defendant had an 'improper motive' to financially benefit from its advertising practices" or "that Defendant's conduct constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws" are "conclusory and insufficient to plausibly allege a UCL claim under the 'unfair' prong." *Barton*, 2025 WL 486316, at *13. In other words, merely reciting the elements of the "immoral" and "balancing" tests under this prong is not enough. *See, e.g.*, *Wright v. Charles Schwab & Co. Inc.*, 2020 WL 6822887, at *5 (N.D. Cal. Nov. 20, 2020) ("The plaintiff's recitation of the legal standard and conclusory allegations of a UCL violation do not state an 'unfair' UCL claim.").

Courts routinely dismiss claims resting on such sparse allegations. *See, e.g.*, *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1027 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (dismissing UCL claim because plaintiff failed to tether harm to any

"specific constitutional, statutory, or regulatory provisions"); *Levitt v. Yelp! Inc.*, 2011 WL 13153230, at \*10–11 (N.D. Cal. Mar. 22, 2011) (dismissing UCL unfairness claim as "insufficiently pled" because of lack of supporting allegations).  This Court should do the same.

## IV.    Plaintiffs' Restitution & Disgorgement Claims Remain Foreclosed by *Sonner*.

"In order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy."  *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022).  That means "plaintiff must plead inadequate legal remedies in the operative pleading" before pursuing restitution or injunctive relief.  *Shay v. Apple Inc.*, 2021 WL 1733385, at \*4–5 (S.D. Cal. May 3, 2021) (Curiel, J.) (dismissing plaintiff's claims for equitable relief under the UCL and CLRA); *see also In re Apple Processor Litig.*, 2023 WL 5950622, at \*2 (9th Cir. Sept. 13, 2023) (upholding dismissal of equitable claims at the pleading stage).

This Court previously dismissed Plaintiffs' request for equitable relief in the form of disgorgement or restitution, observing that the FAC included "<u>no</u> allegations that the legal remedies are inadequate for the restitution or disgorgement that they seek under the UCL and FAL."  Order at 25 (emphasis in original).  In response to this Court's Order, Plaintiffs have attempted to plead around *Sonner*'s bar, *see* SAC ¶¶ 159–165, but the SAC's new allegations simply confirm that Plaintiffs have an adequate legal remedy.

For example, Plaintiffs sought damages under the CLRA, *see* SAC ¶ 206, and they could have pursued damages as a fraud claim.  The SAC alleges that Plaintiffs have been damaged because they "would not have purchased the Products had they known the truth," and on this basis they seek to recover the full "purchase price of the Products."  SAC ¶¶ 200, 202.  Those damages are the "same as what may be obtained as restitution." *Phan v. Sargento Foods, Inc.*, 2021 WL 2224260, at \*5 (N.D. Cal. June 2, 2021).  Although Plaintiffs allege "disgorgement permits recovery of interest,"  SAC ¶¶ 162, 182, courts have rejected similarly speculative allegations that equitable remedies would be different

from damages under the UCL and FAL.  *See Sargento Foods*, 2021 WL 2224260, at *5 ("Plaintiffs have simply speculated that restitution and damages could be different (*e.g.*, as to disgorgement)—but even that speculation is questionable given that any profits subject to disgorgement under [the UCL] would be limited.").

Regardless, "an alleged difference in the amounts Plaintiff may seek as damages and restitution does not make damages inadequate."  *Nguyen v. The Lovesac Co.*, 2025 WL 950511, at *7 (E.D. Cal. Mar. 28, 2025).  As another Court in this Circuit observed, "[i]t would be anomalous for [*Sonner*'s] rule to be avoidable merely because of the reality that claims for restitution and damages often will result in different recoveries." *Ketayi v. Health Enrollment Grp.*, 2021 WL 2864481, at *10 (S.D. Cal. July 8, 2021).  That is because "[t]he *existence* of an adequate legal remedy is what deprives a federal court of jurisdiction to address an alternative equitable claim."  *Turrey v. Vervent, Inc.*, 2023 WL 6390620, at *4 (S.D. Cal. Sept. 29, 2023) (emphasis in original).  Indeed, the Ninth Circuit in *Guzman* held that plaintiff had an adequate remedy at law even though he could not recover on that claim *at all* because it was time-barred.  *See Guzman*, 49 F.4th at 1313.

Similarly unpersuasive is the SAC's allegation that disgorgement may be "readily measured" whereas damages are "subject to complex and costly expert valuation."  SAC ¶ 183.  The Ninth Circuit has made clear that a remedy is not inadequate simply because it is more difficult to calculate or obtain.  *See Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at *5 (C.D. Cal. Dec. 14, 2022) ("The *Guzman* court's emphasis on the relief that could possibly be afforded under a claim, as opposed to possible hurdles the plaintiff might face in achieving that relief, indicates that mere differences in proof between the claims does not make the CLRA remedy inadequate.").

Since Plaintiffs fail to allege facts demonstrating that they lack an adequate remedy at law, their claims for restitution and/or disgorgement under the UCL and FAL must be dismissed.

# CONCLUSION

Plaintiffs have filed multiple versions of their complaint and yet cannot state a viable claim.  This Court should dismiss the SAC with prejudice.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (affirming denial of leave to amend because "there was no need to prolong the litigation by permitting further amendment" where amendment would be futile).

Dated: April 7, 2025                            Respectfully submitted,

                                                */s/ Andrew Soukup*

                                                Andrew Soukup (*pro hac vice*)
                                                David N. Sneed (*pro hac vice*)
                                                COVINGTON & BURLING LLP
                                                One CityCenter
                                                850 Tenth Street, NW
                                                Washington, DC 20001
                                                Telephone: (202) 662-6000
                                                Email: asoukup@cov.com
                                                Email: dsneed@cov.com

                                                Megan L. Rodgers (SBN 310344)
                                                COVINGTON & BURLING LLP
                                                3000 El Camino Real
                                                5 Palo Alto Square, 10th Floor
                                                Palo Alto, CA 94306
                                                Telephone: (650) 632-4700
                                                Email: mrodgers@cov.com

                                                *Attorneys for Defendant*
                                                *The Procter & Gamble Co.*