1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10
11  ALLISON BARTON and JANA              Case No.:  3:24-CV-01332-GPC-SBC
    MORENO, individually and on behalf of
12  others similarly situated,           **ORDER GRANTING IN PART AND**
13                          Plaintiffs,  **DENYING IN PART MOTION TO**
                                         **DISMISS**
14  v.
                                         **[ECF No. 33]**
15  THE PROCTER & GAMBLE
16  COMPANY, a Delaware company,
17                          Defendant.
18
19          This class action suit involves a number of consumer protection claims against
20  Defendant for allegedly misleading consumers regarding the safety of its tampon
21  products. Presently before the Court is Defendant's motion to dismiss the complaint. ECF
22  No. 33. Plaintiffs filed an opposition, and Defendant filed a reply. ECF Nos. 35, 36.
23  Based on the reasons below, the Court DENIES Defendant's motion to dismiss.
24  / / /
25  / / /
26
27
28                                      1

# BACKGROUND

Plaintiffs Allison Barton and Jana Moreno (collectively, "Plaintiffs") have sued Defendant The Procter & Gamble Company ("Defendant") for allegedly violating California consumer protection law regarding its Tampax Pearl tampons and Tampax Radiant tampons (collectively the "Products"). ECF No. 30, Second Amended Complaint ("Complaint" or "SAC") ¶ 2. Plaintiffs allege that Defendant's Product labels misled consumers into believing Products are free of lead. SAC ¶¶ 4-5.

## A. Lead in tampons

According to Plaintiffs, the World Health Organization states that "[t]here is no level of exposure to lead that is known to be without harmful effects" and that "[e]xposure to lead "can affect multiple body systems and is particularly harmful to young children and women of child-bearing age." SAC ¶¶ 8, 25. Citing to an article published in a scientific toxicology journal, Plaintiffs allege that lead accumulates in the body, which can lead to "severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death." *Id*. ¶ 16. The Complaint also alleges that the ordinary and expected use of the Products would expose consumers to more than the Maximum Allowable Dose Level ("MADL") of 0.5 micrograms of lead per day for reproductive toxicity, as established by California's Proposition 65. *Id*. ¶ 7.

Plaintiffs allege that scientific testing of Defendant's Products by an independent and accredited laboratory showed that the Products contained a substantial amount of lead. *Id*. ¶¶ 26, 35. In July 2024, this laboratory used Inductively Coupled Plasma – Mass Spectrometry ("ICP-MS"), a method recognized for precision in measuring heavy metal presence, to test homogenous samples of a variety of Defendant's Products. *Id*. ¶¶ 27-32. Plaintiffs allege that based on the daily average use of tampons, consumers are exposed to lead in excess of the MADL, regardless of what size Product they use. *Id*. ¶¶ 46-47.

1   ///

2   **B. Alleged misrepresentations**

3   According to Plaintiffs, the Products contain the following prominent messaging
4   ("Representations") on their boxes: (i) "#1 U.S. GYNECOLOGIST RECOMMENDED
5   TAMPON BRAND"; (ii) "FREE OF PERFUME"; (iii) "FREE OF ELEMENTAL
6   CHLORINE BLEACHING"; (iv) "TAMPON FREE OF DYES"; and (v) "CLINICALLY
7   TESTED GENTLE TO SKIN." *Id*. ¶ 3.

8   Plaintiffs allege that these Representations lead reasonable consumers to believe
9   that the Products are safe to use, including that "they are free from potentially harmful
10  elements and ingredients." *Id*. ¶ 62. According to Plaintiff, these Representations mislead
11  a reasonable consumer because the tampons contain lead, which Defendant fails to
12  disclose. *Id*. ¶ 63.

13  Plaintiffs allege that these Representations violate California's consumer
14  advertising law. *Id*. ¶ 170. Plaintiffs assert that Defendant knew, or should have known,
15  that the Products contained lead and either willfully or intentionally failed to disclose this
16  fact to consumers. *Id*. ¶ 172.

17  **C. Plaintiffs' injury and causes of action**

18  Plaintiffs Barton bought Tampax Pearl products in light, regular, and super sizes
19  on numerous occasions. *Id*. ¶ 87. Plaintiff Moreno bought Tampax Radiant products in
20  the regular size on numerous occasions. *Id*. ¶ 103. They purchased these Products without
21  knowing that the Products contained lead, but would not have bought them if they had
22  known of the true contents. *Id*. ¶¶ 12, 69, 73, 97, 112. They relied on the Representations
23  in believing the Products were free from harmful ingredients such as lead. *Id*. ¶¶ 94, 109.
24  Since consumers were "deprived of making the informed choice between the Products
25  and other menstrual products [that do not contain lead]," Plaintiffs allege that they and

26

27                                    3

28                                                              3:24-CV-01332-GPC-SBC

1  other consumers have suffered economic injury based on the purchase price of the

2  Products. *Id*. ¶¶ 12, 72.

3       Plaintiffs continue to suffer harm because they cannot rely on the labeling of the

4  Products and are unable to determine whether to buy them in the future, even though they

5  would like to purchase them if they do not contain lead. *Id*. ¶¶ 100, 115. Unless

6  Defendant is enjoined from failing to disclose the presence of lead in the future, Plaintiffs

7  will not be able to determine if there is lead or not in the Products. *Id*. ¶¶ 101, 116. Thus,

8  Plaintiffs allege that the legal remedies are inadequate to prevent future injuries. *Id*. ¶¶

9  102, 117.

10       Plaintiffs seek to represent a Class against Defendant for violations of state

11  consumer protection law: (1) Unfair Competition Law ("UCL"), California Business &

12  Professions Code sections 17200 *et seq.*; (2) False Advertising Law ("FAL"), California

13  Business & Professions Code sections 17500 *et seq.*; and (3) Consumers Legal Remedies

14  Act ("CLRA"), California Civil Code sections 1750 *et seq*. *Id*. at 22-28.

15  **PROCEDURAL HISTORY**

16       On July 29, 2024, Plaintiff Barton filed the original complaint. ECF No. 1. On

17  September 4, 2024, Plaintiff Barton filed the First Amended Complaint, joining Plaintiff

18  Moreno. ECF No. 10. On September 20, 2024, Defendant filed a motion to dismiss. ECF

19  No. 15. On October 18, 2024, Plaintiffs filed a response in opposition to the motion. ECF

20  No. 20. On November 1, 2024, Defendant filed a reply in support of its motion to

21  dismiss. ECF No. 21.

22       On February 13, 2025, this Court granted in part and denied in part Defendant's

23  motion to dismiss, and granted Plaintiffs leave to amend. ECF No. 29. On March 10,

24  2025, Plaintiffs filed a Second Amended Complaint. ECF No. 30. On April 7, 2025,

25  Defendant filed a motion to dismiss Plaintiffs 'SAC. ECF No. 33. On May 2, 2025,

26  Plaintiffs filed a response in opposition to the motion. ECF No. 35. On May 16, 2025,

27

28

Defendant filed a reply in support of its motion to dismiss. ECF No. 36. The Court now considers Defendant's Motion to Dismiss.

**LEGAL STANDARD**

**A. Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Election Integrity Project California, Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), backed by sufficient facts that make the claim "plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, it requires enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). In reviewing the plausibility of a complaint, courts must "accept factual allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Dent v. Nat'l Football League,* 968 F.3d 1126, 1130 (9th Cir. 2020). But courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023). Ultimately, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

**B. Federal Rule of Civil Procedure 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff bringing such a claim to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that a claim is "grounded in fraud" for the purposes of Rule 9(b) where "the Plaintiffs [ ] allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). To properly plead fraud with particularity under Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." Id. The purpose of Rule 9(b) is to require that allegations be "specific enough to give defendants notice of the particular misconduct which is alleged ... so that they can defend against the charge and not just deny that they have done anything wrong." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024).

Here, Plaintiffs' SAC claims rely entirely on the same course of alleged fraudulent conduct: Defendant's misrepresentations lead consumers to believe the Products are safe when in fact they contain lead. SAC ¶¶ 55-56. Accordingly, Plaintiffs' claims are subject to Rule 9(b)'s heightened pleading requirement. *See, e.g., Loh v. Future Motion, Inc.*, 2022 WL 2668380, at *5 (N.D. Cal. July 11, 2022) ("each claim is subject to the requirements of Rule 9(b)," including claims for CLRA and unjust enrichment).

## DISCUSSION

### A. UCL, FAL and CLRA

The UCL prohibits business practices that are "unlawful, unfair or fraudulent," Cal. Bus. & Prof. § 17200; the FAL prohibits the dissemination of any advertising "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500; and the CLRA proscribes

specific acts and practices in the sale of goods or services to be unlawful, including making affirmative misrepresentations or omissions regarding the "standard, quality or grade" of a particular good or service, Cal. Civ. Code § 1770(a).

Here, Plaintiffs' UCL, FAL and CLRA claims are premised on a theory of affirmative misrepresentation on the tampon labeling, which misleads consumers to believe that the tampons are free of any "potentially harmful elements," including lead. SAC ¶ 62. To plausibly allege a UCL, FAL or CLRA claim based upon misrepresentation, Plaintiffs "must allege that they relied on a misrepresentation and suffered injury as a result." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993). Claims under these statutes are governed by the "reasonable consumer" standard, which means that Plaintiffs must "show that members of the public are likely to be deceived" by the defendant's marketing claims. *Whiteside*, 108 F.4th at 777 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). These claims can be false, *or* true but must be "either actually misleading… or [have] a capacity, likelihood, or tendency to deceive or confuse the public." *Salazar v. Walmart, Inc.*, 83 Cal. App. 5th 561, 566 (Cal. Ct. App. 2022). Product labels should not be "read in the abstract," *Andrade-Heymsfield v. NextFoods, Inc.*, 2023 WL 2576770, at *3 (S.D. Cal. Mar. 20, 2023), but in the context of the entire packaging messaging.

Specifically, the complaint alleges that the packaging representations mislead the consumer to believe that the tampons are safe to use and free of harmful elements. SAC ¶ 4. This is so because the tampons contain a substantial amount of lead which exposes consumers to amounts of lead that exceed the California Proposition 65 Maximum Allowable Dose Level ("MADL") for reproductive toxicity of 0.5 micrograms of lead per day. *Id.* at ¶ 7.

As a threshold matter, Defendant challenges the testing that Plaintiffs rely on to show that the Products contain lead. Defendant also argues that Plaintiffs have not

3:24-CV-01332-GPC-SBC

plausibly alleged the health risks of lead in the Products, and that no reasonable consumer would understand the specific and truthful Representations to relate to lead.  ECF No. 33, Motion to Dismiss SAC ("Mot.") at 9-10. The Court addresses these issues in turn.

      1.    <u>Testing allegations</u>

Defendant claims that Plaintiffs' testing allegations are insufficient because they have not provided testing results for the products that they actually bought.  Mot. at 8. Defendant points out that the SAC only alleges that "testing was conducted on a homogenous sample of each of Defendant's light, regular, super, super plus and ultra size tampons" (SAC ¶ 29), and that it "does not provide any details regarding how many tampons were tested or, if more than one tampon per size was tested, where there was any variation in test results."  Mot. at 8.  Defendant also points out that Plaintiffs do not allege that they purchased a product from the same lot that was tested.  *Id.*

The Court finds that Plaintiffs are not required to test the products that they had actually purchased.  *See, e.g., Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1205 (S.D. Cal. 2023); *Solis v. Coty, Inc.*, 2023 WL 2394640, at *11 (S.D. Cal. Mar. 7, 2023).  Because Plaintiffs allege that the Products and Representations were uniform during the putative Class period and that the entire Product lines contain lead, *see* SAC ¶¶ 2 (n.1), 54, 69, Plaintiffs plausibly allege that the Products uniformly contain lead.  Not only are Plaintiffs not required to test their own products, they are also not required to allege that their specific purchases contained lead or that their purchases came from the same lot that was tested.  *See Grausz v. Hershey Co.,* 691 F. Supp. 3d 1178, 1188 (S.D. Cal. 2023) (plaintiff does not need to offer a "formulaic recitation that the specific unit of product she purchased" contains heavy metals); *Castillo v. Prime Hydration LLC*, 2024 WL 4133815, at *2 (N.D. Cal. Sept. 9, 2024) ("At this stage, however, Castillo does not need to allege that her specific purchases contained PFAS as she alleges that testing showed substantial levels of PFAS in the product.").

Defendant also argues that Plaintiffs have not pled any facts to explain why the Court should assume, or extrapolate, that the tampons they personally bought would have the same results/content as those tampons that *were* tested. Defendant latches onto one part of the prior order, in which the Court stated, "Plaintiffs rely on extrapolation from the super-size Products without any explanation as to why extrapolation is appropriate." Prior Order at 14. By "extrapolation," the Court was pointing out the leap of inference Plaintiffs made in the earlier Complaint: making conclusions about the light and regular sized Products based only on testing of super-sized Products. By extrapolation, the Court was *not* referring to any relationship between the tested tampons and the actually purchased tampons. Instead, the Court directed Plaintiffs to demonstrate that all sizes of the Products included in the Complaint were tested to contain lead. The Court finds now that Plaintiffs have successfully demonstrated that all sizes of the Products have been tested to contain lead and have elaborated on the testing with sufficient detail. *See* SAC ¶¶ 27-28. As the Court stated in its prior order, extrapolation of test results can be applied broadly where supported by factual allegations. *Cf. Onaka v. Shisheido Americas Corp.*, 2023 WL 2663877, at *5 (S.D.N.Y. March 28, 2023). At the pleading stage, the Court will accept the level of testing that was conducted to apply the test results across all sizes of the subject Products.

The Court also finds that the additional details regarding the laboratory and the testing are adequate. In the SAC, Plaintiffs *have* alleged the "testing methodology followed" (Inductively Couple Plasma—Mass Spectrometry), the "specific time of the testing" (the month/year the Products were tested), and "the qualifications of the testers" (the "independent laboratory" has multiple accreditations, including ISO/IEC 17025:2017 and the FDA Laboratory Accreditation for Analysis of Foods (LAAF)). *Trammel v. KLN Enters., Inc.*, 2024 WL 4194794, at *5 (S.D. Cal. Sept. 12, 2024); SAC ¶¶ 26-34. This is sufficient at this stage of the proceedings. Challenging the validity of Plaintiffs'

3:24-CV-01332-GPC-SBC

scientific testing can happen later with discovery and expert analysis. *See Bowen v. Energizer Holdings, Inc.*, 2024 WL 4352496, at *10 (9th Cir. Oct. 1, 2024) ("a plaintiff typically need not support her allegations with evidence at the pleading stage"). Plaintiffs' testing allegations on the testing satisfy the demands of Rule 9(b).

    2.  <u>Representations Regarding the Safety of the Products</u>

Plaintiffs have alleged that Defendant's Representations are likely to mislead reasonable consumers. Specifically, Plaintiffs challenge the following statements, *see* SAC ¶ 61: (i) "#1 GYNECOLOGIST RECOMMENDED TAMPON BRAND; (ii) "FREE OF PERFUME"; (iii) "FREE OF ELEMENTAL CHLORINE BLEACHING"; (iv) "TAMPON FREE OF DYES"; and (v) "CLINICALLY TESTED GENTLE TO SKIN." Plaintiffs allege that these Representations mislead reasonable consumers to believe that the Products are free from potentially harmful elements and ingredients, including lead. *Id*. ¶ 62.

Defendant argues that "since Plaintiffs' theory of deception is that the tampons' packaging leads reasonable consumers to believe that the products are 'safe,' Plaintiffs have failed to identify any misrepresentation at all…" Mot. at 10. This is because "Plaintiffs do not plausibly allege that the alleged lead in the tampons poses a health risk." *Id.*

Defendant points to the Court's prior order that recognized that Plaintiffs had failed to allege an "unreasonable safety hazard" because there was no allegation that the tampons "even release lead." Prior Order at 22. Even if the lead could leach from tampons and enter the bloodstream, Defendant argues that Plaintiffs fail to plausibly allege that the *specific* level of lead in the tampons renders them unsafe. Mot. at 10. According to Defendant, Plaintiffs are attempting to show that the Products are unsafe by alleging that the tampons expose consumers to amounts of lead that exceed the California

Proposition 65 Maximum Allowable Dose Level ("MADL") for reproductive toxicity. *Id.* at 11.

Plaintiffs respond that "Defendant's argument that Plaintiffs must show that the amount of lead in the Products is unsafe or harmful is based on caselaw addressing an omission claim, which Plaintiffs do not allege." Opposition at 11. Plaintiffs clarify that they are not alleging that Plaintiffs bought unsafe tampons, but that Plaintiffs do not want to purchase tampons containing lead and would not have bought the Products had they known the truth.

The Court's prior order finding that Plaintiffs had failed to allege an "unreasonable safety hazard" was made in the service of analyzing Plaintiff's fraudulent omission claim which has now been abandoned. Initially, Plaintiffs were proceeding on an omission theory that alleged that there was a duty to disclose because the lead in the tampons created an "unreasonable safety hazard." Meanwhile, under their current misrepresentation claim, Plaintiffs are not required to prove that the Products create an "unreasonable safety hazard." Instead, Plaintiffs must merely show that they were misled by affirmative packaging claims into believing that the tampons were free of amounts of lead which *could* affect their safety. *Cf. Rodriguez*, 703 F. Supp. 3d at 1210-11 (plaintiff failed to sufficiently plead lead created "unreasonable safety hazard" but sufficiently alleged messaging on labels conveyed that products do not contain unsafe levels of toxic heavy metals).

In its Reply, Defendant reframes the issue of the potential risk of harm as one relating to the "materiality" element of a fraudulent misrepresentation claim. Defendant asserts that Plaintiffs fails to "show a *material* misrepresentation." Reply at 5 (emphasis in original). Materiality is a necessary element of a misrepresentation claim. *See Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1078 (N.D. Cal. 2012) ("materiality and reliance are required for fraud claims based on affirmative misrepresentation"). However,

3:24-CV-01332-GPC-SBC

materiality is generally a question of fact "for the jury, unless the misrepresented fact is so obviously unimportant that the jury could not reasonably find that a reasonable [person] would have been influenced by it." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 682 (N.D. Cal. 2021).  Presence of heavy metals in products has been held to be a reasonably material concern.  *See e.g., In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1172 (S.D. Cal. 2024) (finding plaintiffs plausibly alleged economic injuries based on presence of heavy metals in products).  And "even assuming a reasonable consumer would only be misled… if [lead] were at a particularly high level, determining *what* that level would be for a reasonable consumer is not amenable to resolution on a motion to dismiss."  *Id*. at 1168 (emphasis added); *see also Rodriguez*, 703 F. Supp. 3d at 1205 ("What constitutes an 'unsafe level' of lead or cadmium is a question of fact not appropriately resolved on a motion to dismiss.").

Although materiality is a question of fact and plaintiffs do not need to allege the actual level of lead that would present a risk of harm, they must allege more than the mere presence of lead.  Just because lead was detected in the tampons does not by itself show that the representations regarding the safety of the product are untrue or misleading. *Cf. Loeb v. Champion Petfoods USA Inc*., 359 F. Supp. 3d 597, 605 (E.D. Wis. 2019) (plaintiff must offer some evidence of *potential* harm to establish a form of genuine deception; otherwise, every manufacturer would be required to disclose that their products contain heavy metals or be barred from making any assertion of quality about the products); *Arroyo*, 926 F. Supp. 2d at 1079 (rejecting claim that any amount of hexavalent chromium "would impact safety so much as to affect a purchasing decision"). Thus, in the context of a material misrepresentation, the plaintiff must still sufficiently allege that the amount of lead in the product created *some* potential risk of harm. Otherwise, the plaintiff could not plead that these representations were false or misleading; consumers cannot be misled by completely safe products.

In the instant case, Plaintiffs allege that the "ordinary and expected use of the Products exposes consumers to amounts of lead" that exceed the MADL.  SAC ¶ 7.  These alleged levels of lead are supported by Plaintiffs' testing, which the Court found to be adequate, *see supra*.  And Plaintiffs further allege that lead, through vaginal absorption, can have particularly harmful effects on the body.  *Id.* ¶¶ 18-25.  Specifically, that "if the lead to the Products passes through the vaginal epithelium… [it] can be absorbed directly into the bloodstream." SAC ¶ 24.

The Court acknowledges that such allegations have been held to be insufficient for some courts evaluating misrepresentation claims that involve heavy metals in products.  *See, e.g.*, *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 801 (N.D. Cal. 2024) ("[t]he complaint does not actually allege the level associated with these harms [of lead]"); *In re Hain Celestial Heavy Metals Baby Food Litig.*, 2024 WL 5239510, at *12 (E.D.N.Y. Dec. 27, 2024) ("without plausibly alleging what concentration of various heavy metals in baby food products would actually be unsafe… Plaintiffs have failed to allege why the levels of these naturally-occurring heavy metals (other than arsenic)… would be material to the reasonable consumer"); *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *8 (N.D Cal. Apr. 16, 2024) (plaintiffs "fail[] to plausibly allege that the levels of the cadmium *in the Products* render them unhealthy"). These courts have required plaintiffs to plead the actual level of the heavy metal that corresponds to the alleged harm posed by the heavy metal. The Court finds that this would veer too close to a question of fact that would be inappropriate to require at this procedural stage. *See Rodriguez*, 703 F. Supp. 2d at 1205.

Plaintiffs here have pled enough to allege that there is a sufficient amount of lead in the Products that presents a *potential* risk of harm. This should be enough. Their allegation is partly based on the fact that the tested levels of lead exceed the MADL. It is true that the Court has previously held that the MADL cannot serve as a proxy for an

13

"unreasonable safety hazard." *See* Prior Order at 23. However, here, the Proposition 65 MADL "provides guidance as to a reasonable consumer's purchasing decisions." *Sciortino v. Pepsico, Inc*. 108 F. Supp.3d 780, 794 (N.D. Cal. 2015). A level of lead exceeding the MADL would be material to a reasonable consumer. And more importantly, by alleging a level of lead that exceeds the MADL, Plaintiffs sufficiently allege that there is more than a *de minimis* quantity of lead which could affect a reasonable consumer's purchasing decision. The Court does not view the MADL as a proxy for safety, but rather as a helpful measure that supports the allegation that there are more than trace amounts of lead. The Plaintiffs then allege that these trace amounts of lead present a potential health risk – not because they exceed the MADL but because the lead can be absorbed quickly and into the bloodstream due to the unique nature of these Products.

Furthermore, the FDA is currently studying the health risks posed by lead in tampons. The Court's prior order took note that the FDA announced in December 2024 that it had completed a literature review of the available evidence on contaminants in tampons and their related health effects and found that none of the reviewed studies address how much, if any, of the contaminants identified are released from the tampon or absorbed through the vagina. ECF No. 28. At the same time, none of the reports indicated that lead was *not* released or absorbed. As a result, the FDA announced that an internal bench laboratory study was underway to determine if metals from tampon materials are released or absorbed in the body. *Id*.

At this time, the allegations of the harm to consumers are the subject of ongoing studies. With the current lack of scientific consensus, the Court is faced with two possibilities: the Products contain levels of lead that pose a potential health risk, or they do not. Given that the Court must view the SAC in the light most favorable to Plaintiffs, it cannot impose an interpretation of the Representations that is "no more plausible than

the well-pled allegations offered in the SAC." *Souter v. Edgewell Pers. Care Co.*, 2023 WL 5011747, at *3 (9th Cir. Aug. 7, 2023) ("At the motion to dismiss stage, it was improper for the district court to select between competing plausible interpretations of an ambiguous term.").  The SAC offers well-pled allegations that one possibility (harmful levels of lead) is just as plausible, if not more, than the alternate possibility (safe levels of lead).  And ultimately, determining whether or not the Representations are actually false or misleading to a reasonable consumer is not for the Court to decide, because this is usually "a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Chase v. Hobby Lobby Stores, Inc.*, 2018 WL 786743, at *5 (S.D. Cal. Feb. 8, 2018) ("given the factual inquiry required to adequately assess the merits of the reasonable consumer standard, the court cannot find at the motion to dismiss stage that [defendant's] advertising scheme would not mislead a reasonable consumer") (citation omitted).

Viewing the allegations in the light most favorable to the Plaintiffs, the Court finds that the allegations are sufficiently plausible to conclude that the Products contain an amount of lead so as to potentially harm consumers.  Plaintiffs have therefore plausibly alleged that the Representations are misleading based on the undisclosed lead in the Products.

### 3.  False or misleading

Next, Defendant asserts that the Representations are not misleading because they are both "true" and "specific."  Reply at 7 (quoting *Miller v. Philips N. Am. LLC*, 2025 WL 582160, at *2 (N.D. Cal. Feb. 20, 2025)).  Additionally, citing numerous cases and the Federal Trade Commission's Green Guides ("Green Guides"), Defendant asserts that "free of" claims "cannot support affirmative misrepresentation claims based on different contaminants."  Mot. at 15.

### a.  True and Specific

Defendant attempts to show that the Representations cannot be misleading because they are true and discrete.  But, without determining now whether the Representations are actually true, even discrete and true claims may be misleading.  *See Rodriguez*, 703 F. Supp. 3d at 1211-12 (finding that true and specific claims were plausibly alleged to be misleading, when the context projected a misleading belief that the Products did not contain heavy metals); *Salazar*, 83 Cal. App. 5th at 566 (finding that defendant's packing was misleading, even if it "may not have any false statements"); *see also Sebastian v. Kimberly-Clark Corp.*, No. 17-cv-442-WQH-JMA, 2017 WL 6497675, at *5 (S.D. Cal. Dec. 18, 2017) (discrete and true statements of "simple formula" and "gentle" are not mere puffery and were plausibly alleged misrepresentations in the context of synthetic preservatives within baby wipes).

As the Court has already found, the Representations here contain a myriad of claims which, when read in context, are conceptually related to the idea that the Products are free from harmful substances, like lead.  Prior Order at 20-21 (citing *Trader Joe s*, 2024 WL 1319725, at *1, 8 (defendant's statements about the quality of the products, like "quality ingredients" and "colors derived only from naturally available products," could mislead a reasonable consumer to think that there would be no heavy metals in the products)); *see Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1104-05 (N.D. Cal. 2012) (label statements "[t]aken together" could mislead reasonable consumers about the type and quantity of fruit in the products); *cf. Miller v. Philips N. Am. LLC*, 2025 WL 582160 at *2 (N.D. Cal. Feb. 20, 2025) (plaintiffs only challenged "a singular representation" that products were "BPA Free" in order to conclude that the products do not contain any harmful plastic byproducts).

### b. FTC's Green Guides

As support for its position on "free-of" claims, Defendant offers the Federal Trade Commission's ("FTC") Green Guides, which "set forth the Federal Trade Commission's

16

current views about environmental claims." 16 C.F.R. § 260.1(a). The Green Guides are expressly intended to "help marketers avoid making environmental marketing claims that are unfair or deceptive," and they "apply to claims about the environmental attributes of a product." 16 C.F.R. § 260.1. The Green Guides state that a "free-of or does-not-contain claim is appropriate" and not deceptive if a background-level substance was not "added intentionally" and does not cause material harm. 16 C.F.R. § 260.9.

But Plaintiffs have not averred any allegations pertaining to environmental marketing. As such, the FTC's Green Guides are irrelevant here. Plaintiffs do not bring any claims about the environmental marketing of the Products. The Representations "are voluntary advertising statements" implying the health and safety of the Products, that Defendant makes to "appeal to consumers and increase sales of the Products." SAC ¶¶ 57-59. The Court finds that the Green Guides do not apply and are not relevant here.

In *Whiteside v. Kimberly Clark Corp*., 108 F.4th 771 (9th Cir. 2024), the Ninth Circuit viewed the "plant-based" and "natural" labels on baby wipes made by Kimberly Clark and analyzed how these labels fared under the Green Guides' warning that unqualified representations like "made with renewable materials" are likely to mislead a reasonable consumer to believe the product is made entirely with renewable materials. *See Whiteside*, 108 F.4th at 784. The claims there dealt with environmental marketing and concerns, and the Ninth Circuit explicitly said as much. *See id*. at 784-85. Here, Plaintiffs make no reference to the environmental qualities of Defendant's products or the Representations. Except for perhaps the "chlorine-free" statement, all the other Representations, individually and collectively, are health-related marketing claims, attesting to the effects on skin, the lack of harsh ingredients, or the approval of gynecologists. SAC ¶ 3. Plaintiffs do not need to allege that they are *not* pursuing an environmental claim in order to get out of the auspices of the Green Guides. The burden is on the Defendant, as the movant, to show how the claims are environmental in nature

1   and *do* fall under the purview of the Green Guides.  And to the extent that Defendant

2   suggests that *Whiteside* goes further than environmental claims, that is plainly wrong:

3   nothing in *Whiteside* even suggests that the Green Guides should apply to consumer

4   protection claims *in general*, and the Court will not venture to do so.  Even though the

5   Green Guides are binding as "codified" law, *see* Cal. Bus. & Prof. Code § 17580.5, they

6   have binding force only where they actually apply.

7       For two further reasons, the Court refuses to apply the Green Guides. First,

8   Defendant cites no reason as to why one agency's (FTC) guidelines or rules should apply

9   with the same force in a domain regulated by a different federal agency (here, the FDA).

10  While it is a bedrock principle of administrative law that agencies generally must follow

11  their *own* rules and procedures, *see Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004),

12  there is no corresponding principle that these rules and guidelines should apply with the

13  same force to a device explicitly governed by another agency.  *See* 21 C.F.R. §§

14  884.5460, 884.5470 (tampons regulated by the FDA as Class II medical devices).

15  Defendant provides no principled reason — or case law — to assume that the rules and

16  guidelines of the FTC would apply here at all.

17      Secondly, even if the Green Guides were relevant and applicable, Defendant does

18  not explicate *how* the Court should apply them here, in its analysis of actionable

19  misrepresentation for a consumer protection lawsuit.  Defendant seemingly assumes that

20  if statements meet certain characteristics laid out by the FTC (involving background-level

21  substances, not intentionally added, not causing material harm), then the statements

22  would be conclusively not misleading.  If so, this would override, and make superfluous,

23  the reasonable consumer standard.  There would be no need to apply the reasonable

24  consumer standard if there is an automatic conclusion that reasonable consumers are not

25  misled when they fit certain standards under the Green Guides.  But the Court does not

26  see why or how it could refrain from operating under the well-understood reasonable

27

28

consumer standard without a clear directive from a higher court.  And to do otherwise would rub against the explicit no-preemption clause in the Green Guides.  *See* 260.1(b) ("These guides do not preempt federal, state, or local laws.").

**B. Unlawful and unfair prongs of UCL claim**

Defendant argues that Plaintiffs fail to state a claim under the UCL's unfair or unlawful prongs.

The UCL prohibits "any [1] unlawful, [2] unfair or [3] fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200  The "unfair" prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law.  *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1143 (2003).  California courts are still divided on which "unfair" standard to apply to consumer suits.  *See Nazemi v. Specialized Loan Serv., LLC*, 637 F. Supp. 3d 856, 864 (C.D. Cal. Oct. 31, 2022) (citing *Graham v. Bank of America, N.A.,* 226 Cal. App. 4th 594, 612 (2014) ("the appellate courts split regarding the definition of 'unfair 'business practices in consumer action"); *Hodsdon v. Mars, Inc*., 891 F.3d 857, 866 (9th Cir. 2018) (internal quotation marks and citations omitted) (proper test for whether an action violates the unfair prong is "currently in flux among California courts").

The Ninth Circuit has identified the following three tests that California courts have considered in addressing the "unfair" prong in a consumer case: "(1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law, [the "Tethering test"]; (2) whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, [the "Immoral test"]; or (3) whether the practice's impact on the victim outweighs "the

reasons, justifications and motives of the alleged wrongdoer [the "Balancing test"]." *Doe v. CVS Pharm.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020)[1] (internal citations omitted).

In the SAC, Plaintiffs allege that Defendant's conduct is unfair because it intentionally made the Representations to increase sales of the Products with the improper motive to derive financial gain at the expense of truthfulness; the utility of Defendant's conduct in labeling the Products with Representations is outweighed by the harm to consumers; and Defendant's conduct is injurious to competition because it prevents consumers from making an informed choice. *See* SAC ¶¶ 115-28.

Defendant argues that Plaintiffs only offer a "formulaic recitation" and "sparse allegations." Mot. at 19. Defendant states that conclusory allegations which merely recite the elements of the "immoral" and "balancing" tests under this prong are not enough. *Id*.

The Court agrees, and finds these allegations are too conclusory and insufficient to plausibly allege a UCL claim under the "unfair" prong. Plaintiffs' added allegations in the SAC simply restate and recite the "unfair" tests, without adding new facts that would support those allegations. *See Wright v. Charles Schwab & Co. Inc.*, 2020 WL 6822887, at *5 (N.D. Cal. Nov. 20, 2020) ("The plaintiffs' recitation of the legal standard and conclusory allegations of a UCL violation do not state an 'unfair' UCL claim."). The Court GRANTS the motion to dismiss the UCL claim premised on the "unfair" prong.

---

[1] The Court applies *Doe* because it is the most recent Ninth Circuit opinion on the unfair prong of the UCL concerning consumers. *See Epperson v. Genl Motors, LLC*, -- F. Supp. 3d --, 2023 WL 8628327, at *6 (S.D. Cal. Dec. 13, 2023) (recognizing different approaches adopted by the California courts of appeal as well as the Ninth Circuit and ultimately applying Doe "[g]iven that it is the most recently published Ninth Circuit opinion on the matter").

As to the unlawful prong, Plaintiffs allege that Defendant violated Civil Code §§ 1572, 1573, 1709, 1710, 1711 and 1770.  *See* SAC ¶¶ 153-55.  Plaintiffs are entitled to proceed with the UCL under the unlawful prong based upon an alleged violation of the CLRA (Civil Code § 1770) since the affirmative misrepresentation claim is moving forward, *see supra*.  Accordingly, the Court DENIES the motion as to the alleged CLRA violation.

**C. Equitable claims**

Plaintiffs seek disgorgement and injunctive relief under the UCL, SAC ¶¶ 159-66; restitution, disgorgement, and injunctive relief under the FAL, SAC ¶¶ 178-85; and damages and injunctive relief under the CLRA, SAC ¶¶ 206-07.  Defendant moves to dismiss the equitable claims under the UCL, FAL, and the CLRA, arguing that Plaintiffs have an adequate remedy at law, and therefore dismissal of equitable claims is required by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  Mot. at 20-21. Plaintiffs oppose, arguing that there is a current intra-circuit split in the Ninth Circuit for how to apply *Sonner* and that numerous courts have allowed Plaintiffs to plead both equitable and legal remedies at the pleading stage. *See* Opposition at 21-22.  Plaintiffs argue that they have pled sufficiently and specifically as to why legal remedies would be inadequate.  *Id.* at 22-23.

The Court, in its Prior Order, acknowledged the intra-circuit split on whether *Sonner* applied at the pleading stage and on how "exacting of a standard" *Sonner* imposed on plaintiffs pleading claims for equitable and legal claims.  *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) (citing *Byton N. Am. Co. v. Breitfeld*, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020)).  After surveying the jurisprudence, the Court found that *Sonner* did not necessarily preclude a plaintiff from pleading equitable remedies in the alternative, and that allowing claims to move forward

would also be consistent with Federal Rule of Civil Procedure 8, which allows for pleading in the alternative.  Prior Order at 25.

However, the Court went on to find that Plaintiffs in the FAC pled "no allegations that the legal remedies are inadequate for the restitution or disgorgement that they seek under the UCL and FAL."  *Id.*  Plaintiffs are required to plead inadequate legal remedies "[a]t a minimum."  *Id.*  Based on this, the Court dismissed those equitable claims with leave to amend for Plaintiffs to "expressly allege facts to support a claim that their remedies at law are inadequate."  *Id.* at 26.

In their amended Complaint, Plaintiffs now allege that their legal remedy is inadequate because (1) disgorgement "serves as a deterrent for future, unlawful conduct,"(2) equitable relief extends beyond recovery of legal damages, since disgorgement permits recovery of interest, (3) disgorgement "can be readily measured as a sum certain according to Defendant's financial records while legal damages are generally subject to complex and costly expert valuation," and (4) the reach of equitable relief may extend beyond that of legal damages, which under the CLRA are limited by statute to persons who purchase for personal, family, or household purposes. SAC ¶¶ 159-167.  Defendant attacks these allegations, arguing that "an alleged difference in the amounts Plaintiffs may seek as damages and restitution does not make damages inadequate" and that "a remedy is not inadequate simply because it is more difficult to calculate or obtain."  Mot. at 21 (citation omitted).

At this stage, the Court does not need to evaluate the truthfulness of Plaintiffs' allegations, but rather, assuming their truth, must test their legal sufficiency.  *See Iqbal*, 556 U.S. at 678.  Viewing Plaintiffs' allegations in the light most favorable to them, the Court finds that they have sufficiently pled that "'restitution under the CLRA or UCL would be more certain, prompt, or efficient' than the monetary damages [they] seek[], but

22

may ultimately not attain." *Coleman*, 554 F. Supp. 3d at 1065 (quoting *Anderson v. Apple Inc*., 500 F. Supp. 3d 993, 1008-09 (N.D. Cal. 2020)).

Although some district courts have interpreted *Sonner* to require that plaintiffs plead more than just a difference between the expected recovery of their legal and equitable claims, *see Ketayi v. Health Enrollment Grp*., 2021 WL 2864481, at *10 (S.D. Cal. July 8, 2021), other courts in the circuit have allowed plaintiffs to plead both legal and equitable claims in the same or similar circumstances.  *See, e.g.*, *Coleman v. Mondelez Int'l Inc*., 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021); *Jeong*, 2022 WL 174236, at *27; *Krause-Pettai v. Unilever United States, Inc*., 2021 WL 1597931, at *4 (S.D. Cal. Apr. 23, 2021).

*Guzman v. Polaris Indus. Inc*., 49 F.4th 1308, 1310 (9th Cir. 2022) does not foreclose the Court's conclusion that Plaintiffs can plead equitable relief under the UCL and FAL.  *Guzman* was concerned with the question of a district court's equitable jurisdiction to hear a plaintiff's UCL claim if the plaintiff had a time-barred CLRA claim. The Ninth Circuit concluded that the plaintiff's "failure to have timely pursued his CLRA claim cannot confer equitable jurisdiction on a federal court to entertain his UCL claim." *Guzman*, 49 F.4th at 1312.  The holding in *Guzman* has no relevant bearing to whether Plaintiffs, if having sufficiently pled inadequate legal remedy, can bring their equitable claims alongside their legal ones.  In other words, it is still an open question in this circuit of how *Sonner* applies at the pleading stage — and with how much force — to a plaintiff who pleads that legal remedy is inadequate and pleads equitable relief in the alternative. Furthermore, as Plaintiffs notes, *Guzman* addressed a motion of summary judgment, and Plaintiffs are only seeking to "*plead* equitable and legal claims in the alternative, not to prove an entitlement to both types of relief as a matter of law."  Opposition at 23. *Guzman* does not require that this Court dismiss Plaintiffs' equitable claims at this stage.

3:24-CV-01332-GPC-SBC

*See Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022).

As for injunctive relief, the Court previously found that Plaintiffs had sufficiently pled that legal remedy was inadequate. *See* Prior Order at 29; FAC ¶ 109. No changes have been made in the SAC in this regard. *See* SAC ¶¶ 99-103; 114-16 and FAC ¶¶ 108-112. As such, the Court finds, as it did before, that Plaintiffs have satisfied the pleading standard for injunctive relief.

The Court therefore DENIES Defendant's Motion to dismiss Plaintiffs' equitable claims.

## CONCLUSION

Based on the reasoning above, the Court GRANTS the Motion as to the UCL claim premised on the unfair prong with prejudice, and DENIES the Motion as to the rest of the claims.

**IT IS SO ORDERED.**

Dated: August 8, 2025

Hon. Gonzalo P. Curiel
United States District Judge

24