Andrew Soukup (*pro hac vice*)
David N. Sneed (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Email: asoukup@cov.com
Email: dsneed@cov.com

Megan L. Rodgers (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: (650) 632-4700
Email: mrodgers@cov.com

*Attorneys for Defendant The Procter & Gamble Co.*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| ALLISON BARTON and JANA MORENO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>Defendant. | Civil Case No. 3:24-cv-01332-GPC-SBC<br><br>**DEFENDANT THE PROCTER & GAMBLE COMPANY'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF OHIO; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Gonzalo P. Curiel<br>Courtroom: 2D<br>Hearing Date: January 9, 2026<br>Hearing Time: 1:30 p.m. |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant The Procter & Gamble Company ("P&G") hereby moves to transfer this case to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). This motion is noticed for January 9, 2026 at 1:30 p.m., before the Honorable Gonzalo P. Curiel, United States District Court for the Southern District of California, Courtroom 2D, 221 West Broadway, San Diego, CA 92101.

The motion is based on this notice and motion, the supporting memorandum of points and authorities, the Declaration of Chelsey Harshman, all pleadings and documents on file in this matter, and such oral or written evidence or argument as may be presented in connection with this motion.

Dated: October 14, 2025           Respectfully submitted,

*/s/ Andrew Soukup*
Andrew Soukup (*pro hac vice*)
David N. Sneed (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Email: asoukup@cov.com
Email: dsneed@cov.com

Megan L. Rodgers (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: (650) 632-4700
Email: mrodgers@cov.com

*Attorneys for Defendant*
*The Procter & Gamble Co.*

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

    A.    The *Barton* Litigation. ................................................................................................ 2

    B.    The *Foster* Litigation. ................................................................................................ 2

PROCEDURAL STANDARD ........................................................................................................ 4

ARGUMENT .................................................................................................................................... 4

I.    This Case Could Have Been Brought in the Southern District of Ohio ................... 4

II.    The Section 1404(a) Weigh in Favor of Transfer. ..................................................... 5

    A.    The Southern District of Ohio Is More Convenient for Witnesses ................. 5

    B.    The Southern District of Ohio Is More Convenient for the Parties. ............... 7

    C.    The Remaining Interests of Justice Factors Support Transfer to the Southern District of Ohio. ........................................................................................ 8

        1.    The Increased Efficiency of Litigating Cases Involving the Same Factual Allegations in the Same Forum Favors Transfer. .......... 8

        2.    The Parties' Contacts with the Relevant Forum Favor Transfer. .......... 9

        3.    The Costs of Litigation, Location of Documents, and Access to Sources of Proof Favor Transfer. ........................................................ 9

        4.    The Remaining Factors Favor Transfer or Are Neutral ...................... 10

CONCLUSION ............................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
   503 F.2d 384 (9th Cir. 1974) ............................................................................. 14

*Adachi v. Carlyle/Galaxy San Pedro L.P.*,
   595 F. Supp. 2d 1147 (S.D. Cal. 2009) .............................................................. 14

*In re Bozic*,
   888 F.3d 1048 (9th Cir. 2018) ............................................................................ 11

*Callaway Golf Co. v. Corp. Trade Inc.*,
   2010 WL 743829 (S.D. Cal. Mar. 1, 2010) ........................................................ 15

*Doornbos v. Pilot Travel Ctrs. LLC*,
   2005 WL 6167730 (S.D. Cal. Aug. 16, 2005) .................................................... 12

*Hawkins v. Gerber Prods. Co.*,
   924 F. Supp. 2d 1208 (S.D. Cal. 2013) .......................................................... 8, 13

*Hoffman v. Blaski*,
   363 U.S. 335 (1960) ..................................................................................... 11, 14

*Icon Health & Fitness, Inc. v. Calderon*,
   2013 WL 1289264 (S.D. Cal. Mar. 27, 2013) (Curiel, J.) ............................ 14, 15

*Italian Colors Rest. v. Am. Express Co.*,
   2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ................................................. 15

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) .............................................................................. 10

*Jovel v. i-Health, Inc.*,
   2012 WL 5470057 (C.D. Cal. Nov. 8, 2012) ......................................... 12, 13, 15

*LaCross v. Knight Transp., Inc.*,
   95 F. Supp. 3d 1199 (C.D. Cal. 2015) ................................................................ 16

*Lodestar Anstalt v. Bacardi & Co. Ltd.*,
   2017 WL 1434265 (C.D. Cal. Apr. 21, 2017) .................................................... 16

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) ......................................................................................... 13, 16

*Luna v. Wal-Mart Transp., LLC*,
   2018 WL 3569357 (C.D. Cal. July 11, 2018) ..................................................................... 13

*Metz v. U.S. Life Ins. Co. in City of N.Y.*,
   674 F. Supp. 2d 1141 (C.D. Cal. 2009) ............................................................................. 11

*Peace v. Parascript Mgmt., Inc.*,
   2013 WL 12137565 (C.D. Cal. Mar. 18, 2013) .................................................................. 12

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ............................................................................................ 11

*Rikos v. Procter & Gamble Co.*,
   2011 WL 1456096 (S.D. Cal. Apr. 13, 2011) ............................................................... 12, 15

*Romoff v. Johnson & Johnson Consumer Inc.*,
   2022 WL 3905301 (S.D. Cal. Aug. 26, 2022) ......................................................... 10, 12, 16

*Schwartz v. Frito-Lay N. Am.*,
   2012 WL 8147135 (N.D. Cal. Sept. 12, 2012) .................................................................... 13

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) .............................................................................................................. 10

*Vital Pharms., Inc. v. Monster Energy Co.*,
   2020 WL 6162796 (C.D. Cal. Aug. 27, 2020) ............................................................... 15, 16

**Statutes**

28 U.S.C. § 1391 ........................................................................................................................ 11

28 U.S.C. § 1404 ......................................................................................................... 6, 7, 10, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Seven days after this Court denied P&G's motion to dismiss, the same lawyers that represent Plaintiffs in this case filed a lawsuit in the Northern District of Illinois against P&G based on substantively identical allegations as the claims in this case. *See Foster v. The Procter & Gamble Co.*, 1:25-cv-09735 (N.D. Ill. Aug. 15, 2025). Plaintiffs in both cases challenge the same statements on Tampax Pearl and Tampax Radiant tampons (the "Products"), such as "Free of Perfume," as misleading on the grounds that they allegedly mislead consumers into believing that the Products are safe to use and free from lead. ECF 30 ("Am. Compl.") ¶¶ 61-63; Complaint ¶¶ 4-6, *Foster*, No. 1:25-cv-09735, ECF 6. Unlike this case, however, the *Foster* plaintiff seeks to represent a nationwide class. It makes no sense for cases based on the same factual allegations to proceed simultaneously in two different jurisdictions, or for multiple courts to be burdened by ruling on highly similar legal and factual issues.

P&G has asked the *Foster* court to transfer that case to the Southern District of Ohio, *see* Motion to Transfer Venue to the Southern District of Ohio, *Foster*, No. 1:25-cv-09735, ECF 13 (attached as Exhibit A), and this Court should do the same with this case. P&G's headquarters are located in that jurisdiction, and it is the only court in the country that could exercise personal jurisdiction over P&G with respect to the claims raised in this case and in *Foster*. It also is where the P&G witnesses are located. Rather than impose inconvenient travel on the relevant witnesses, or subject them to discovery in multiple proceedings, this Court should transfer this case to the Southern District of Ohio, where this case could have been brought to begin with.

The remaining factors that courts in the Ninth Circuit consider to determine whether to transfer a case pursuant to 28 U.S.C. § 1404(a) also weigh in favor of transfer. *First*, transfer to the Southern District of Ohio is more convenient for the party most connected to Plaintiffs' allegations. All of the operative facts underlying Plaintiffs' claims occurred in Ohio because "in a false advertising action, the heart of the matter lies where the

marketing and manufacturing decisions were made, which is typically at Defendant's headquarters." *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) (citation modified). *Second*, because the relevant records and witnesses are in Ohio, litigating this matter in the Southern District of Ohio would reduce overall litigation costs and minimize burdens on the parties. *Finally*, Plaintiff's choice of forum is not entitled to deference in a class action, particularly where, as here, the "heart of the matter" is not within the chosen forum and Plaintiffs' counsel has already elected to litigate similar claims in another forum. This Court should transfer this case to the Southern District of Ohio.

## BACKGROUND

### A. The *Barton* Litigation.

Plaintiffs Allison Barton and Jana Moreno filed their Second Amended Complaint in this action on March 10, 2025. They challenge several statements P&G makes on the labels of Tampax Pearl and Tampax Radiant tampons. Although none of these statements mentions lead or any other heavy metal, Plaintiffs nonetheless claim that statements on the Product labels—such as "Free of Perfume" or "Clinically Tested Gentle to Skin"—mislead consumers into believing that the Products are safe to use and free from lead. Am. Compl. ¶¶ 61-63. Based on these allegations, Plaintiffs seek to represent a class of California consumers. *Id.* ¶ 118.

This Court entered an Order granting in part and denying in part P&G's motion to dismiss. ECF 39. But no further litigation in this case has occurred: discovery has not yet started, and the initial case management conference in this case will not occur until October 31, 2025.

### B. The *Foster* Litigation.

On August 15, 2025, one week after this Court allowed some of Plaintiffs' claims to survive a motion to dismiss, the same lawyers that represent Plaintiffs filed another putative class action complaint in the Northern District of Illinois based on the same alleged conduct as the *Barton* lawsuit. The factual allegations in the *Barton* and *Foster* complaints are substantively identical. The main differences between the two cases are: (1) the *Foster*

plaintiff seeks to represent a nationwide class and several state subclasses of United States citizens who "purchased Defendant's Products for personal use and who do not claim any personal injury", and (2) the *Foster* plaintiff asserts claims for violations of the consumer protection laws of Illinois, among several other states. The following chart illustrates key similarities between the complaints:

| *Barton* | *Foster* |
|---|---|
| "On the Product labels, Defendant prominently states that the Products are:<br>　i.　The '#1 U.S. GYNECOLOGIST RECOMMENDED TAMPON BRAND";<br>　ii.　'FREE OF PERFUME';<br>　iii.　'FREE OF ELEMENTAL CHLORINE BLEACHING';<br>　iv.　'TAMPON FREE OF DYES'; and<br>　v.　'CLINICALLY TESTED GENTLE TO SKIN'"<br>Am. Compl. ¶ 3. | "On the Product labels, Defendant prominently states that the Products are:<br>　i.　The '#1 U.S. GYNECOLOGIST RECOMMENDED TAMPON BRAND";<br>　ii.　'FREE OF PERFUME';<br>　iii.　'FREE OF ELEMENTAL CHLORINE BLEACHING';<br>　iv.　'TAMPON FREE OF DYES'; and<br>　v.　'CLINICALLY TESTED GENTLE TO SKIN'"<br>ECF 6 ("*Foster* Compl.") ¶ 4. |
| "The label Representations are likely to lead reasonable consumers to believe that the Products are safe to use and free from harmful elements and ingredients." Am. Compl. ¶ 4. | "The label Representations are likely to lead reasonable consumers to believe that the Products are free from potentially harmful elements and ingredients." *Foster* Compl. ¶ 5. |
| "The results of the scientific testing demonstrate that all of the Products, regardless of variety, contain a substantial amount of lead." Am. Compl. ¶ 35. | "The results of the scientific testing demonstrate that all of Defendant's Products, regardless of type or size, contain a substantial amount of lead." *Foster* Compl. ¶ 48. |
| "The Representations are misleading based on the lead contained in the Products, which Defendant fails to disclose." Am. Compl. ¶ 63. | "The Representations are misleading based on the lead contained in the Products, which Defendant fails to disclose." *Foster* Compl. ¶ 28. |
| "Plaintiffs and Class members were harmed based on money spent to purchase the Products, which they otherwise would | "Plaintiff and Class members were harmed based on money spent to purchase the Products, which they otherwise would not |

| | |
|---|---|
| not have spent if they had known that the Products contain lead." Am. Compl. ¶ 74. | have spent if they had known that the Products contain lead." *Foster* Compl. ¶ 39. |

On October 13, 2025, P&G also filed a motion to transfer the *Foster* action to the Southern District of Ohio. *See generally* Ex. A.

## PROCEDURAL STANDARD

Under 28 U.S.C. § 1404(a), a case may be transferred to a different judicial district to promote "the convenience of parties and witnesses" and "the interest of justice." The decision to transfer is committed to the discretion of the district court and should be made on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation modified). The moving party bears the burden of demonstrating that transfer is warranted, and this burden is satisfied where the relevant factors weigh in favor of litigating in the transferee district. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

## ARGUMENT

This Court should transfer this case to the Southern District of Ohio. Courts in this District employ a two-step analysis to decide if transfer under 28 U.S.C. § 1404(a) is warranted. First, a court must determine "whether the transferee court is one where the action 'might have been brought.'" Second, the court evaluates "whether the convenience of the parties and witnesses, and the interests of justice favor transfer." *Romoff v. Johnson & Johnson Consumer Inc.*, 2022 WL 3905301, at *2 (S.D. Cal. Aug. 26, 2022).

Under this "individualized, case-by-case" test, *Stewart*, 487 U.S. at 29, this case should be transferred to the Southern District of Ohio because this case could have properly been filed there and it is more convenient for the parties and witnesses most connected to this case.

### I. This Case Could Have Been Brought in the Southern District of Ohio.

Section 1404(a) authorizes transfer to the Southern District of Ohio because this action "might have been brought" in that district. 28 U.S.C. § 1404(a). P&G is incorporated

and headquartered in the Southern District of Ohio, meaning that this suit could have been properly filed there as a matter of both personal jurisdiction and venue. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (personal jurisdiction exists in forum where corporation has its principal place of business); 28 U.S.C. § 1391(b) (venue proper in any "district in which any defendant resides").

Importantly, the Northern District of Illinois is *not* a location where this case—involving California plaintiffs suing an Ohio-headquartered corporation based on products allegedly purchased in California—could have been brought. For this reason, this Court cannot transfer this case to the Northern District of Illinois, even if P&G were to waive its venue objection there, because "the power of a District Court under [§] 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960); *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018) (district court abused discretion by transferring to a judicial district where venue was improper under 28 U.S.C. § 1391).

## II.   The Section 1404(a) Weigh in Favor of Transfer.

The relevant Section 1404(a) factors weigh overwhelmingly in favor of transfer.

### A.   The Southern District of Ohio Is More Convenient for Witnesses.

Convenience to potential party and non-party witnesses "is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) (citation modified). Here, all of the relevant witnesses are located in Ohio where P&G is headquartered, weighing in favor of transfer.

The core of Plaintiffs' claims is that Tampax Pearl and Tampax Radiant tampons are misleadingly labeled because their labels contain statements such as "Free of Perfume" or "Clinically Tested Gentle to Skin," which allegedly "lead reasonable consumers to believe that the Products are safe to use, including because they are free from potentially harmful substances" like lead. Am. Compl. ¶ 62. Plaintiffs' claims will therefore focus on P&G's

development, testing, labeling, and marketing of the Products; whether the Products contain lead; P&G's reasoning for including the challenged representations on the Product labels; and how consumers interpret the Product labels. *See id.* ¶¶ 48-74.

The P&G employees who have knowledge of those issues reside in Ohio. Declaration of Chelsey Harshman ("Harshman Decl.") ¶ 5. None are located in California. *Id.* Requiring those employees to travel to California would impose a serious inconvenience on them. *Id.* ¶ 9; *see also Doornbos v. Pilot Travel Ctrs. LLC*, 2005 WL 6167730, at *3 (S.D. Cal. Aug. 16, 2005) (granting transfer when "Defendants anticipate that they will have to call several managerial employees from the companies' headquarters."); *Peace v. Parascript Mgmt., Inc.*, 2013 WL 12137565, at *3 (C.D. Cal. Mar. 18, 2013) (similar); *Jovel v. i-Health, Inc.*, 2012 WL 5470057, at *4 (C.D. Cal. Nov. 8, 2012) (granting transfer because the company's employees "are the key witnesses, the court takes seriously the inconvenience to them").

Courts in this District regularly grant transfer in cases like these. For example, in *Romoff*, 2022 WL 3905301, the plaintiff's counsel brought a putative consumer class action in California challenging the labeling of certain "non-drowsy" cold medications. The Southern District of California transferred the case to the district encompassing the defendant's headquarters in Pennsylvania because "the crux of Plaintiff's claims lies in the Eastern District of Pennsylvania, where [the defendant] is located." *Id.* at *6. The same is true here: "the operative facts likely occurred in the Southern District of Ohio" where P&G is headquartered. *Rikos v. Procter & Gamble Co.*, 2011 WL 1456096, at *2 (S.D. Cal. Apr. 13, 2011). Transfer to Ohio is warranted here because "decisions regarding product marketing are made in that state," making it more convenient for relevant witnesses. *Id.* (granting transfer because "[b]ringing [P&G] employee witnesses to the Southern District of California adds a significant expense for Defendant and is another factor favoring transfer").

**B.     The Southern District of Ohio Is More Convenient for the Parties.**

The convenience of the parties likewise supports transfer. In weighing this factor, courts consider the extent to which the parties' contacts with the forum relate to the plaintiff's claims. *See Jovel*, 2012 WL 5470057, at *3. Here, P&G will have the central role at trial and has no relevant contacts with California, while Plaintiffs' residence in California will have little bearing on the litigation.

First, the key operative facts underlying Plaintiffs' claims occurred in Ohio. "[I]n a false advertising action, the heart of the matter lies where the marketing and manufacturing decisions were made, which is typically at Defendant's headquarters." *Hawkins*, 924 F. Supp. 2d at 1215. Here, decisions about the Products' packaging were made at P&G's headquarters in Ohio, Harshman Decl. ¶ 3, 5-6, making it a more convenient forum for P&G. While Plaintiffs may be inconvenienced by a trial in Ohio, their role "would not be nearly as significant as that of Defendant, its executives, and its scientists." *Jovel*, 2012 WL 5470057, at *3. Moreover, any inconvenience to Plaintiffs if this case is transferred will be minimized by the fact that P&G will commit to taking their depositions at a location convenient for them. *See Schwartz v. Frito-Lay N. Am.*, 2012 WL 8147135, at *5 (N.D. Cal. Sept. 12, 2012).

Second, the allegations in this action have virtually no connection to California. P&G has no relevant offices or employees in California, and the relevant decisions for product marking were made in Ohio. *See* Harshman Decl. ¶¶ 5, 6, 8. Moreover, although Plaintiffs allege that they purchased the Products in California, "the crux of the case lies not in [their] act of purchasing the product in [this District], but instead in issue of the alleged misrepresentations, which [they] would have perceived in identical form in any state." *Jovel*, 2012 WL 5470057, at *6; *see also Luna v. Wal-Mart Transp., LLC*, 2018 WL 3569357, at *2 (C.D. Cal. July 11, 2018) (granting motion to transfer putative class action to district encompassing defendant's headquarters).

Plaintiffs' choice of forum also receives less weight because they seek to represent a class. Although a plaintiff's choice of forum "is generally accorded" deference, "when

an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)); *see also Hawkins*, 924 F. Supp. 2d at 1215 (same).

### C. The Remaining Interests of Justice Factors Support Transfer to the Southern District of Ohio.

The remaining interests of justice factors firmly support transfer. Courts consider several non-exhaustive factors in determining whether the interests of justice favor transfer: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Icon Health & Fitness, Inc. v. Calderon*, 2013 WL 1289264, at *2 (S.D. Cal. Mar. 27, 2013) (Curiel, J.) (citation modified). In addition to these factors, courts in this District also consider "other practical considerations for the efficient and cost-effective resolution of claims." *Adachi v. Carlyle/Galaxy San Pedro L.P.*, 595 F. Supp. 2d 1147, 1151 (S.D. Cal. 2009). The applicable interests of justice factors and practical considerations weigh firmly in favor of transfer.

#### 1. The Increased Efficiency of Litigating Cases Involving the Same Factual Allegations in the Same Forum Favors Transfer.

This case and *Foster* involve substantively identical factual allegations. Plaintiffs here and the plaintiff in *Foster* are represented by the same lawyers and challenge the same statements on P&G's Tampax Pearl and Tampax Radiant tampons based on the same theory. It would be far more efficient—both for the Court and the parties—to litigate these cases in the same forum, and the Southern District of Ohio is the only place where it is possible to do so. *Hoffman*, 363 U.S. 335, 343–44.

Courts favor transfer in circumstances like these because of "the positive effects it might have in possible consolidation of discovery and convenience to witnesses and

parties." *A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974). Further, "[i]n addition to the possible consolidation of discovery and the conservation of time, energy and money, centralizing the adjudication of [this case and *Foster*] will also avoid the possibility of inconsistent judgments." *Callaway Golf Co. v. Corp. Trade Inc.*, 2010 WL 743829, at *7 (S.D. Cal. Mar. 1, 2010) (citation modified). The Court should therefore transfer this case to the Southern District of Ohio so that the same factual allegations at issue in both this case and *Foster* may be efficiently resolved by a single court.

### 2. The Parties' Contacts with the Relevant Forum Favor Transfer.

"[T]he respective parties' contacts with the forum" and "the contacts relating to the plaintiff's cause of action in the chosen forum" weigh in favor of transfer to the Southern District of Ohio. *Calderon*, 2013 WL 1289264, at *2.

As explained above, the relevant decisions about the marketing and development of the Products were made at P&G's headquarters in Cincinnati, Ohio. Harshman Decl. ¶ 3, 6; *see also Rikos*, 2011 WL 1456096, at *2 (granting motion to transfer false advertising class action against P&G because "the operative facts likely occurred in the Southern District of Ohio"). The alleged misrepresentations, and not the location where Plaintiffs purchased the Products, is the "crux of the case." *Jovel*, 2012 WL 5470057, at *6. For that reason, Plaintiffs' decision to litigate in this District "has little weight." *Id.*; *see also Italian Colors Rest. v. Am. Express Co.*, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) ("Plaintiffs' contacts with the forum . . . are of minimal value in a class action[.]").

### 3. The Costs of Litigation, Location of Documents, and Access to Sources of Proof Favor Transfer.

For similar reasons, "the differences in the costs of litigation in the two forums," "the ease of access to sources of proof," and "the availability of compulsory process" all weigh in favor of transfer. *Vital Pharms., Inc. v. Monster Energy Co.*, 2020 WL 6162796, at *2 (C.D. Cal. Aug. 27, 2020).

  Corporate records regarding the manufacturing, marketing, and labeling of the Products are located at P&G's headquarters in Cincinnati. Harshman Decl. ¶ 7. Relevant witnesses who may be deposed are also likely to be located in or around Cincinnati. *Id.* ¶¶ 5, 7. Given the location of the records and witnesses, litigating this matter in the Southern District of Ohio would reduce overall litigation costs. *See Lodestar Anstalt v. Bacardi & Co. Ltd.*, 2017 WL 1434265, at *5 (C.D. Cal. Apr. 21, 2017) (granting transfer because "litigation costs are reduced when venue is located near the most witnesses expected to testify" and "when the venue is in the district in which most of the documentary evidence is stored" (citation modified)); *Romoff*, 2022 WL 3905301, at *4 (granting transfer of non-drowsy case because "most of the non-testimonial evidence in this litigation is likely to be derived from Defendant's corporate records . . . and no records related to Tylenol are maintained in California").

  **4.** **The Remaining Factors Favor Transfer or Are Neutral.**

  The remaining interests of justice factors include (1) "the plaintiff's choice of forum," and (2) "the state that is most familiar with the governing law." *Vital*, 2020 WL 6162796, at *2. Plaintiff's choice of forum is entitled to little deference, and the factor regarding familiarity with the governing law is neutral.

  <u>Plaintiffs' choice of forum</u>. Plaintiffs' choice of forum deserves little deference for three reasons. First, as discussed above, deference to Plaintiffs' choice of forum is minimal when claims are brought on behalf of a class. *Supra* pp. 8-9. Second, the vast majority of the facts underlying Plaintiffs' claims, including the marketing and labeling of the Products, occurred outside this District. *Lou*, 834 F.2d at 739 ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [Plaintiffs'] choice is entitled to only minimal consideration."); *see also* Harshman Decl. ¶ 5-7. Finally, Plaintiffs' counsel has already chosen another district—the Northern District of Illinois—to litigate claims based on the same allegations at issue in this case.

  <u>Familiarity with the governing law.</u> Although the Complaint asserts claims under California law, "[f]ederal courts in other states are fully capable of applying California

law." *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1206 (C.D. Cal. 2015) (citation modified). This factor is thus neutral, because the Southern District of Ohio is capable of adjudicating Plaintiffs' claims brought under California law.

## CONCLUSION

For the foregoing reasons, P&G respectfully requests that the Court transfer this action to the Southern District of Ohio.

Dated: October 14, 2025

Respectfully submitted,

*/s/ Andrew Soukup*

Andrew Soukup (*pro hac vice*)
David N. Sneed (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Email: asoukup@cov.com
Email: dsneed@cov.com

Megan L. Rodgers (SBN 310344)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: (650) 632-4700
Email: mrodgers@cov.com

*Attorneys for Defendant
The Procter & Gamble Co.*