1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 ALLISON BARTON and JANA<br>12 MORENO, individually and on behalf of<br>others similarly situated,<br>13<br>14 v.<br>15 THE PROCTER & GAMBLE<br>16 COMPANY, a Delaware company,<br>17 | Case No.:  3:24-CV-01332-GPC-SBC<br><br>**ORDER DENYING THE MOTION<br>TO TRANSFER VENUE TO THE<br>SOUTHERN DISTRICT OF OHIO**<br><br>**[ECF No. 42]** |

11 ALLISON BARTON and JANA
12 MORENO, individually and on behalf of
others similarly situated,
13
                                    Plaintiffs,
14 v.
15 THE PROCTER & GAMBLE
16 COMPANY, a Delaware company,
17
                                    Defendant.

18

19       This class action suit involves a number of consumer protection claims against
20 Defendant for allegedly misleading consumers regarding the safety of its tampon
21 products. Presently before the Court is Defendant's Motion to Transfer Venue to the
22 Southern District of Ohio. ECF No. 42. Plaintiffs filed an opposition, and Defendant filed
23 a reply. ECF Nos. 46, 47. Based on the reasons below, the Court DENIES Defendant's
24 motion to transfer venue. The Court VACATES the hearing set for December 19, 2025.
25 / / /
26 / / /
27
28

1

# FACTUAL BACKGROUND

Plaintiffs Allison Barton and Jana Moreno (collectively, "Plaintiffs") have sued Defendant The Procter & Gamble Company ("Defendant") for allegedly violating California consumer protection law regarding its Tampax Pearl tampons and Tampax Radiant tampons (collectively the "Products"). ECF No. 30 ("Complaint" or "SAC") ¶ 2. Plaintiffs allege that Defendant's Product labels misled consumers into believing Products are free of lead. SAC ¶¶ 4-5.

### A. Lead in Tampons

According to Plaintiffs, the World Health Organization states that "[t]here is no level of exposure to lead that is known to be without harmful effects" and that "[e]xposure to lead 'can affect multiple body systems and is particularly harmful to young children and women of child-bearing age.'" SAC ¶¶ 8, 25. Citing to an article published in a scientific toxicology journal, Plaintiffs allege that lead accumulates in the body, which can lead to "severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death." *Id*. ¶ 16. The Complaint also alleges that the ordinary and expected use of the Products would expose consumers to more than the Maximum Allowable Dose Level ("MADL") of 0.5 micrograms of lead per day for reproductive toxicity, as established by California's Proposition 65. *Id*. ¶ 7.

Plaintiffs allege that scientific testing of Defendant's Products by an independent and accredited laboratory showed that the Products contained a substantial amount of lead. *Id*. ¶¶ 26, 35. In July 2024, this laboratory used Inductively Coupled Plasma – Mass Spectrometry ("ICP-MS"), a method recognized for precision in measuring heavy metal presence, to test homogenous samples of a variety of Defendant's Products. *Id*. ¶¶ 27-32. Plaintiffs allege that based on the daily average use of tampons, consumers are exposed to lead in excess of the MADL, regardless of what size Product they use. *Id*. ¶¶ 46-47.

2

### B. Alleged Misrepresentations and Causes of Action

According to Plaintiffs, the Products contain the following prominent messaging ("Representations") on their boxes: (i) "#1 U.S. GYNECOLOGIST RECOMMENDED TAMPON BRAND"; (ii) "FREE OF PERFUME"; (iii) "FREE OF ELEMENTAL CHLORINE BLEACHING"; (iv) "TAMPON FREE OF DYES"; and (v) "CLINICALLY TESTED GENTLE TO SKIN." *Id*. ¶ 3.

Plaintiffs allege that these Representations lead reasonable consumers to believe that the Products are safe to use, including that "they are free from potentially harmful elements and ingredients." *Id*. ¶ 62. According to Plaintiff, these Representations mislead a reasonable consumer because the tampons contain lead, which Defendant fails to disclose. *Id*. ¶ 63.

Plaintiffs allege that these Representations violate California's consumer advertising law. *Id*. ¶ 170. Plaintiffs assert that Defendant knew, or should have known, that the Products contained lead and either willfully or intentionally failed to disclose this fact to consumers. *Id*. ¶ 172.

Plaintiffs purchased these Products without knowing that the Products contained lead but would not have bought them if they had known of the true contents. *Id*. ¶¶ 12, 69, 73, 97, 112. They relied on the Representations in believing the Products were free from harmful ingredients such as lead. *Id*. ¶¶ 94, 109. Since consumers were "deprived of making the informed choice between the Products and other menstrual products [that do not contain lead]," Plaintiffs allege that they and other consumers have suffered economic injury based on the purchase price of the Products. *Id*. ¶¶ 12, 72.

Plaintiffs seek to represent a Class against Defendant for violations of state consumer protection law: (1) Unfair Competition Law ("UCL"), California Business & Professions Code sections 17200 *et seq.*; (2) False Advertising Law ("FAL"), California

3:24-CV-01332-GPC-SBC

Business & Professions Code sections 17500 *et seq.*; and (3) Consumers Legal Remedies Act ("CLRA"), California Civil Code sections 1750 *et seq. Id.* at 22-28.

## PROCEDURAL HISTORY

**A. Barton Case**

On July 29, 2024, Plaintiff Barton filed the original complaint. ECF No. 1. On September 4, 2024, Plaintiff Barton filed the First Amended Complaint, joining Plaintiff Moreno. ECF No. 10. On September 20, 2024, Defendant filed a motion to dismiss. ECF No. 15. On February 13, 2025, this Court granted in part and denied in part Defendant's motion to dismiss and granted Plaintiffs leave to amend. ECF No. 29. On March 10, 2025, Plaintiffs filed a Second Amended Complaint. ECF No. 30. On April 7, 2025, Defendant filed a motion to dismiss Plaintiffs' SAC. ECF No. 33. On August 8, 2025, the Court granted in part and denied in part the motion to dismiss. ECF No. 39. On August 22, 2025, Defendant filed an answer to the SAC. ECF No. 40.

**B. Foster Case**

On August 18, 2025, Plaintiff Stephanie Foster filed a case against Defendant in the Northern District of Illinois. ECF No. 42 ("Mot.") at 6;[1] ECF No. 46 ("Opp.") at 8. The case in Illinois is based on similar facts and allegations and is brought by the same counsel as the case before this Court. *Id.* However, unlike this case, the Illinois case is brought by a citizen of Chicago who bought Defendant's Products in Illinois and seeks to represent a nationwide class, a multi-state consumer protection class, and an Illinois subclass, which exclude California. Opp. at 8-9; Complaint ("Ill. Compl.") at ¶¶ 92-123, *Foster v. The Proctor & Gamble Co.*, No. 1:25-cv-09735, Dkt. No. 6 (N.D. Ill. Aug. 15, 2025). Additionally, while the case before this Court brings claims based on California

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

1  law, the Illinois case brings causes of action based in Illinois law, the law of other named

2  states, and common law. *See* Ill. Compl. ¶¶ 151-83.

3        On October 13, 2025, Defendant filed a motion with the Northern District of

4  Illinois to transfer venue to the Southern District of Ohio. Motion to Transfer Venue,

5  *Foster v. The Proctor & Gamble Co.*, No. 1:25-cv-09735, Dkt. No. 13 (N.D. Ill. Aug. 15,

6  2025). That motion has not yet been heard or decided.

7    **C. Sanchez Case**

8        On November 19, 2025, plaintiffs from nine different states, including California

9  and Illinois, filed a case against Defendant in the Southern District of Ohio. ECF No. 47

10  ("Rep."), Ex. A; *Sanchez v. The Proctor & Gamble Co.*, 1:25-cv-00852 (S.D. Ohio).

11  While the plaintiffs in the *Sanchez* case are represented by different counsel, "[t]he

12  factual allegations in that case are identical to this case and the related case, *Foster v. The*

13  *Procter & Gamble Co.*, 1:25-cv09735 (N.D. Ill. Aug. 15, 2025)." Rep. at 3.

14    **D. Instant Motion**

15        On November 14, 2025, Defendant filed a motion to change venue to the Southern

16  District of Ohio. ECF No. 42 ("Mot."). On November 11, 2025, Plaintiffs filed their

17  response in opposition. ECF No. 46 ("Opp."). On November 25, 2025, Defendant filed its

18  reply. ECF No. 47 ("Rep."). On December 4, 2025, Plaintiffs filed a sur-reply. ECF No.

19  48-1. The Court now considers Defendant's motion to transfer venue.

20                                         **LEGAL STANDARD**

21        28 U.S.C. § 1404(a) permits a federal court to transfer a case to another federal

22  court "where it might have been brought" "[f]or the convenience of parties and witnesses,

23  in the interest of justice[.]" 28 U.S.C. § 1404(a). The district court has broad discretion to

24  determine whether to transfer, *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1212

25  (S.D. Cal. 2013), but a transfer is inappropriate where it would "merely shift rather than

26  eliminate the inconvenience." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d

27

28

3:24-CV-01332-GPC-SBC

834, 843 (9th Cir. 1986). The Court must make "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). The party moving for transfer bears the burden of demonstrating that the transfer furthers the convenience of the parties and witnesses and the interests of justice. *Hawkins*, 924 F. Supp. 2d at 1212.

## DISCUSSION

To resolve motions to transfer venue, district courts employ a two-step framework. First, the court evaluates "whether the plaintiff could have originally brought the action in the proposed transferee forum." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1041 (S.D. Cal. 2023) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)). Second, the court must assess convenience and fairness, weighing several case-specific factors. *Id.*

Defendant argues that venue should be transferred to the Southern District of Ohio because (1) the case could have been brought in that district, and (2) the transfer would be more convenient for parties and witnesses and support the interests of justice. Mot. at 9-16. While Plaintiffs concede that the first prong is met, they maintain that the case-specific factors favor keeping the venue in California. Opp. at 10-25.

## I.    Availability of Alternative Forum

Section 1404(a) permits transfer only to a district "where [the action] might have been brought." 28 U.S.C. § 1404(a). "The phrase where an action 'could have been brought' is interpreted to mean that the proposed transferee court would have subject matter jurisdiction, proper venue, and personal jurisdiction." *Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*, No. 12-CV-911-IEG-WMC, 2012 WL 2068728, at *2 (S.D. Cal. June 8, 2012).

<u>Subject Matter Jurisdiction</u>. The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), provides the Court with subject matter jurisdiction. 28 U.S.C. § 1332(d)(2). CAFA requires that the civil case be a class action where the "matter in controversy

exceeds the sum or value of $5,000,000, exclusive of interest and costs" and where at least one member of the class is "a citizen of a State different from any defendant." *Id.* Here, the amended complaint alleges an amount in controversy exceeding $5,000,000. SAC ¶ 13. Defendant is a citizen of Ohio, *id.* ¶ 81, while Plaintiff Barton is a citizen of California, *id.* ¶ 75. Thus, based on the pleadings, the federal court in the Southern District of Ohio has subject matter jurisdiction.

      <u>Personal Jurisdiction</u>. The courts in Ohio also have personal jurisdiction over this matter. General jurisdiction exists for a corporation at its place of incorporation and its principal place of business sits. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011))). Defendant's place of incorporation and principal place of business sits in Ohio. SAC ¶ 81; Mot. at 9-10. Thus, the Ohio courts have personal jurisdiction over the case.

      <u>Venue</u>. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Because Defendant resides in the Southern District of Ohio, *id.*, venue is proper there.

      Thus, the first element is met.

## II. Convenience and Fairness Factors

      Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Thus, "[a] motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498

(9th Cir. 2000). To succeed, defendants "must show that the balance of conveniences weighs heavily in favor of transfer in order to overcome the strong presumption in favor of plaintiff's choice of forum." *Adobe Sys. Inc. v. Childers*, No. 5:10-CV-03571 JF/HRL, 2011 WL 566812, at *9 (N.D. Cal. Feb. 14, 2011); *see Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

The factors district courts typically weigh include: (1) the plaintiff's choice of forum, (2) the convenience of parties, (3) the convenience of witnesses, (4) local interests in the controversy, (5) ease of access to evidence, (6) costs of litigation, (7) familiarity with the applicable law, and (8) judicial economy. *See, e.g.*, *Decker*, 805 F.2d at 843; *Greenley v. Kochava*, Inc., 684 F. Supp. 3d 1024, 1042 (S.D. Cal. 2023); *Jones*, 211 F.3d at 498-99.

### A.    Plaintiff's Choice of Forum

Generally, a plaintiff's choice of forum is accorded great weight. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1082 (C.D. Cal. 2002) ("There is a strong presumption in favor of the plaintiff's choice of forum."). If given that weight, a defendant "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843.

However, this high bar can be lowered in certain class action contexts. *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 778 (N.D. Cal. 2014). Specifically, the "deference to the plaintiff's choice is reduced (1) in a class action spanning multiple states and (2) when the plaintiff does not reside in or have significant connections to the forum." *Greenley*, 684 F. Supp. 3d at 1042; *see also Lou*, 834 F.2d at 739; *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1040-41 (N.D. Cal. 2020).

In terms of the first requirement, "where there are hundreds of potential plaintiffs ... all of whom could with equal show of right go into their many home courts, the claim

of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster v. (Am.) Lumbermens Mut. Cas., Co.*, 330 U.S. 518, 524 (1947). Thus, nationwide or multistate class actions are given less weight. This rationale only extends to statewide class actions in the context of motions to transfer from one in-state district court to another. *Compare Bennett v. Bed Bath & Beyond, Inc.*, C 11–02220 CRB, 2011 WL 3022126, at *2 (N.D. Cal. July 22, 2011) (finding reduced deference for a statewide class action and transferring the case from the Northern District to the Central District of California) *with Cardoza v. T-Mobile USA Inc.*, No. 08-5120 SC, 2009 WL 723843, *4 (N.D. Cal. Mar. 18, 2009) ("The Court does not give less weight to Plaintiff's choice of forum based on Plaintiff's decision to bring this suit on behalf of a class. Courts tend to do so in cases where the plaintiff seeks to represent a nationwide class.").

As to significant connections, "courts consider the extent of the parties' contacts with the chosen forum, including contacts relating to the plaintiff's cause of action." *Epic Games*, 435 F. Supp. 3d at 1041. This includes whether the plaintiffs reside in the district, where the products were sold and the injury occurred, where key decisions about the alleged harm were made, where the defendants reside, and where defendants manufacture products. *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1043 (S.D. Cal. 2023); *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2013); *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1079 (S.D. Cal. 2011); *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 778 (N.D. Cal. 2014). "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff]'s choice is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Finally, in making this evaluation, courts must also recognize some deference when there is no evidence of forum-shopping. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1042-43 (S.D. Cal. 2023); *Hendricks v. StarKist Co.*, No. 13-CV-729 YGR, 2014

WL 1245880, *3 (N.D. Cal. Mar. 25, 2014); *In re Ferrero Litig.*, 768 F. Supp. 2d 1074 (S.D. Cal. 2011). "Forum shopping could reasonably be inferred if the plaintiff files the same or similar case represented by the same law firm in a different district after receiving unfavorable rulings there." *LegalForce, Inc. v. Legalzoom.com, Inc.*, 2018 WL 6179319, at *3 (C.D. Cal. Nov. 27, 2018). "It matters little whether the same named plaintiff is involved in the same or similar actions, for there is an equally strong inference of forum shopping when the parallel actions are filed by the same law firm, and such strategic machinations by plaintiff's counsel are equally discouraged under Section 1404(a)." *Meza v. Procter & Gamble Co.*, No. 23-CV-91 JGB(SHKX), 2023 WL 3267861 (C.D. Cal. Apr. 27, 2023).

Defendant argues that Plaintiffs' choice in forum should be afforded minimal deference because the claims are brought on behalf of a class, "the vast majority of the facts underlying Plaintiffs' claims, including marketing and labeling of the Products, occurred outside this District," and Plaintiffs' counsel has chosen the Northern District of Illinois to litigate claims based on the same allegations at issue. Mot. at 15. At the same time, Plaintiffs maintain that substantial deference should be given for their choice in forum, given that this case involves a California-only class, Defendant lacks evidence of forum shopping, and the parties have significant contacts with the forum. Opp. at 11-13.

Here, the case involves a statewide class action, not a nationwide or multi-state class, SAC ¶ 118, and the motion attempts to transfer to the Southern District of Ohio, rather than another district in California, Mot. at 9. The Plaintiffs are residents of California. *Id*. ¶¶ 75, 78. Plaintiffs relied on the alleged misrepresentations in this district, bought the products in this district, and thus, were injured here. *Id*. Defendant has also admitted that it manufactures, advertises, and sells the products at issue in this district. ECF No. 40 ¶ 82. There is also no evidence of forum shopping, given that Plaintiffs' claims have favorably survived two motions to dismiss, and both the *Foster* and *Sanchez*

1  cases have different causes of action. These facts all weigh in favor of providing

2  Plaintiffs' choice of forum substantial weight.

3          Defendant, however, contends that the crux of the case relies on the alleged

4  misrepresentations that occurred at Defendant's headquarters in Cincinnati, Ohio and not

5  the location where Plaintiffs purchased the products. Mot. at 14. Thus, in Defendant's

6  view, the location the alleged misrepresentations were made trumps the other facts that

7  weigh in favor of this forum.

8          While several courts have acknowledged that marketing and manufacturing

9  decisions are at the heart of a false advertising action, *see Hawkins v. Gerber Prods. Co.*,

10  924 F. Supp. 2d 1208 (S.D. Cal. 2013), that fact alone does not dispositively lead to

11  minimal deference of Plaintiffs' choice of forum. All but one of the cases Defendant cites

12  to involves either a nationwide class action or a plaintiff who does not reside in the

13  chosen forum. *See Rikos v. Procter & Gamble Co.,* No. 10-CV-1974-BEN-CAB, 2011

14  WL 1456096, at *2 (S.D. Cal. Apr. 13, 2011) (finding the plaintiff was not a resident of

15  the forum, which weighed in favor of transfer); *Jovel v. i-Health, Inc.*, No. 12-CV-05526-

16  DDP-JCGX, 2012 WL 5470057, at *6 (C.D. Cal. Nov. 8, 2012) (finding in favor of

17  transfer where there was a nationwide class and violations of state laws across the

18  country were alleged); *Italian Colors Rest. v. Am. Express Co.*, No. 03-CV-3719-SI, 2003

19  WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) (finding the plaintiff's contacts with the

20  forum of minimal value because the case was a nationwide class action and "especially in

21  view of plaintiffs' forum shopping"); *Romoff v. Johnson & Johnson Consumer Inc.*, No.

22  22-CV-75-LL-WVG, 2022 WL 3905301, at *3 (S.D. Cal. Aug. 26, 2022) (finding little

23  weight in Plaintiff's choice of forum after considering the parties' contacts *and* "that

24  Plaintiff seeks to represent a nationwide class"); *Greben v. Cinmar, LLC*, No. 2:24-CV-

25  10140-MRA-BFM, 2025 WL 1765916, at *3-4 (C.D. Cal. May 30, 2025) (same); *but see

26  Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013).

27

28

11

Case 3:24-cv-01332-GPC-SBC    Document 50    Filed 12/11/25    PageID.841    Page 12 of 22

On balance, Plaintiffs' choice of forum is, at the very least, afforded more than minimal consideration, given that some operative facts have occurred within this forum and the forum does have an interest in California citizens and laws. As this case involves a statewide, not nationwide, class action and the Plaintiffs reside here and have substantial contacts with the forum, the Court is inclined to afford Plaintiffs' choice great weight. However, even if the Court granted less deference based on the alleged misrepresentations being decided in Ohio, "less deference is not the same thing as no deference." *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017) (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)). Thus, this factor weighs against transfer.

## B.    Convenience of Parties

"Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964). Transfer "should not be granted if the effect is simply to shift the inconvenience to the plaintiff." *Adobe Sys. Inc. v. Childers*, No. 5:10-CV-03571 JF/HRL, 2011 WL 566812, *9 (N.D. Cal. Feb. 14, 2011) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

Defendant contends that the Southern District of Ohio is more convenient for the parties because "the key operative facts underlying Plaintiffs' claims occurred in Ohio" and "the allegations in this action have virtually no connection to California." Mot. at 12. Specifically, Defendant "has no relevant offices or employees in California, and the relevant decisions for product marking were made in Ohio." Mot. at 12.

However, as Plaintiffs point out, while transfer to Ohio would be more convenient for Defendant, it would inconvenience Plaintiffs who would be required to travel for litigation in that forum. This simply shifts the inconvenience of litigation. Thus, this factor weighs in favor of neither party.

3:24-CV-01332-GPC-SBC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.    Convenience of Witnesses

"The convenience of witnesses is often the most important factor considered by the court when deciding a motion to transfer for convenience." *Kannar v. Alticor, Inc.*, No. 08-CV-5505, 2009 WL 975426, at *2 (N.D.Cal. Apr. 9, 2009). However, "not all witnesses are treated equal." *Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1043 (S.D. Cal. 2023). "[P]rimary consideration is given to third part[ies], as opposed to employee witnesses." *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) (quoting *Kannar*, 2009 WL 975426, at *2). Less consideration is given to the convenience of "party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (citing *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1132 (C.D. Cal. 2009)).

Defendants maintain this factor favors transfer. "Plaintiffs' claims...focus on [Defendant's] development, testing, labeling, and marketing of the Products; whether the Products contain lead; [Defendant's] reasoning for including the challenged representations on the Product labels; and how consumers interpret the Product labels." Mot. at 11. The witnesses who have this knowledge are Defendant's employees and all of whom reside in Ohio. *Id.*

Plaintiffs argue that this factor is neutral for three reasons. One, Defendant has failed to identify any non-party witnesses that might be inconvenienced. Opp. at 18. Two, Defendant fails to meet its burden because inconvenienced party witnesses have not been identified with specificity. *Id.* at 15. Three, "any speculative inconvenience to witnesses is likely to be the same for both Plaintiffs and Defendant." *Id.*

As highlighted by Plaintiffs, Defendant has failed to identify any third-party witnesses. Defendant doesn't contest this point but, instead, argues that the weight of this

factor should not be affected. Rep. at 8. In its view, "the relevant witnesses [in false advertising cases] are the defendant's employees who made the challenged representations." *Id.*

However, Defendant's argument goes against this factor's rationale. Consideration is afforded primarily to non-party witnesses because, unlike party witnesses, they cannot always be compelled to testify if they reside outside the forum. *See Allstar Mktg. Grp., LLC v. Your Store Online, LLC,* 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009). Specifically, the Court's subpoena power for third-party witnesses only extends to anywhere within the district and one hundred miles of the place of trial. Fed.R.Civ.P. 45(b)(2). While party witnesses are considered under this factor, "the convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum." *Skyriver Tech. Sols., LLC v. OCLC Online Computer Libr. Ctr., Inc.*, No. 10-CV-03305-JSW, 2010 WL 4366127, at *2 (N.D. Cal. Oct. 28, 2010). This is true even in false advertising cases, where party witnesses would mostly be involved. *See, e.g., Hendricks v. StarKist Co.*, No. 13-CV-729-YGR, 2014 WL 1245880, at *4 (N.D. Cal. Mar. 25, 2014) ("Even if StarKist is correct in claiming that it will provide more witnesses and those witnesses will provide the most relevant testimony in this case, StarKist still only refers to party witnesses, and not the non-party witnesses with which this factor is chiefly concerned."); *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208 (S.D. Cal. 2013) ("The Court agrees that Gerber and its employees will likely deliver the majority of the relevant testimony regarding the false advertising claims. However, as Plaintiff asserts in her opposition, primary consideration is given to third party witnesses as opposed to employee witnesses."). Thus, lacking identified third-party witnesses, Defendant can, at most, entitle themselves to minimal weight with this factor.

Though consideration is reduced, the Court can still evaluate party witness convenience. *See Rikos v. Procter & Gamble Co.*, No. 10-CV-1974-BEN-CAB, 2011 WL 1456096, at *2 (S.D. Cal. Apr. 13, 2011). When evaluating witness convenience, "courts must consider not only the number of witnesses, but also the nature and quality of their testimony." *United States ex rel. Tutanes-Luster v. Broker Sols.*, Inc., No. 17-CV-04384-JST, 2019 WL 1024962, at *5 (N.D. Cal. Mar. 4, 2019) (citation omitted); *see Greenley*, 684 F. Supp. 3d at 1043. "In establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F.Supp.2d 1183, 1193 (S.D.Cal.2007).

Here, Defendants have sufficiently identified only one party witness, namely the Senior Director of Tampax North America who is located in Ohio and "responsible for managing Tampax brand activity across North America." Declaration of Chelsey Harshman ("Harshman Decl."), ECF No. 42-1 ¶ 1. Though Harshman identifies categories of Ohio employee witnesses who are potentially relevant, Harshman Decl. ¶¶ 5,6, the number of employees, their specific roles, and the quality of those individual testimonies is not provided. *See Meyer Mfg. Co. v. Telebrands Corp.,* No. CIV. S-11-3153 LKK, 2012 WL 1189765, at *6 (E.D. Cal. Apr. 9, 2012); *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1080 (S.D. Cal. 2011); *Romoff v. Johnson & Johnson Consumer Inc.*, No. 22-CV-75-LL-WVG, 2022 WL 3905301, at *4 (S.D. Cal. Aug. 26, 2022) (acknowledging "Defendant does not precisely name every anticipated witness" but finding that Defendant "specifically identified its director of regulatory affairs, the chief medical officer, and the head of marketing for Tylenol products"). Though the Court acknowledges the contention that the majority of witnesses would be employees in Ohio, the Court is unable to evaluate witness convenience without these additional data points. *See Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1043 (S.D. Cal. 2023).

1   Specifically, it is unclear how many employees would be needed to provide testimony in

2   California or whether the nature and quality of their testimony is necessary to the case.

3       Thus, beyond the lack of inconvenience to non-party witnesses, Defendant has not

4   provided enough information for the Court to estimate the inconvenience to party

5   witnesses. The Court finds this factor neutral.

6       **D.    Local Interest in the Controversy**

7       "[T]his factor takes into account the current and transferee forum's interest 'in

8   having localized controversies decided at home.'" *Hangzhou Chic Intelligent Tech. Co. v.*

9   *Swagway*, LLC, No. 16-CV-04804-HSG, 2017 WL 1425915, at *4 (N.D. Cal. Apr. 21,

10  2017) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th

11  Cir. 1986)).

12      Plaintiffs argue that "California has a strong interest in protecting consumers from

13  misleading and deceptive advertising and marketing of products." Opp at. 14. In turn,

14  Defendants contend that "Ohio has an equally strong interest in regulating corporations

15  that are headquartered within its borders." Rep. at 11.

16      When applying this factor, courts have varied in their approach. Some courts have

17  found great local interest in California applying California law and disfavored transfer.

18  *See, e.g.*, *Greenley*, 684 F. Supp. 3d at 1044-45; *Van Slyke v. Cap. One Bank*, 503 F.

19  Supp. 2d 1353, 1365 (N.D. Cal. 2007). Some courts have found comparable interests in

20  both states and determined the factor was rendered neutral. *See, e.g.*, *Doe v. Epic Games,*

21  *Inc.*, 435 F. Supp. 3d 1024, 1043 (N.D. Cal. 2020) ("North Carolina has as much interest

22  in regulating the conduct of one of its corporations as California does in protecting its

23  residents."). The remainder of courts find California's interest in applying its law

24  outweighed if the focus of the case rests in another jurisdiction and favor transfer. *See,*

25  *e.g.*, *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1216-17 (S.D. Cal. 2013);

16

1    *Romoff v. Johnson & Johnson Consumer Inc.*, No. 22-CV-75-LL-WVG, 2022 WL

2    3905301, at *6 (S.D. Cal. Aug. 26, 2022).

3         The Court agrees with the first approach. Ohio might have an interest in regulating

4    its corporations, but that regulation can also occur under its own laws or national laws.

5    This specific case concerns only a California class who has been harmed by alleged

6    violations of only California law. There is a great local interest in this case, and thus, this

7    factor does not favor transfer.

8         **E.    Ease of Access to Evidence**

9         "As other courts have noted, the 'ease of access to documents does not weigh

10   heavily in the transfer analysis, given that advances in technology have made it easy for

11   documents to be transferred to different locations.'" *Metz v. U.S. Life Ins. Co.*, 674 F.

12   Supp. 2d 1141, 1149 (C.D. Cal. 2009) (citing *Szegedy v. Keystone Food Prods., Inc.,* No.

13   08-CV-5369-CAS(FFMX), 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009)).

14   However, given that most of the evidence will be derived from Defendant's corporate

15   records, much of the evidence that may not be available in electronic format will likely be

16   located at Defendant's headquarters in the Southern District of Ohio. *See Romoff*, 2022

17   WL 3905301, at *4. Thus, this factor slightly favors transfer.

18        **F.    Costs of Litigation**

19        Typically, "litigation costs are reduced when venue is located near the most

20   witnesses expected to testify and—notwithstanding developments in electronic

21   conveyance—when [ ] the venue is in the district in which most of the documentary

22   evidence is stored." *Lodestar Anstalt v. Bacardi & Co.*, No. 2:16-CV-06411-CAS-FFM,

23   2017 WL 1434265, at *5 (C.D. Cal. Apr. 21, 2017) (quotations omitted) (quoting *Park v.*

24   *Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013)).

25        At the same time, "[a] court may also consider the relative means of the parties in

26   deciding a transfer motion," though the consideration is not entitled to great weight.

27

28

1  *Hendricks v. StarKist Co.*, No. 13-CV-729-YGR, 2014 WL 1245880, at *5 (N.D. Cal.

2  Mar. 25, 2014) (quoting *Dwyer v. Gen. Motors Corp.*, 853 F.Supp. 690, 693–94

3  (S.D.N.Y.1994)); *see also Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 820

4  (N.D. Cal. 2008). Under this umbrella, "corporations are better-equipped than individuals

5  to absorb increased litigation costs." *Shultz v. Hyatt Vacation Mktg. Corp.*, No. 10-CV-

6  04568-LHK, 2011 WL 768735, at *6 (N.D. Cal. Feb. 28, 2011). Accordingly, given their

7  means, corporations usually must show a substantially heavier financial inconvenience

8  than non-corporation parties might.

9          Here, Defendant argues that "[g]iven the location of the records and witnesses,

10  litigating this matter in the Southern District of Ohio would reduce overall litigation

11  costs." Mot. at 15. Additionally, Defendant emphasizes that three substantively similar

12  cases are pending in three different jurisdictions. Rep. at 10. Transfer, Defendant

13  maintains, "would eliminate the substantial costs of triplicate litigation for both the

14  parties and the courts." *Id.* at 11.

15          In return, Plaintiffs contend that transfer would only shift litigation and travel costs

16  from Defendant to Plaintiff. Opp. at 19. Also, while Defendant would save additional

17  witness and evidence costs associated with maintaining the case in this forum,

18  "Defendant is a multinational consumer goods company with reported fiscal year 2025

19  net sales of $84.3 billion…[Therefore,] Defendant is in a far superior position to absorb

20  the costs of litigation." *Id.*

21          Looking solely at this case first, what Defendant would save from transfer would

22  only shift rather than eliminate the inconvenience of costs. *See Decker Coal Co. v.*

23  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Though Defendant does

24  carry a larger burden with the corporate documents and witnesses it will likely need to

25  provide, it is in a better position to absorb those costs. Thus, the factor is neutral on these

26  facts alone.

27

28

This Court, then, turns to the costs associated with litigating three factually similar cases. First, the Court will not consider additional costs associated with the *Foster* case in Illinois. In that case, Defendants have also moved to transfer to the Southern District of Ohio. That motion has not yet been decided and, if denied, would not reduce litigation costs. Given the uncertainty surrounding a pending motion, the Court does not factor that case into this analysis.

*Sanchez* presents a more complex question. At first glance, because *Sanchez* "will proceed regardless of whether this case is transferred, there will only be a marginal, if any, cost associated with consolidating this case… On the other hand, if the Court were to deny transfer, the overall cost of litigation will be effectively doubled because both suits will proceed independently." *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013); *Burns v. Gerber Prods. Co.*, 922 F. Supp. 2d 1168, 1173-74 (E.D. Wash. 2013). This indicates the possibility of substantial cost savings.

At the same time, *Sanchez* deviates in many ways from this instant case. This case focuses on whether Defendant's label representations are affirmatively misleading, was filed sixteen months before *Sanchez*, has survived two motions to dismiss, and has moved into discovery. ECF No. 48-1 at 3-4. *Sanchez*, in contrast, is based on an omission theory focused on whether Defendant had a duty to disclose the presence of lead in Defendant's products and was filed only a few weeks ago on November 19, 2025. *Id*.; Rep. at 3. Looking beyond the differences in proof each distinct claim might present, each case is at a very different stage of litigation. Overlapping motion practice or discovery, which would have been a significant source of potential cost savings, is unlikely.

Accordingly, Court finds this factor to be neutral.

## G.    Familiarity with the Applicable Law

Defendant asserts that this factor is neutral. Mot. at 16. In its view, though the SAC alleges claims under California law, "[f]ederal courts in other states are fully capable of

19

1  applying California law." *Id.* at 15-16 (quoting *LaCross v. Knight Transp. Inc.*, 95 F.

2  Supp. 3d 1199, 1206 (C.D. Cal. 2015)). Defendant also points to the *Sanchez* case, which

3  includes California law claims, as indicating that the Southern District of Ohio is "fully

4  capable of adjudicating Plaintiffs' claims under California law." Rep. at 11.

5        Although it is true that federal courts are equipped and competent to apply

6  California law, "[a] California district court is more familiar with California law than

7  district courts in other states." *In re Ferrero Litig.*, 768 F. Supp 2d 1074, 1081 (S.D. Cal.

8  2011); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1143 (S.D. Cal. 2023);

9  *Cardoza v. T-Mobile USA Inc.*, No. 08-5120 SC, 2009 WL 723843, at *5 (N.D. Cal. Mar.

10  18, 2009). Thus, this factor weighs slightly against transfer.

11  ### H.    Judicial Economy

12        "The main countervailing weight against transfer is judicial economy." *Greenley*,

13  684 F. Supp. 3d at1045. "[T]he pendency of an action in another district is important

14  because of the positive effects it might have in possible consolidation of discovery and

15  convenience to witnesses and parties." *A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist.*

16  *of Cal.*, 503 F.2d 384, 386–87 (9th Cir.1974) (citations omitted). "In addition to the

17  possible consolidation of discovery and the conservation of time, energy and money,

18  centralizing the adjudication of similar cases will also avoid the possibility of inconsistent

19  judgments." *Mussetter Distrib., Inc. v. DBI Beverage Inc.*, No. 09-CV-1442-WBS-EFB,

20  2009 WL 1992356, at *5 (E.D. Cal. July 8, 2009) (citations omitted).

21        Defendant contends, because of the two pending cases outside this district, the

22  positive effects the case law identifies would be realized with a venue transfer. Mot. at

23  13-14. Defendant emphasizes that while the two case involve different classes and laws,

24  all three cases rest on the same factual allegations and, thus, discovery, depositions, and

25  motion practice would be most economically completed in one district. Rep. at 9. In turn,

26  Plaintiffs argue that granting transfer would "disregard the substantial time, effort, and

27

28

resources expended during the last 15 months of litigation." Opp. at 21. Plaintiffs also point out that this case is more advanced than *Foster* by a year and *Sanchez* by sixteen months. *Id*. at 22; ECF No. 48-1 at 4. Thus, Plaintiffs maintain that "an overlap in motion practice or discovery is unlikely," ECF No. 48-1 at 4, and "[t]o the extent potential overlap or inefficiencies do arise, they can be addressed by implementing a stay…or [by] coordinating discovery," Opp. at 22.

Although the classes and the governing law at issue between the three cases is distinct, these cases are based on identical facts, and thus, factual issues will largely overlap. Therefore, the Court acknowledges that judicial economy may be served by consolidating discovery in these cases.

However, a few considerations detract from this factor. First, as discussed before, there is no guarantee that the *Foster* case would also be granted transfer; consequently, this Court will not consider that case in this analysis. Second, the Court "cannot be certain that the later-filed class action will reach discovery." *Greenley*, 684 F. Supp. 3d at1045. Third, there is a low risk of inconsistent judgments. Given that this case is entering discovery, "[a]ll other judgments will be specific to the claims at issue, which almost exclusively fall under California law." *Id*. Though *Sanchez* has California law claims, it is based on an omission theory and, thus, relies on a different strain of California law compared to this case. ECF No. 48-1 at 3.

Finally, though judicial economy is usually served when cases are based on identical facts, this usually assumes those cases are at similar stages of litigation. The *Sanchez* case, however, was just filed a few weeks ago. Rep. at 3. Similarly, the *Foster* case was filed four months ago and is litigating its first motion to dismiss. *Foster v. The Proctor & Gamble Co.*, No. 1:25-cv-09735, Dkt. Nos. 1, 12 (N.D. Ill. Aug. 15, 2025). In contrast, this instant case has survived 16 months of litigation and commenced discovery. *See* ECF Nos. 1, 45. The Early Neutral Evaluation Conference and Case Management

Conference have both been held, and the Court, which is prepared to set the Scheduling Order, has only delayed entering that Order pending this motion. *Id*.

Given this case's progress, transfer would only cause further, undue delay. Specifically, even assuming *Foster* was transferred, litigation would not continue unfettered like a simple baton pass. Plaintiffs would likely be forced to experience months of delays as complex motion practice from both the *Foster* and *Sanchez* cases proceed, especially given its nationwide class action claims. Though consolidated discovery has benefits, the lengthy delays Plaintiffs would experience serves as an equal counterbalance. Judicial economy would be better served by allowing discovery in this case to continue and coordinating efforts with the other two cases.

Thus, this factor is neutral.

## I.    Balancing of Factors

In sum, most factors weigh against transfer or are neutral. As such, Defendant has not established that the Southern District of Ohio is the more appropriate forum.

### CONCLUSION

Based on the reasoning above, the Court **DENIES** the motion to transfer venue. The Court also VACATES the hearing set for December 19, 2025.

**IT IS SO ORDERED.**

Dated:  December 11, 2025

Hon. Gonzalo P. Curiel
United States District Judge

22

3:24-CV-01332-GPC-SBC