UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON BARTON, individually and on behalf of others similarly situated,<br>Plaintiffs,<br>v.<br>THE PROCTER & GAMBLE COMPANY, a Delaware company,<br>Defendant. | Case No. 3:24-cv-1332-GPC-SBC<br>**ORDER:**<br>**(1) GRANTING MOTION FOR CLASS CERTIFICATION**<br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S EXPERT**<br>**(3) GRANTING REQUEST FOR JUDICIAL NOTICE**<br>**[ECF Nos. 66, 81, 109]** |

On May 13, 2026, Plaintiff Allison Barton ("Plaintiff") filed a Motion to Certify Class. ECF No. 66. On June 10, 2026, Defendant The Proctor & Gamble Company ("Defendant") filed a Motion to Exclude Plaintiffs' Expert James Gibson. ECF No. 81. On July 15, 2026, Plaintiff filed a Request for Judicial Notice. ECF No. 109. Both motions have been fully briefed. ECF Nos. 78-1, 84, 88, 95-1. A hearing was held on July 31, 2026. ECF No. 114. Based on the reasons below, the Court GRANTS Plaintiff's

motion to certify class, DENIES IN PART and GRANTS IN PART Defendant's motion to exclude, and GRANTS Plaintiff's request for judicial notice.

## FACTUAL BACKGROUND

Plaintiffs Allison Barton ("Plaintiff") has sued Defendant The Procter & Gamble Company ("Defendant") for allegedly violating California consumer protection law regarding its Tampax Pearl tampons and Tampax Radiant tampons (collectively the "Products"). ECF No. 30 ("Complaint" or "SAC") ¶ 2. Plaintiffs allege that Defendant's Product labels misled consumers into believing Products are free of lead. SAC ¶¶ 4-5.

### A. Lead in Tampons

According to Plaintiff, the World Health Organization states that "[t]here is no level of exposure to lead that is known to be without harmful effects" and that "[e]xposure to lead 'can affect multiple body systems and is particularly harmful to young children and women of child-bearing age.'" SAC ¶¶ 8, 25. Citing to an article published in a scientific toxicology journal, Plaintiff alleges that lead accumulates in the body, which can lead to "severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death." *Id.* ¶ 16. The Complaint also alleges that the ordinary and expected use of the Products would expose consumers to more than the Maximum Allowable Dose Level ("MADL") of 0.5 micrograms of lead per day for reproductive toxicity, as established by California's Proposition 65. *Id.* ¶ 7.

Plaintiff alleges that scientific testing of Defendant's Products by an independent and accredited laboratory showed that the Products contained a substantial amount of lead. *Id.* ¶¶ 26, 35. In July 2024, this laboratory used Inductively Coupled Plasma – Mass Spectrometry ("ICP-MS"), a method recognized for precision in measuring heavy metal presence, to test homogenous samples of a variety of Defendant's Products. *Id.* ¶¶ 27-32.

Plaintiff alleges that based on the daily average use of tampons, consumers are exposed to lead in excess of the MADL, regardless of what size Product they use. *Id*. ¶¶ 46-47.

**B. Alleged Misrepresentations and Causes of Action**

According to Plaintiff, the Products contain the following prominent messaging ("Representations") on their boxes: (i) "#1 U.S. GYNECOLOGIST RECOMMENDED TAMPON BRAND"; (ii) "FREE OF PERFUME"; (iii) "FREE OF ELEMENTAL CHLORINE BLEACHING"; (iv) "TAMPON FREE OF DYES"; and (v) "CLINICALLY TESTED GENTLE TO SKIN." *Id*. ¶ 3.

Plaintiff alleges that these Representations lead reasonable consumers to believe that the Products are safe to use, including that "they are free from potentially harmful elements and ingredients." *Id*. ¶ 62. According to Plaintiff, these Representations mislead a reasonable consumer because the tampons contain lead, which Defendant fails to disclose. *Id*. ¶ 63.

Plaintiff alleges that these Representations violate California's consumer advertising law. *Id*. ¶ 170. Plaintiffs assert that Defendant knew, or should have known, that the Products contained lead and either willfully or intentionally failed to disclose this fact to consumers. *Id*. ¶ 172.

Plaintiff purchased these Products without knowing that the Products contained lead but would not have bought them if they had known of the true contents. *Id*. ¶¶ 12, 69, 73, 97, 112. She relied on the Representations in believing the Products were free from harmful ingredients such as lead. *Id*. ¶¶ 94, 109. Since consumers were "deprived of making the informed choice between the Products and other menstrual products [that do not contain lead]," Plaintiff alleges that she and other consumers have suffered economic injury based on the purchase price of the Products. *Id*. ¶¶ 12, 72.

Plaintiff seeks to represent a Class against Defendant for violations of state consumer protection law: (1) Unfair Competition Law ("UCL"), California Business &

Professions Code sections 17200 *et seq.*; (2) False Advertising Law ("FAL"), California Business & Professions Code sections 17500 *et seq.*; and (3) Consumers Legal Remedies Act ("CLRA"), California Civil Code sections 1750 *et seq*. *Id*. at 22-28.

**PROCEDURAL BACKGROUND**

On July 29, 2024, Plaintiff Barton filed the original complaint. ECF No. 1. On September 4, 2024, Plaintiff Barton filed the First Amended Complaint, joining Plaintiff Moreno. ECF No. 10. On September 20, 2024, Defendant filed a motion to dismiss. ECF No. 15. On February 13, 2025, this Court granted in part and denied in part Defendant's motion to dismiss and granted Plaintiffs leave to amend. ECF No. 29. On March 10, 2025, Plaintiff filed a Second Amended Complaint. ECF No. 30. On April 7, 2025, Defendant filed a motion to dismiss Plaintiffs' SAC. ECF No. 33. On August 8, 2025, the Court granted in part and denied in part the motion to dismiss. ECF No. 39. On August 22, 2025, Defendant filed an answer to the SAC. ECF No. 40. On October 14, 2025, Defendant filed a motion to transfer venue. ECF No. 42. On December 11, 2025, the Court denied the motion to transfer venue. ECF No. 50.

On May 13, 2026, Plaintiff filed a motion to certify class. ECF No. 66. Plaintiff seeks to certify a Class consisting of: All citizens of California, who, within four years prior to the filing of the initial Complaint through the date of notice, purchased any size or configuration of Defendant's Tampax Pearl and/or Tampax Radiant tampons (the "Products") in the State of California and who do not claim any personal injury from using the Products. The motion also requests that Plaintiff be appointed as the Class Representative and that KamberLaw LLP be appointed as Class Counsel. *Id*. at 9.

On June 10, 2026, Defendant filed an opposition to the motion and filed its own motion to exclude Plaintiff's expert James Gibson. ECF Nos. 79, 81. On June 24, 2026, Plaintiff filed an opposition to Defendant's motion. ECF No. 84. On June 25, 2026,

Plaintiff filed her reply in support of the motion to certify class. ECF No. 91. On July 1, 2026, Defendant filed its reply in support of the motion to exclude. ECF No. 96.

**REQUEST FOR JUDICIAL NOTICE**

Federal Rule of Evidence 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute," either because it is (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court can therefore "take judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

Plaintiff asks the Court to take judicial notice of the NIH project titled "Characterizing Metals and PFAS Leaching from Tampons and Their Adverse Effects on a Human Vaginal Mucosa Cell Model." ECF No. 109 at 2.

A document from a trusted source like a government website can be noticed, but its contents cannot be noticed if disputed. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010). Thus, the Court has the authority to take judicial notice of the NIH project posted on the government website. But the Court will not take judicial notice of the truth of any disputed facts contained in public records. *See Patel v. Parnes,* 253 F.R.D. 531, 546 (C.D. Cal. 2008) ("It is appropriate for the court to take judicial notice of the content of the SEC Forms 4 and the fact that they were filed with the agency. The truth of the content, and the inferences properly drawn from them, however, is not a proper subject of judicial notice under Rule 201.").

/ / /

/ / /

# LEGAL STANDARD

## I. MOTION TO EXCLUDE PLAINTIFF'S EXPERT

### A. Legal Standard

Under Rule 702, a witness, "qualified as an expert by knowledge, skill, experience, training, or education, may testify. . . if the proponent demonstrates to the court that it is more likely than not that (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The trial judge must act as the gatekeeper for expert testimony by carefully applying Federal Rule of Evidence ("Rule") 702 to ensure specialized and technical evidence is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579, 589 & n.7 (1993); *accord Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (*Daubert* imposed a special "gatekeeping obligation" on trial judges).

"Rule 702 requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025). The Ninth Circuit has held that "in evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth in *Daubert*." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). The Ninth Circuit "license[s] greater evidentiary freedom at the class certification stage" and states that courts should not "rely[ ] on formalistic evidentiary objections" to "exclude[ ] proof that tend[s] to support class certification." *Id*. "But admissibility must not be dispositive. Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id.*; *see also Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011,

1024–25 (9th Cir. 2024) (noting that "there is no requirement that the evidence relied upon by [p]laintiffs to support class certification be presented in an admissible form at the class certification stage"). Even if the evidence is admissible, the district court must then evaluate its persuasiveness during the class certification analysis. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

Under *Daubert*, scientific evidence must be both reliable and relevant. *Daubert,* 509 U.S. at 590-91. Scientific evidence is reliable "if the principles and methodology used by an expert are grounded in the methods of science." *Clausen v. M/V New Carissa,* 339 F.3d 1049, 1056 (9th Cir. 2003). However, expert testimony may also rest on personal knowledge or experience. *Kumho Tire Co., Ltd.,* 526 U.S. at 150. In such a case, reliability depends on the knowledge, experience, education, and training of the expert. *Id.*; *see Hangarter*, 373 F.3d at 1018 (district court did not abuse its discretion concluding the expert's testimony reliable based on his knowledge and experience).

The focus of the district court's analysis "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 595. "[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert II*"). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S.at 596).

Second, the proposed expert testimony must be "relevant to the task at hand," meaning that it "logically advances a material aspect of the proposing party's case." *Daubert,* 509 U.S. at 597. Simply put, the question under *Daubert* is "whether or not the reasoning is scientific and will assist the jury. If it satisfies these two requirements, then

it is a matter for the finder of fact to decide what weight to accord the expert's testimony." *Kennedy v. Collagen Corp.,* 161 F.3d 1226, 1231 (9th Cir. 1998).

**B. Merits**

Defendant asks the Court to exclude the expert opinion of Plaintiff's expert James Gibson. ECF No. 78-25. Defendant supports this motion by arguing that (1) Gibson is not qualified; (2) Gibson's survey is unreliable; and (3) some of Gibson's opinions are irrelevant because they relate to an omission claim no longer in this case. *Id*. at 6-7.[1]

Plaintiff's retained Dr. Gibson to determine the attitudes of California consumers of tampons regarding the possibility that lead is in the tampons they purchase. Gibson Report, p. 1. Dr. Gibson conducted an observational survey and concluded that "based on the explicit claims made on the Tampon boxes, a claim that is not explicitly made on the boxes—that the tampons are free of harmful substances , such as lead—is thought to be true by a vast majority of California women" and that "[i]f told that tampons contained lead, the vast majority of California women in the relevant age group would not choose to purchase them." Gibson Report, p. 3.

Defendant challenges these opinions as the product of critical methodological and design flaws. According to Defendant's expert Laura O'Laughlin, Dr. Gibson's design created "demand artifacts" by incorporating the very propositions that it claimed to test by repeatedly presenting lead as a salient and harmful product attribute and asking respondents to react to that premise. O'Laughlin Report, p. 13. Defendants further challenge Dr. Gibson's opinions based on his failure to use control groups to determine the source of the respondent's beliefs.

**1. Gibson's Qualifications**

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

Rule 702 requires that an expert possess "knowledge, skill, experience, training, or education" sufficient to "assist" the trier of fact, which is "satisfied where expert testimony advances the trier of fact's understanding to any degree." *Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp. 2d 1007, 1029-30 (E.D. Cal. 2011) (citations omitted). In applying Rule 702, the Ninth Circuit "contemplates *a broad conception* of expert qualifications." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (emphasis in original) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). Therefore, "[t]he threshold for qualification is low for purposes of admissibility; minimal foundation of knowledge, skill, and experience suffices." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. C 10–00544 JW, 2011 WL 5417090, at *4 (N.D. Cal. Oct. 27, 2011) (citing *Hangarter*, 373 F.3d at 1015-16) (25 years working in the insurance industry in general provided "minimal foundation of knowledge, skill, and experience" to qualify as expert in practices and norms of insurance companies in the context of a bad faith claim). "A witness can qualify as an expert through practical experience in a particular field, not just through academic training." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991).

Accordingly, "Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert," *Thomas*, 42 F.3d at 1269, and "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility," *Abarca*, 761 F. Supp. 2d at 1028 (quoting *Robinson v. GEICO General Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (internal quotation marks omitted)); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996)); *see also Hangarter*, 373 F.3d at 1015-16 (finding the district court did not abuse its discretion in permitting expert witness with general qualifications in insurance field to testify specifically about bad faith claims); *United States v. Garcia*, 7 F.3d 885, 889 (9th

Cir. 1993) ("lack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert.").

Here, Gibson is the President of Research Services International (RSI) and also simultaneously a professor of both government and African American studies at Washington University in St. Louis. ECF No. 66-3 at 64. He holds a Ph.D in political science and is a highly renowned political scientist in academic circles. *See id*. at 81-82. However, at the same time, he has expertise in survey research, statistics, and empirical data analysis. *Id*. at 64. He has published 12 books, 45 articles in the top three political science journals, and 100 additional articles and chapters in other peer-reviewed journals and books. *Id*. He has stated that the "scholarship underlying nearly all of these publications depended substantially on survey-related empirical and quantitative data analysis." *Id*. He is also one of the few political scientists who has published a researched paper in *JAMA* based on a survey he conducted and frequently teaches statistics, data analysis, and survey research to both undergraduate and graduate students. *Id*. at 65.

Despite this background, Defendant argues that Gibson is unqualified because he has no marketing degrees, does not have experience studying marketing and consumer behavior, and has no previous studies involving consumer products. ECF No. 78-25 at 9, 16-18. However, the Court finds this argument overly narrow and unpersuasive. Gibson's long record of practical and academic experiences in survey design suffices to qualify him under Rule 702, even though additional knowledge in consumer behavior might be useful. A dispute as to the strength of Gibson's credentials goes to the weight of his testimony, rather than its admissibility. *See Kennedy v. Collagen Corp.,* 161 F.3d 1226,

1231 (9th Cir. 1998).[2] Thus, this argument fails, and the Court DENIES the motion on these grounds.

**2. Survey Reliability**

The Ninth Circuit has "held that survey evidence should be admitted as long as it is conducted according to accepted principles and is relevant." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (internal citations, brackets, and quotation marks omitted); *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150 RS, 2017 WL 3310692, at *4 (N.D. Cal. Aug. 3, 2017) (refusing to exclude survey results). The Ninth Circuit further "made clear that technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Fortune Dynamic*, 618 F.3d at 1036; *see Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1143 n. 8 (9th Cir.1997) ("a jury should be able to determine whether asserted technical deficiencies undermine a survey's probative value," (quoting *Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280,

---

[2] The cases Defendant cites in support of its arguments are also unavailing and readily distinguishable. Each of the cited cases excludes an expert that has weaker credentials or no survey experience at all. *Warner Bros. Ent. v. Glob. Asylum, Inc.*, No. 12-CV-9547-PSG-CWX, 2013 WL 12114836, at *7 (C.D. Cal. Jan. 29, 2013) (excluding an expert where there was no suggestion "that he has any experience or training in crafting surveys of any kind"); *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2021 WL 9038355, at *12 (N.D. Cal. Aug. 9, 2021) (excluding a non-survey *and* non-human perception expert); *M2 Software, Inc. v. Madacy Ent.*, No. CV 00-2853 AHM RZX, 2003 WL 25667611, at *4 (C.D. Cal. Jan. 3, 2003) (excluding an expert whose "only formal training relating to consumer surveys consisted of one marketing course with some survey content," whose academic "training in statistics consists merely of an introductory statistics course he completed as part of his undergraduate degree," and who had never designed a consumer survey before); *Senne v. Kansas City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 487 (N.D. Cal. 2022) (excluding an expert that is not an expert in survey design or fielding surveys).

1292 (9th Cir.1992))); *see also Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1263 (9th Cir.2001) ("follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility. These are issues for a jury or, in a bench trial, the judge.").

Defendant challenges Dr. Gibson's survey because it doesn't include a control group and has leading questions and other design flaws that bias respondents. *Id*. Defendant argues that "[i]f Rule 702 is properly applied, a survey expert cannot offer causation-based opinions without a control group". Reply in Support of Motion to Exclude at 6. As a result, Defendant argues that Gibson's testimony should be excluded because the survey is unreliable. ECF No. 78-25 at 16-28. "These challenges to methodology and design are precisely the kind of claimed deficiencies that go to the weight of the evidence, not its admissibility." *Billfloat Inc. v. Collins Cash Inc*., 105 F.4th 1269, 1276 (9th Cir. 2024) (holding that criticisms based on expert's survey methodology, such as omitting a control group go to the weight of the survey, not its admissibility) (citing *Fortune Dynamic*, 618 F. 3d at 1037-38); *Townsend v. Monster Beverage Corp*., 303 F. Supp. 3d 1010, 1033 (C.D. Cal. 2018) (same); *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150 RS, 2017 WL 3310692, at *4 (N.D. Cal. Aug. 3, 2017) ("While the parties vigorously dispute whether the Dennis survey was properly conducted and produced reliable results, P&G's complaints go to the weight of the evidence, and do not preclude its admissibility."); *Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 542 (N.D. Cal. 2021).

Further, given that the case is at the class certification stage of the proceedings, the Court finds that the deficiencies in the survey design only affects the weight that Dr. Gibson's opinions are entitled to in considering class certification. The Court finds that

the survey is sufficiently reliable to give it some weight at this stage. Otherwise, the Court DENIES the motion to exclude Dr. Gibson's opinion based on survey design.

**3. Opinion Relevance**

"On a motion for class certification, it is not necessary that expert testimony resolve factual disputes going to the merits of plaintiffs' claims; instead the testimony must be relevant in assessing 'whether there was a common pattern and practice that could affect the class as a whole.'" *In re 5–Hour Energy Mktg. and Sales Practices Litig.*, 2017 WL 2559615, at *3 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982, 983 (9th Cir. 2011)). In the context of CLRA, FAL, and UCL claims, "[a] misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Kwikset Corp.*, 51 Cal. 4th at 332–33 (quoting *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 976–977 (1997)).

Defendant maintains that a portion of Gibson's remaining opinions only support a fraud-by-omission theory, which Plaintiff has abandoned. ECF No 78-25 at 28. In support of this argument, Defendant notes that Gibson opines that California women expect to be told if the Tampax tampons contain lead. *Id*. Similarly, he offers the opinion that a majority of California women in the relevant age group would not choose to purchase Defendant's products if told they contain lead. *Id*. In Defendant's view, these opinions create support for an omission theory rather than an affirmative misrepresentation claim. *Id*.

Evidence that focuses on what the Defendant's products *should have* represented or what consumers expected to be affirmatively told supports a fraud-by-omission claim but is not material to affirmative misrepresentation claims. Thus, as to Gibson's opinions that focus on a duty to disclose, those statements are not relevant and should be excluded.

*See* Gibson Rep. at 3 (California women "expect to be told if the Tampax tampons contain lead."). Thus, the Court GRANTS the motion to exclude in part.

## II. MOTION TO CERTIFY CLASS

### A. Legal Standard

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (internal quotation marks omitted).

A plaintiff seeking class certification must affirmatively show that the class meets the requirements of Federal Rule of Civil Procedure ("Rule") 23. *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) (citing *Dukes*, 564 U.S. at 350). Rule 23 establishes a two-step procedure for analyzing class certification. First, a plaintiff bears the burden of proving that class certification is appropriate because it meets all four requirements Rule 23(a)—numerosity, commonality, typicality and adequacy. *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979-80 (9th Cir. 2011). If these four requirements are satisfied, plaintiffs must show that the lawsuit qualifies for class certification under the relevant provision of Rule 23(b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC v. ConocoPhillips Co*., 593 F.3d 802, 806 (9th Cir. 2010).

While the motion for class certification comes at an early stage of litigation, the Court is required to perform a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." Dukes, 564 U.S. at 350. This inquiry "will frequently entail some overlap with the merits of plaintiff's underlying claim." *In re AutoZone Inc., Wage & Hour Litig*., 289 F.R.D. 526, 530 (N.D. Cal. 2012). Because "the merits of the class members' substantive claims are often highly

relevant when determining whether to certify a class . . . it is not correct to say that a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with Rule 23(a) requirements." *Ellis*, 657 F.3d at 981 (emphasis in original). The district court does not, however, conduct a "mini-trial" to determine whether the class could actually prevail on the merits of their claims beyond the issues presented by class certification requirements. *Id*. at 893 n.8. Rule 23 "grants no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen, Inc. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013).

**B. The Requirements of Rule 23(a) Are Satisfied**

**1. Rule 23(a)(1): Numerosity**

First, "numerosity" requires that the class be "so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Impracticability need not mean impossibility, only "difficulty or inconvenience in joining all members of the class." *Makaeff v. Trump Univ.*, No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164, at *7 (S.D. Cal. Feb. 21, 2014) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)). The requirement is not tied to a fixed numerical threshold, but courts have routinely found the numerosity requirement satisfied when the class comprises forty or more members. *See, e.g., Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17-CV-2355-GPC-MDD, 2018 WL 6300479, at *4 (S.D. Cal. Nov. 29, 2018) (citing *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988)).

As described above, Plaintiff seeks to certify claims for all citizens of California who, within four years prior to the filing of the initial Complaint through the date of notice, purchased any size or configuration of Defendant's Products in the State of

California and who do not claim any personal injury from using the Products. ECF No. 65 at 32. Plaintiff indicates that over 30 million units of the Products were sold during the Class Period, *id*. at 14-15, and Defendant does not contest that this element is met, *see* ECF No. 78-1. The Court therefore finds that Plaintiff's proposed class satisfies the numerosity requirement.

**2. Rule 23(a)(2): Commonality**

Because the requirements of Rule 23(a)(2)'s "commonality" overlaps with the predominance requirements of Rule 23(b)(3) requiring questions common to the class must predominate over individualized ones, the Court addresses commonality in its discussion of Rule 23(b)(3) below. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) ("The requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a) ... Therefore, courts must consider cases examining both subsections [Rule 23(a) and Rule 23(b)(3)] in performing a Rule 23(b)(3) analysis[ ]"); *see Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (addressing Rule 23(a) and Rule 23(b)(3) requirements concurrently).

**3. Rule 23(a)(3): Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality prerequisite ensures that interests of the named representative align with the interests of the class. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* Recognizing that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," the Ninth Circuit held that "class

certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.*

Plaintiff argues that her claims are typical of those class members she seeks to represent because they arise out of the same label representations and resulted in the same injury. ECF No. 65 at 16. Defendant contends that Plaintiff is atypical because she lacks any records substantiating her alleged purchases of the Products and because her purchasing behavior and claimed health-driven motives would be uniquely contested given her drug history and use of "This is L." tampon product.[3] ECF No. 78-1 at 28.

The Court agrees with Plaintiff that typicality is satisfied. Plaintiff and the proposed class members were exposed to the same label representations, allegedly relied on those representations, and bought the Products assuming they did not contain lead. *See Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 676-77 (N.D. Cal. 2024) (typicality present where Plaintiff alleged the same harm as absent class members based on Defendants' labeling of the Products as containing all natural ingredients). Thus, Plaintiff has the same injury as other class members based on the same course of conduct.

Defendant's identified "unique defenses" do not destroy typicality. First, "the fact that [Plaintiff] must rely on [her] own testimony as proof of [her] purchases will not put [her] in conflict with absent class members, many of whom will also lack receipts for such minor purchases, and may have to proceed on the same evidentiary proffer." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 540 (N.D. Cal. 2012); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) (finding a lack of retail receipts for their

---

[3] Defendant argues that all tampons, including organic cotton products, contain detectable levels of lead as seen by Defendant's tests. ECF No. 78-1 at 28.

purchases does not make the named plaintiffs atypical; "if anything, these factors may make them more typical (not less) of other class members").

Second, Plaintiff's drug history is not material here. For the claims Plaintiff brings, "injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that members of the public are likely to be deceived." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 661 (S.D. Cal. 2013). A difference in drug history does not affect the Plaintiff's ability to prove that Defendant's products materially misrepresented that its products did not contain lead and that Plaintiff and the putative class members relied on that misrepresentation. *Cf. In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942 (N.D. Cal. 2022) (finding differences in the nicotine journey of named plaintiff and proposed class representatives were differences in factual scenarios resulting in a claim of the same nature and did not preclude typicality).

Accordingly, typicality is satisfied.

**4. Rule 23(a)(4): Adequacy**

Rule 23 also requires that the class representative(s) "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts evaluate (1) whether the named plaintiff(s) and counsel have conflicts of interest with the rest of the class, and (2) whether the named plaintiff and counsel will prosecute the action vigorously for the class. *In re Autozone*, 289 F.R.D. at 530 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Plaintiff argues that these requirements are satisfied. ECF No. 65 at 17. Plaintiff and the Class share the same claims and interests, and Plaintiff has been prosecuting the action vigorously and will continue to do so on behalf of the class. *Id.* Additionally, Plaintiff's counsel is competent to litigate the claims at issue, has been vigorously pursuing them on

behalf of Plaintiff and the proposed class, and aims to continue fairly and adequately representing their interests. *Id*.

Defendant does not contest the adequacy of Plaintiff's counsel but repeats the same argument raised against Plaintiff on typicality. ECF No. 78-1 at 28. However, "a named plaintiff is not rendered inadequate merely because he or she is not subject to every affirmative defense that a defendant may assert against particular absent class members." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 285 (N.D. Cal. 2016) (citing *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 495 (N.D. Cal. 2010), *modified sub nom. Barnes v. AT & T Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562 (N.D. Cal. 2011) (holding that "the potential existence of [affirmative] defenses against absent class members does not, standing alone, make [the named plaintiff] inadequate"). For the same reasons discussed in the subsection above, the Court finds Defendant's arguments unpersuasive.

In sum, the Court finds that Plaintiff is an adequate class representative for the proposed class. The Court also finds that Plaintiff's counsel is adequate counsel for the class representative and the proposed class.

**C. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**

**1. Commonality and Predominance**

Plaintiff seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In the alternative or in addition, Plaintiff also seeks certification pursuant to Rule 23(b)(2), which requires that the defendant have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

In addition to the prerequisites set forth in Rule 23(a), a class must be maintainable under Rule 23(b). Under Rule 23(b)(3), certification is appropriate if: (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3). The Court will address both factors as well as the final Rule 23(a) factor, commonality.

The final requirement under Rule 23(a) is that "there are questions of law and fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' *Dukes*, 564 U.S. 338, 350 (2011). "That common contention ... must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Commonality mandates there be a common question of law or fact among the class members 'where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' " *Small v. Allianz Life Ins. Co. of N. Amer.*, 122 F.4th 1182, 1198 (9th Cir. 2024) (quoting *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134 11134, 1138 (2022) (alteration in original) (internal quotation marks and citation omitted)).

Once Plaintiffs show that there are "questions of law or fact common to class members," then they must prove, under Rule 23(b)(3), that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see Olean*, 31 F.4th at 664. "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.' " *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). Rule 23(b)(3) requires the court to make a "rigorous assessment of the available

evidence and the method or methods by which plaintiffs propose to use the [class-wide] evidence to prove the common question in one stroke." *Olean*, 31 F.4th at 666 (internal quotation marks and citation omitted).

Ultimately, Plaintiff must prove by a preponderance of evidence that common questions predominate over questions affecting only individual members, and that the common questions relate to "a central issue in the plaintiffs' claim." *Olean*, 31 F.4th at 665. Therefore, "[c]onsidering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Id.* at 665 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)).

As noted above, the claims at issue are under the UCL, FAL, and CLRA. Claims under these statutes are "governed by an objective, 'reasonable consumer' test." *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *10 (N.D. Cal. Sept. 25, 2018) (citing *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "For purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable. Each statute allows Plaintiff to establish the required elements of reliance, causation, and damages by proving that Defendants made what a reasonable person would consider a material misrepresentation." *Forcellati*, 2014 WL 1410264, at *9; *see also Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) ("[U]nder the UCL, FAL, and CLRA[,] ... injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that members of the public are likely to be deceived."). In other words, in California false advertising actions, a showing of materiality gives rise to an inference of reliance and causation. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 576 (C.D. Cal. 2014); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, No. 13-ML-2438-PSG-PLAX, 2017 WL 2559615, at *6-7 (C.D. Cal. June 7, 2017); *In re Vioxx Class*

*Cases*, 180 Cal. App. 4th 116, 129 (2009) ("If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."). Thus, here, Plaintiffs must show that the challenged statements are material and likely to mislead or deceive consumers on a classwide basis. *See In re 5–Hour Energy Mktg. and Sales Practices Litig.*, 2017 WL 2559615, at *6.

In addition to the materiality inquiry, "plaintiffs must show that 'damages are capable of measurement on a classwide basis'" to satisfy Rule 23(b)(3). *Id.* at *9 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). "Under *Comcast*, Plaintiffs must ... show that their proposed damages models match their theory of liability in the case." *Id.* (citing *Comcast*, 569 U.S. at 35). In other words, the model must measure damages resulting from the particular injury alleged by plaintiffs. *Comcast*, 569 U.S. at 36.

The Court addresses these two inquiries in turn.

**a. Materiality**

"Materiality is established 'if a reasonable man would attach importance to [the] existence or nonexistence [of a fact] in determining his choice of action in the transaction in question.'" *In re NJOY*, 120 F. Supp. 3d 1050, 1111 (C.D. Cal. 2015) (quoting *Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1022 (9th Cir.2011)). Under these three statutes, the question of whether a challenged statement or omission was material "must be evaluated according to an objective 'reasonable consumer' standard." *Id.* Because these statutes rely on such an "objective test," FAL, CLRA and UCL claims are "ideal for class certification because they will not require the court to investigate 'class members' individual interaction with the product.'" *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 480 (C.D. Cal. 2012). Thus, the question of materiality under FAL, UCL and CLRA claims "do[es] not require individualized proof but rather create[s] common questions of fact and law that predominate." *Broomfield v. Craft Brew All., Inc.*, No. 17-

CV-01027-BLF, 2018 WL 4952519, at *11 (N.D. Cal. Sept. 25, 2018); *see also Hadley v. Kellogg Sales Co*., 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) ("[B]ecause deception and materiality are objective questions, they are common question[s] for purposes of Rule 23(b)(3)" (internal quotation marks and citation omitted)).

The common questions that Plaintiff presents are whether (1) Defendant's representations misled class members into believing that their Products are safe and do not contain lead and (2) class members purchased the products, relying on those representations. *See* ECF No. 65 at 10-13, 22-26. In arguing Defendant's misrepresentations are material, Plaintiff relies on several sources. First, Plaintiff states that class members were exposed to substantially similar label representations. *Id*. at 24. [redacted]; *id*. at 24-25. Third, Plaintiff argues that Defendant knew or had reason to know that the representation would be material because Defendant's evidence indicates it knew the Products contained lead, conducted surveys to understand the impact of the presence of lead in their products,[4] determined that the second most common Google search query related to the Products was "Does Tampax have lead?", and invested in safety messaging following their internal study. ECF No. 65 at 25-26.

In response, Defendant raises several issues with Gibson's survey, focused on his methodology. ECF No. 16-19. However, in considering whether common questions predominate at the class certification stage, "a district court is limited to whether the

---

[4] The survey showed if consumers were made aware of the presence of lead that 7% of consumers would switch to natural or other brands of tampons, 6% would switch to reuseable feminine care, and 35% of consumers would not buy the Products. ECF No 65 at 26.

evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) (emphasis in original). The Court finds that Plaintiff has offered evidence that is capable of driving a class-wide resolution on causation.[5] Even if Defendant was correct in asserting that Plaintiff "failed to provide sufficient evidence of materiality, that failure has no bearing on whether common questions will predominate over individual questions." *Hadley v. Kellogg Sales Co*., 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018). *See also Olean Wholesale Grocery Group*, 31 F. 4th at 667 (a district court cannot "decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive."); *Miller v. Travel Guard Grp., Inc*., No. 21-CV-09751-TLT, 2023 WL 7106479, at *12 (N.D. Cal. Sept. 15, 2023) ("While the survey may have weaknesses or flaws, this is not a valid argument regarding predominance.").

Defendant also argues that Plaintiffs will not be able to prove the representations impacted purchasing behavior, as some individuals might still buy the Products despite knowing of the presence of lead. ECF No. 78-1 at 24-26. As a result, these differences in individualized consumer behavior prevent Plaintiff from establishing materiality or reliance with common proof.

---

[5] Defendant has offered *Rusoff v. Happy Group, Inc.,* __F. 4th__, 2026 WL 2387098 (9th Cir. Aug. 17, 2026), as supplemental authority for the proposition that Plaintiff has failed to establish deception and causation due to deficiencies in the Dr. Gibson survey. ECF No. 116. Unlike *Rusoff*, the instant case presents sufficient proof to support the required showing that common questions on causation predominate.

However, this argument is defeated by the fact that materiality under the three statutes is governed by an objective "reasonable consumer" test. *See Hadley*, 324 F. Supp. 3d at 1116. "Because . . . materiality [is an] objective question[], Plaintiff 'has no burden to establish that there is a uniform understanding among putative class members as to the meaning of' the challenged…statements, 'or that all or nearly all of [the class members] shared any specific belief.'" *Id.* (quoting *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150-RS, 2017 WL 3310692, at *3 (N.D. Cal. Aug. 3, 2017)); *In re JUUL Labs*, 609 F. Supp. 3d at 991 (rejecting argument that differences in consumer state of mind or motivation prohibited materiality from being satisfied with common proof). Instead, the question remains whether the materiality inquiry is capable of common resolution through common proof, not how each consumer behaved towards the representation.

In sum, as to materiality under the FAL, UCL and CLRA, this Court joins others in finding that "because . . . materiality [is an] objective question[], [it is a] 'common question[]' for purposes of Rule 23(b)(3)." *Hadley*, 324 F. Supp. 3d at 1115 (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013)); *see also Broomfield*, 2018 WL 4952519, at *11 ("This Court holds that the elements of reliance and materiality in this case do not require individualized proof but rather create common questions of fact and law that predominate."); *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *12 (N.D. Cal. Sept. 25, 2018) ("The consumer claims require an *objective* test, asking what the reasonable consumer would believe or think upon exposure to the misleading statement. . . . Individual preferences and beliefs are immaterial." (internal citations omitted)).

Accordingly, the Court finds that that the materiality issue in this case presents common questions of fact and law that predominate over individualized determinations. [6]

**b. Damages**

"[T]o meet the predominance requirement, the plaintiff must proffer a damages model showing that 'damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).'" *Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 553 (N.D. Cal. 2021) (quoting *Comcast*, 569 U.S. at 35). "The damages model 'must measure only those damages attributable to' the plaintiffs' theory of liability," though the calculations need not be exact at this stage. *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1103 (N.D. Cal. 2018) (quoting *Comcast*, 569 U.S. at 35). A plaintiff must only "show that [its] damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast*, 569 U.S. at 38) (emphasis added).

Here, Plaintiff has offered a "full-refund restitution" damages model. ECF No. 65 at 27-29. Defendant argues that this damages theory cannot be applied on a classwide basis because it is only permissible where a product is "worthless." ECF No. 78-1 at 26.

---

[6] Defendants also argue that Plaintiff lacks common proof of materiality because she has no common evidence that the Products are unsafe. ECF No. 78-1 at 19-23. That argument is a fact question going to the merits of the case and is not relevant to the instant motion. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 681, 692 (N.D. Cal. 2021) (considering safety of trace metals in products under a motion for summary judgment rather than the motion for class certification). As previously discussed, "a district court is limited to whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) (emphasis in original). The evidence that Plaintiff has presented thus far is enough to establish that capability. *See* ECF No. 88 at 7-8 (discussing lead in excess of MADL and a forthcoming Schilling study).

The UCL, FAL, and CLRA all authorize courts to award restitution—the remedy Plaintiffs seek. *See Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631 (S.D. Cal. 2015). "The word 'restitution' means the return of money or other property obtained through an improper means to the person from whom the property was taken." *Clark v. Superior Court,* 50 Cal.4th 605, 614 (2010). "Restitution has two purposes: 'to restore the defrauded party to the position he would have had absent the fraud," and "to deny the fraudulent party any benefits, whether or not for[e]seeable, which derive from his wrongful act.'" *Id.* (quoting *Nelson v. Serwold,* 687 F.2d 278, 281 (9th Cir.1982)). It is an equitable remedy, enacted "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1149 (2003).

The measure of restitution is generally "[t]he difference between what the plaintiff paid and the value of what the plaintiff received." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009); *see also Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 988 (9th Cir. 2015) (quoting *Cortez v. Purolator Air Filtration Prods. Co.,* 23 Cal. 4th 163, 173 (2000)) ("Restitution is 'the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received.'"). Thus, in order for a plaintiff to proceed on a full-refund theory of restitution, they generally must allege that the product received was valueless or retained only *de minimis* value to the purchaser.[7] However,

---

[7] *See In re Tobacco Cases II*, 240 Cal. App. 4th, 779, 795 (2015) ("A full refund may be available in a UCL case when the plaintiffs prove the product had no value to them."); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (finding damages appropriately limited to difference between price paid and value received, and "under these rules, a plaintiff cannot be awarded a full refund unless the product she purchased was worthless."); *Lambert v. Neutraceutical Corp.*, 870 F.3d 1170, 1174 (9th Cir. 2017), *rev'd on other grounds* 586 U.S. 188 (2019) ("[The full refund damages model] applies when a product is shown to be worthless."); *In re POM Wonderful LLC*, No. ML 10-02199-DDP-RZX, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (finding full

"California courts have recognized that the price-to-value method is not the exclusive measure of restitution potentially available in a false advertising case." *Stathakos v. Columbia Sportswear Co*., No. 15-CV-04543-YGR, 2017 WL 1957063, at *10 (N.D. Cal. May 11, 2017) (citing *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 893 (2015)); *see also People v. Superior Court*, 9 Cal. 3d 283, 286 (1973) (holding that a court "may exercise the full range of its inherent powers in order to accomplish complete justice between the parties")); *Chowning v. Kohl's Dep't Stores*, Inc., No. CV-15-08673-RGK-SPX, 2016 WL 1072129, at *6 (C.D. Cal. Mar. 15, 2016), *aff'd*, 735 F. App'x 924 (9th Cir. 2018) (noting that price/value differential is not the only measure of restitution, while also finding that a full refund is not appropriate where a plaintiff has received some value from the product).

Indeed, the Ninth Circuit has clarified that FAL and UCL "restitution is based on what a purchaser would have paid at the time of purchase had the purchaser received all the information." *Pulaski & Middleman, LLC v. Google, Inc*., 802 F.3d 979 (9th Cir. 2015). The Ninth Circuit continued that, at the class certification stage, a damages calculation

> need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase. Instead, in calculating restitution under the UCL and FAL, the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information.

*Id.* (citing *Kwikset,* 51 Cal.4th at 329). *But see In re Tobacco Cases II*, 240 Cal. App. 4th 779, 192 Cal. Rptr. 3d 881 (2015) (rejecting full refund model because it did not "account for benefits conferred" upon consumers); *In re POM Wonderful LLC*, No. ML-

---

refund inappropriate where plaintiffs obtained some value from juices, including hydration, vitamins, or anything else of value).

10-02199-DDP-RZX, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (same). While the Ninth Circuit was considering FAL and UCL restitution in a fraudulent omission context, that same reasoning can be applied to affirmative misrepresentation. *See Falcone v. Nestle USA, Inc.*, 2026 WL 74510, at *2 (9th Cir. Jan. 9, 2026).

Here, Plaintiff's theory of liability is that consumers would not purchase the Products if they knew they contained lead because consumers do not want to purchase products with lead and other menstrual products are available that do not contain lead. ECF No. 65 at 26. Thus, the crux of Plaintiff's theory is that a reasonable purchaser would have paid *nothing* at the time of purchase if she had all the information. Because FAL and UCL restitution is "based on what a purchaser would have paid at the time of purchase had the purchase received all the information," *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015), Plaintiffs' full-refund restitution is consistent with their theory of liability.

To the extent that Defendant argues that Plaintiff has not shown that informed consumers would decline to purchase the Products entirely, ECF No. 78-1 at 27, that is not the question currently before the Court. Whether a reasonable consumer would purchase Defendant's products had she known all the information is a merits question not appropriate for resolution at the class certification stage. *See Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 953 (S.D. Cal. 2019) (holding that (1) "whether a reasonable person would have purchased Defendants' products had she known all the information" was a question of fact for trial, and (2) if the fact-finder found in favor of plaintiff, full refund restitution would be an appropriate remedy under law); *Falcone*, 2026 WL 74510, at *2 ("whether the products are worthless is a merits issue not decided at class certification.").

Relying on their damages expert, Charles L. Baum, Plaintiff has also shown that Defendant's sales data—together with data obtained from retailers and third-party sales-data providers—provide a reliable foundation for calculating a full refund. *See* ECF No.

65 at 29-30. The approximate nature of such calculations is sufficient at this stage, as classwide damage calculations under the UCL, FAL, and CLRA are "particularly forgiving," and need not be exact. *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017), *rev'd on other grounds*, 586 U.S. 188 (2019)).

The Court therefore finds that Plaintiffs have "demonstrate[d] a logical connection between their damages model and their theory of liability." *Falcone*, 2026 WL 74510, at *2. Additionally, Plaintiffs have shown that damages can be determined without excessive difficulty. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017). This is sufficient at this stage to establish that common questions predominate. *Id.*

/ / /

/ / /

**1. Superiority**

If a court finds that the proposed class or subclass satisfies the commonality and predominance requirements of Rule 23(b)(3), the court must also determine whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed R. Civ. P. 23(b)(3). To determine whether a class action is superior to alternative methods of adjudicating a case, a court considers: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already brought by or against proposed class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing the class. Fed. R. Civ. P. 23(b)(3)(A)-(D). Consistent with the aim of the Federal Rules of Civil Procedure to promote judicial economy, a class action is the superior method for resolution "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Cartier-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

The Court finds that the superiority requirement is satisfied. First, "[j]udicial economy weighs in favor of a class action where, as here, liability turns on whether advertisements were false or misleading." *Johns v. Bayer Corp.*, 280 F.R.D. 551, 559 (S.D. Cal. 2012). Second, the individual claims of misrepresentation are small in comparison to the substantial costs of litigation. *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2014). Third, common issues of fact and law predominate as previously discussed. Finally, there are no other actions that allege a California Class based on California consumer protection laws. ECF No. 65 at 31.

Defendant raises manageability issues, arguing that there are logistical difficulties in identifying consumers that were exposed to misrepresentations as demonstrated by Plaintiff and her lack of receipts. ECF No. 78-1 at 29. However, this is not a case where product variations are complex and require consumers to play a memory game when self-identifying. *See, e.g.*, *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 227 (N.D. Cal. 2015); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 456 (S.D. Cal. 2014). Instead, this case involves one variation, where two of the representations were eliminated and one was altered, but the rest of the representations were uniform throughout. *See* ECF No. 78-1 at 18. Thus, the Court finds that consumers should be able to accurately recall whether they bought the Products. *Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-03082-LB, 2014 WL 6483216, at *10 (N.D. Cal. Nov. 18, 2014). This conclusion is enhanced by the "concern that, if class actions are not available in small-ticket consumer-deception suits like this one, then the wrongs that those suits allege will often escape redress, and Rule 23(b)(3) will be nullified just where it is most socially useful." *Id.*

Accordingly, the Court finds that Plaintiffs have satisfied the second prong of the Rule 23(b)(3) analysis.

**2. Federal Rule of Civil Procedure 23(b)(2)**

Rule 23(b)(2) applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling," if (1) "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or (2) "she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018).

Plaintiff has maintained that injunctive relief is necessary because, without it, she could never confidently rely on the product labeling when considering whether to purchase Defendant's Products. ECF No. 65 at 32. In turn, Defendant argues that certification under Rule 23(b)(2) cannot be met because the monetary relief is not incidental and because Plaintiff lacks common proof of any classwide violation.

However, Defendant's arguments are unpersuasive. A major goal of California's consumer protection law is prevention of future consumer protection violations through injunctive relief. *See, e.g.*, *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009) ("[T]he primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction."). To hold that monetary relief is not incidental here "would bar an injunctive relief class merely because damages are also available." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 698 (N.D. Cal. 2021). Additionally, while Defendant's product labeling changed in 2024, where two representations were

eliminated, the same or substantively same remaining representations continue to be displayed on product packaging, indicating an injunctive relief that would apply to the entire class. *See* ECF No. 78-1 at 30. Thus, the Court grants the motion for class certification under Rule 23(b)(2).

## CONCLUSION

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to exclude Plaintiff's expert (ECF No. 81), **GRANTS** Plaintiff's motion for class certification (ECF No. 66) under both Rule 23(b)(3) and Rule 23(b)(4), and **GRANTS** Plaintiff's request for judicial notice without taking notice of the truth of any disputed facts contained in the public records (ECF No. 109). Plaintiff Allison Barton is appointed class representative. Plaintiff's counsel, KamberLaw LLP, is appointed as Class Counsel. The Order will be filed under seal with a public redacted version.

**IT IS SO ORDERED.**

Dated: September 29, 2026

Hon. Gonzalo P. Curiel
United States District Judge